**K&L GATES, LLP**
Eric T. Moser, Esq.
599 Lexington Avenue
New York, New York 10022-6030
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

*Counsel to Sprint Nextel Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re : **Chapter 11**
:
**DBSD NORTH AMERICA, INC.,** *et al.*,[1] : Case No. 09-13061 (REG)
:
             Debtors. : (Jointly Administered)
:
------------------------------------------------------------x


**MOTION OF SPRINT NEXTEL CORPORATION FOR WITHDRAWAL OF REFERENCE**

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: DBSD North America, Inc. (6404); 3421554 Canada Inc. (6404); DBSD Satellite Management, LLC (3242); DBSD Satellite North America Limited (6400); DBSD Satellite Services G.P. (0437); DBSD Satellite Services Limited (8189); DBSD Services Limited (0168); New DBSD Satellite Services G.P. (4044); and SSG UK Limited (6399). The service address for each of the Debtors is 11700 Plaza America Drive, Suite 1010, Reston, Virginia 20190.

## TABLE OF CONTENTS

        **Page**

Introduction .................................................................................................................1

Background................................................................................................................1

    A.     The Debtors are MSS Licensees That Are Obligated To Relocate BAS Incumbents From The 1990-2025 MHz Spectrum Band. ........................1

    B.     Sprint Also Has An Obligation To Reimburse BAS Incumbents And Is Entitled To Reimbursement From MSS Licensees. ................................2

    C.     The Reimbursement Litigation. ..............................................................4

    D.     The Sprint Proofs of Claim In The Debtors' Bankruptcy Case And The Debtors Objection. .................................................................................5

Law and Argument ....................................................................................................6

    A.     Standards for Mandatory Withdrawal. ...................................................6

    B.     The Debtors' Bankruptcy Case Presents Issues Requiring An Interpretation of Both the Bankruptcy Code and the Communications Act......................8

    C.     The Issues Presented Involve More Than The Application of Settled Law..........10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*City of New York v. Exxon Corp.*,
  932 F.2d 1020 (2d Cir. 1991) ........................................................................7

*FCC v. Nextwave Personal Communications, Inc.*,
  537 U.S. 293 (2003) ................................................................................9, 10

*Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*,
  107 B.R. 34 (D. Del. 1989) ...........................................................................7

*Improving Public Safety Communications in the 800 MHz Band*,
  Order, 23 FCC Rcd 575 (2008) .....................................................................4

*In re Hartley*,
  55 B.R. 781 (N.D. Ohio 1985) ......................................................................8

*In re Horizon Air, Inc.*,
  156 B.R. 369 (N.D.N.Y. 1993) .....................................................................7

*In re Johns-Manville Corp.*,
  63 B.R. 600 (S.D.N.Y 1986) ........................................................................7

*In the Matter of Improving Pub. Safety Communications in the 800 Mhz Band*,
  19 F.C.C.R. 14969 (2004) ............................................................................3

*Report and Order and Further Notice of Proposed Rulemaking*,
  WT Docket No. 02-55, __ FCC Rcd (2009) ..............................................4, 5

*U.S. v. ILCO, Inc.*,
  48 B.R. 1016 (D. Ala. 1985) .........................................................................7

## FEDERAL STATUTES

11 U.S.C. § 101 ...................................................................................................9

11 U.S.C. § 365. ...............................................................................................5, 8

11 U.S.C. § 525 .................................................................................................11

28 U.S.C. § 1334 .................................................................................................6

28 U.S.C. § 157 ........................................................................................1, 6, 11

# DOCKETED CASES

*See Sprint Nextel Corporation v. New ICO Satellite Services G.P. and Terrestar Networks, Inc.*,
   Case No. 08-cv-651 ............................................................................................................... 4

Sprint Nextel Corporation ("**Sprint**"), through undersigned counsel, files this Motion for Withdrawal of Reference pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure, respectfully showing the Court as follows:

## Introduction

The bankruptcy case of DBSD North America, Inc. and its debtor affiliates (collectively, the "Debtors") presents issues that require the interpretation of both the Bankruptcy Code and provisions of the Communications Act and rules and regulations promulgated thereunder. One of the Debtors' main goals in the bankruptcy case is to discharge obligations owed to Sprint. The obligations owed to Sprint arise under rules issued by the Federal Communications Commission (the "**FCC**"). The Debtors' compliance with those reimbursement obligations is an express condition of their FCC license. Thus, the Debtors' bankruptcy case presents the following issue:

> Can an ongoing obligation owed to a third party pursuant to FCC rules be discharged in bankruptcy even though the obligation is an express condition of the debtor's FCC license, and the Debtor intends to continue using the license after confirmation of its plan of reorganization?

The answer to this question depends upon a number of issues at the intersection of bankruptcy and telecommunications law. Accordingly, pursuant to 28 U.S.C. § 157(d), the reference to the Bankruptcy Court must be withdrawn with respect to any and all issues related to allowance and treatment of Sprint's claims in the Debtor's bankruptcy case.

## Background

**A.    The Debtors are MSS Licensees That Are Obligated To Relocate BAS Incumbents From The 1990-2025 MHz Spectrum Band.**

The Debtors, collectively, are a development-stage company formed to provide mobile satellite services ("**MSS**"). The Debtors commenced their bankruptcy cases on May 15, 2009.

1

The bankruptcy cases are proceeding very quickly. A hearing to consider confirmation of the Debtors' proposed plan of reorganization has been set for September 9, 2009.

A full understanding of the claims at issue in the bankruptcy case requires a short summary of FCC proceedings related to MSS providers. Starting in the late 1990's, the FCC began designating certain portions of spectrum (or "band") for the use of MSS licensees and their anticipated MSS systems. However, the band was already occupied by unrelated Broadcast Auxiliary Service ("**BAS**") entities (consequently known as "**BAS Incumbents**").[2] Concerned about potential interference, the FCC held that MSS licensees such as the Debtors had to bear the costs required to move the BAS Incumbents to another part of the band where there would be no interference (this process is generally referred to as the "**BAS Relocation**"). This would clear the portions of the spectrum through which the BAS Incumbents had previously broadcast for use by the entering MSS licensees like the Debtors.

To prevent free riders, if a later MSS licensee came into the band after it had been cleared of BAS Incumbents by the earlier entering MSS licensees, the later MSS licensee had to pay a *pro rata* share of the costs expended to move the BAS Incumbents by the earlier MSS licensees. This arrangement was intended to address a concern by the FCC that the costs for moving the BAS Incumbents into other portions of the band should be fairly shared by each of the MSS licensees, rather than borne solely by the first MSS licensee to begin clearing the band.

**B.     Sprint Also Has An Obligation To Reimburse BAS Incumbents And Is Entitled To Reimbursement From MSS Licensees.**

Sprint is not an MSS licensee, but is a land-based mobile radio provider. In 2004, Sprint was trying to address the potential interference with public safety communications as a result of

Sprint's use of nearby parts of the band. At the same time, the MSS licensees had done nothing to move the BAS Incumbents out of the band. Therefore, pursuant to the order *Improving Public Safety Communications in the 800 MHZ Band; Consolidating the 800 and 900 MHZ Industrial/Land Transportation and Business Pool Channels*, Report and Order, Fifth Report and Order, Fourth Memorandum Opinion and Order, and Order, <u>In the Matter of Improving Pub. Safety Communications in the 800 Mhz Band</u>, 19 F.C.C.R. 14969 (2004) (the "**800 MHz Order**"),[3] Sprint relinquished certain of its own spectrum in exchange for new spectrum in the band previously reserved for MSS licensees.

The *800 MHz Order* authorized and obligated Sprint to relocate BAS Incumbents in the band now reserved for both Sprint and MSS licensees. In keeping with its long-standing cost-sharing approach, the FCC held that Sprint could seek reimbursement from subsequently entering licensees for a proportional share of the first entrant's costs incurred in the BAS Relocation on a *pro rata* basis.[4] Since 2004, Sprint has incurred more than $649 million in costs associated with the BAS Relocation.

Although the *800 MHz Order* obligated Sprint to relocate BAS Incumbents, the FCC did not absolve MSS licensees, such as the Debtors, of their own independent obligation to relocate BAS Incumbents.[5] After entry of the *800 MHz Order*, the FCC has continued to recognize that

---

[2] BAS involves land-based systems of equipment that television broadcasters use for electronic newsgathering to provide breaking news, live sports, and real-time weather information to the public, as well as to relay video programming to the public through translator and booster stations.

[3] A copy of the *800 MHz Order* is attached hereto as Exhibit A. Because they are voluminous, the exhibits are being served electronically.

[4] *See 800 MHz Order*, at ¶ 261.

[5] *See 800 MHz Order,* at ¶¶ 250, 264.

3

MSS licensees such as the Debtors have an equal obligation to relocate BAS Incumbents.[6] Accordingly, MSS licensees, such as the Debtors, continue to have an independent obligation to relocate BAS Incumbents which they may satisfy in one of two ways: they can relocate the BAS Incumbents themselves or, in the alternative, they can reimburse Sprint for their *pro rata* share of the BAS Relocation conducted by Sprint.

C.     **The Reimbursement Litigation.**

On June 25, 2008, Sprint commenced a lawsuit against one of the Debtors, New DBSD Satellite Services, L.P. ("**New Satellite Services**") in the Eastern District of Virginia to enforce its right to reimbursement of the costs incurred in the BAS Relocation (the "**Reimbursement Litigation**").[7] Upon motion filed by New Satellite Services' co-defendant to the Reimbursement Litigation invoking the doctrine of primary jurisdiction, the district court referred certain issues raised by the Reimbursement Litigation to the FCC on the grounds that the FCC has primary jurisdiction.[8] The Reimbursement Litigation has been stayed by the Virginia District Court pending the FCC's decision on those issues.

On June 12, 2009, in furtherance of the stay by the Virginia District Court, the FCC issued the *Report and Order and Further Notice of Proposed Rulemaking*, WT Docket No. 02-55, __ FCC Rcd __ (2009) (the "**June 12 R&O**")[9] that addressed certain issues related to the Reimbursement Litigation. Among other things, the June 12 R&O contained tentative

---

[6]     *See, e.g., Improving Public Safety Communications in the 800 MHz Band*, Order, 23 FCC Rcd 575, at p.2 (2008) (Noting that "both Sprint Nextel and 2 GHz MSS licensees have *equal obligations* to relocate the 2 GHz BAS incumbents . . . .") (emphasis added). A copy of this Order is attached hereto as Exhibit B.

[7]     *See Sprint Nextel Corporation v. New ICO Satellite Services G.P. and Terrestar Networks, Inc.*, Case No. 08-cv-651 (E.D.Va.). A copy of the complaint filed in the Reimbursement Litigation is attached hereto as Exhibit C.

[8]     Copies of the relevant transcript and related order are attached hereto as Exhibits D and E, respectively. The relevant pages from the transcript are pages 15 – 17.

[9]     A copy of the June 12 R&O is attached hereto as Exhibit F.

4

conclusions that (i) MSS entrants must reimburse Sprint when they "enter the band," (ii) that an MSS entrant is deemed to have "entered the band" when its satellite is found to be operational under its authorization milestone, and (iii) that the Debtors have already "entered the band."[10]

D.  **The Sprint Proofs of Claim In The Debtors' Bankruptcy Case And The Debtors Objection.**

On June 25, 2009, Sprint filed a claim against each of the Debtors in the amount of $211,429,000 (collectively, the "**Sprint Claims**").[11] In the proofs of claim, Sprint also stated its contention that because the FCC licenses issued to the Debtors constitute executory contracts within the meaning of 11 U.S.C. § 365, the Debtors cannot assume the benefits of those licenses without assuming all obligations arising in connection therewith, including the obligation to reimburse Sprint in accordance with the *800 MHz Order* and the June 12 R&O.

On July 22, 2009, the Debtors filed an objection (the "**Claim Objection**") to the Sprint Claims.[12] Significantly, the Debtors <u>do</u> <u>not</u> object to the amount claimed by Sprint. Instead, the Debtors make only two arguments. First, the Debtors contend that their FCC license is not an executory contract within the meaning of section 365 of the Bankruptcy Code. As a result, the Debtors contend that they can continue to utilize the FCC license and occupy the band being cleared by Sprint without having to reimburse Sprint for their *pro rata* share of the BAS Relocation. Second, the Debtors contend that Sprint has no viable claim against any Debtor other than New Satellite Services. Thus, even though all of the Debtors intend to continue using the FCC license and intend to continue occupying the band being cleared by Sprint pursuant to

---

[10]  See June 12 R&O, at ¶¶ 89, 91 and n. 201.

[11]  Copies of the Sprint Claims are attached hereto as Exhibit G.

[12]  A copy of the Claim Objection (without exhibits) is attached hereto as Exhibit H.

5

the BAS Relocation, the Debtors contend that Sprint is entitled to nothing more than a single unsecured claim against their bankruptcy estates.

Sprint is filing a response to the Claim Objection with the Bankruptcy Court contemporaneously with the filing of this Motion.[13] For the reasons discussed herein, Sprint believes that all issues related to the allowance and treatment of its claims, including, without limitation, all issues raised by the Claim Objection and Sprint's response thereto, should be heard in the first instance by the District Court pursuant to the mandatory withdrawal of the reference provisions of 28 U.S.C. § 157(d).

## Law and Argument

**A.     Standards for Mandatory Withdrawal.**

Under 28 U.S.C. § 1334, district courts have original jurisdiction of all cases under title 11 and all civil proceedings arising under title 11, or arising in or related to cases under title 11. Pursuant to 28 U.S.C. § 157(a), however, each district court may provide that cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district. The statute further provides, however, that this reference to the bankruptcy court may be withdrawn. *See* 28 U.S.C. § 157(d). In certain circumstances, the statute mandates withdrawal of the reference. For instance, 28 U.S.C. § 157(d) states, in relevant part:

> The district court **shall**, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.C.C § 157(d) (emphasis added).

---

[13]     A copy of Sprint's response to the Claim Objection (without exhibits) is attached hereto as Exhibit I.

Thus, the statute requires withdrawal of the reference whenever resolution of an issue requires substantial and material consideration of non-bankruptcy laws. *See In re Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y 1986). The court in *In re Horizon Air, Inc.*, 156 B.R. 369 (N.D.N.Y. 1993) stated that "[t]he purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of statutes outside the Bankruptcy Code." Id. at 373 (quoting *Eastern Airlines, Inc. v. ALPA*, 1990 Westlaw 5203, *5 (S.D.N.Y. Jan. 24, 1990)). Further, "[t]he mandatory withdrawal provision contained in § 157(d) has been interpreted to 'require withdrawal to the district court of cases or issues that would otherwise require a bankruptcy judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes.'" Id. (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991).

Such mandatory withdrawal is required regardless of the relative experience of the courts in the relevant subject matter. *See Horizon Air*, 156 B.R. 373 at n.5 ("While the court acknowledges that it has no more experience than Judge Gerling in interpreting these particular provisions of the Federal Aviation Act, cases construing § 157(d) make clear that when a bankruptcy court is called upon to interpret statutes outside its realm of expertise, the district court is required to remove the reference.").

Accordingly, courts have withdrawn the reference in cases involving interpretation of non-bankruptcy laws such as the Federal Aviation Act, OSHA regulations, CERCLA, and RICO statutes. *See, e.g.*, *Horizon Air*, 156 B.R. at 373 (Federal Aviation Act); *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 38 (D. Del. 1989). (OSHA statute and regulations); *In re Johns-Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y. 1986) (CERCLA); *U.S. v. ILCO, Inc.*, 48 B.R. 1016 1021-22 (D. Ala. 1985) (mandatory withdrawal required to determine

resolution of complaint based upon allegations of violations of CWA, RCRA and CERCLA); *In re Hartley*, 55 B.R. 781, 784 (N.D. Ohio 1985) (RICO).

**B.  The Debtors' Bankruptcy Case Presents Issues Requiring An Interpretation of Both the Bankruptcy Code and the Communications Act.**

In this case, the issue of whether Sprint's claims may be discharged in their entirety requires an interpretation of both the Bankruptcy Code and the Communications Act and rules and regulations promulgated thereunder. The issues to be addressed include:

- Is the FCC license an executory contract within the meaning of 11 U.S.C. § 365.[14] This issue depends upon a determination of (i) what constitutes an executory contract for the purposes of section 365 and (ii) what is the nature of the right created by an FCC license – i.e., is it contractual in nature?

- Even if the FCC license is not an executory contract within the meaning of 11 U.S.C. § 365, can the Bankruptcy Code override the effect of an FCC rule that would require the Debtors to reimburse Sprint as an express condition of their FCC license?

- To what extent does the Debtors' ongoing independent obligation to clear the spectrum band impact these questions?

- Are the Debtors jointly and severally liable for the reimbursement obligation? This issue is currently being addressed as part of the ongoing rulemaking proceeding before the FCC.

Each of these issues requires an interpretation of the Bankruptcy Code and FCC rules and regulations. For instance, the issue of whether the FCC license at issue constitutes an executory contract for bankruptcy purposes depends, in part, upon an inquiry into the nature of the right created by the FCC license and whether bankruptcy principles require that the FCC license be

---

[14] Section 365 of the Bankruptcy Code allows a debtor to assume or reject executory contracts. If an executory contract is assumed, the debtor must cure all defaults arising under the contract and provide adequate assurance of future performance. 11 U.S.C. § 365(b).

treated as an executory contract regardless of whether the FCC license would be viewed as a traditional contract outside of bankruptcy.[15]

Similarly, the issue of whether the Debtors' obligations under their FCC license are "claims" that can be discharged under the Bankruptcy Code depends upon an inquiry into the nature of the Debtors' own obligation to clear the spectrum band at issue and whether that obligation is a "claim" within the meaning of the Bankruptcy Code that can be discharged as part of the bankruptcy case. Under the Bankruptcy Code, a "claim" is defined as a right to payment. *See* 11 U.S.C. § 101(5)(A). The Debtors' independent obligation to clear the spectrum band does not, in and of itself, create a right to payment but, instead, is just a function of the Debtors' ongoing obligations that arise under their FCC license as a matter of law. Thus, the Debtors' independent obligation to clear the band is not a "claim" that can be discharged as part of the bankruptcy case.

Sprint's right to reimbursement results from the Debtors' decision regarding how to satisfy this non-dischargeable obligation. Rather than conduct the BAS Relocation themselves, as they are obligated to do, the Debtors have apparently opted to rely upon Sprint to do the job for them. Thus, Sprint's right to reimbursement is derivative of the Debtors' own non-dischargeable obligation to clear the spectrum band and, therefore, the reimbursement obligation owed to Sprint is also non-dischargeable. Although it is not necessary for the Court to resolve this issue in connection with this Motion, this issue demonstrates why mandatory withdrawal is required in this case because it shows how an interpretation of both bankruptcy law and communications law will be required.

---

[15] *See* Sprint Response to Debtors' Claim Objection, attached hereto as Exhibit F, at pp. 10-13.

C.  **The Issues Presented Involve More Than The Application of Settled Law.**

The interpretation that is required in connection with these issues is more than a mere application of established federal law. Indeed, in many respects, the issues raised by this case are issues left open by the Supreme Court in the decision of *FCC v. Nextwave Personal Communications, Inc.*, 537 U.S. 293 (2003). In *Nextwave*, the Court held that section 525 of the Bankruptcy Code prevented the FCC from revoking a license as a regulatory matter solely because of the Debtors' failure to make timely payments to the FCC.[16] The Court emphasized, however, that its decision did not limit the FCC's ability to enforce its rights as a creditor in the bankruptcy case. *Id*. at 307-308 ("As we described in our statement of facts, the FCC purported to take such a security interest in the present cases. What is at issue, however, is not the enforcement of that interest in the bankruptcy process, but rather elimination of the licenses through the regulatory step of revoking them.").

This statement by the Court makes clear that it was not the license revocation that concerned the Court but rather the manner in which it was accomplished. Although the Court said that the FCC could not revoke a license as a regulatory matter, it left open the possibility that the FCC could revoke a license by seeking relief from the automatic stay and enforcing a security interest in a license. If section 525 does not prohibit the FCC from enforcing a security interest in a license, there is no reason that the FCC, or Sprint, cannot enforce rights as creditors pursuant to section 365 of the Bankruptcy Code. Nevertheless, in the Claim Objection, the Debtors apparently take the position that the *Nextwave* decision is dispositive of the issues raised in this case and prevents the relief sought by Sprint. Thus, resolution of the issues raised by this case will require a determination regarding the scope and effect of the Supreme Court's
10

*Nextwave* decision – a decision that itself raised complicated issues resulting from the intersection of bankruptcy and communications law.

Finally, the Virginia District Court previously stayed the Reimbursement Litigation precisely because the claims asserted by Sprint against the Debtors raised unsettled questions within the primary jurisdiction of the FCC. Thus, there should be no question that the issues raised by the bankruptcy case require an interpretation of both non-bankruptcy and bankruptcy law.

For each of these reasons, mandatory withdrawal of the reference is required pursuant to 28 U.S.C. § 157(d).

---

[16] Section 525 of the Bankruptcy Code prohibits government units from discriminating against a debtor based upon a debt that is dischargeable in bankruptcy. 11 U.S.C. § 525(a).

## Conclusion

WHEREFORE, Sprint respectfully requests that the Court (a) withdraw the reference to the Bankruptcy Court with respect to any and all issues related to allowance and treatment of Sprint's claims in the Debtor's bankruptcy case, and (b) grant such further relief as the Court deems just and proper.

Dated: August 11, 2009

       New York, New York

Respectfully submitted,

K&L GATES LLP

/s/ Eric Moser
Eric Moser
599 Lexington Avenue
New York, New York  10022-6030
Telephone:  (212) 536-3900
Facsimile:  (212) 536-3901
Eric.Moser@klgates.com

*and*

John H. Culver III
Felton E. Parrish
K&L Gates LLP
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, North Carolina  28282
Telephone:  (704) 331-7400
Fax:  (704) 331-7598
John.Culver@klgates.com
Felton.Parrish@klgates.com
*Attorneys for Sprint Nextel Corporation*