James H.M. Sprayregen, P.C.
Christopher J. Marcus
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

Marc J. Carmel
Sienna R. Singer
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
 Counsel for the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DBSD NORTH AMERICA, INC., *et al.*,[1] | ) | Case No. 09-13061(REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

**DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION**
**PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: DBSD North America, Inc. (6404); 3421554 Canada Inc. (4288); DBSD Satellite Management, LLC (3242); DBSD Satellite North America Limited (6400); DBSD Satellite Services G.P. (0437); DBSD Satellite Services Limited (8189); DBSD Services Limited (0168); New DBSD Satellite Services G.P. (4044); and SSG UK Limited (6399). The service address for each of the Debtors is 11700 Plaza America Drive, Suite 1010, Reston, Virginia 20190.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ...................................................................................................................2
    A.    Defined Terms ...............................................................................................................2
    B.    Rules of Interpretation .................................................................................................13
    C.    Computation of Time ...................................................................................................14
    D.    Governing Law .............................................................................................................14
    E.    Reference to Monetary Figures ....................................................................................14

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS........................14
    A.    Administrative Claims .................................................................................................14
    B.    Priority Tax Claims ......................................................................................................14

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ......15
    A.    Summary ......................................................................................................................15
    B.    Classification and Treatment of Claims and Interests ................................................15
    C.    Special Provision Governing Unimpaired Claims ......................................................25
    D.    Acceptance or Rejection of the Plan ...........................................................................25
    E.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................25
    F.    Controversy Concerning Impairment ..........................................................................26

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................26
    A.    New Credit Facility .....................................................................................................26
    B.    Sources of Consideration for Plan Distributions.........................................................26
    C.    Issuance of New Common Stock .................................................................................26
    D.    Section 1145 and Other Exemptions ...........................................................................26
    E.    Listing of New Common Stock ...................................................................................27
    F.    Registration Rights Agreement ...................................................................................27
    G.    Issuance of the Warrants ..............................................................................................27
    H.    Stockholders' Agreement.............................................................................................28
    I.    Corporate Governance .................................................................................................28
    J.    Corporate Existence .....................................................................................................28
    K.    Corporate Action..........................................................................................................28
    L.    Certificate of Incorporation and Bylaws .....................................................................29
    M.    Transition Services Agreement ....................................................................................29
    N.    Effectuating Documents; Further Transactions...........................................................29
    O.    Vesting of Assets in the Reorganized Debtors ...........................................................29
    P.    Intercompany Interests .................................................................................................29
    Q.    Cancellation of Securities and Agreements .................................................................29
    R.    Restructuring Transactions ..........................................................................................30
    S.    Exemption from Certain Taxes and Fees ....................................................................30
    T.    Employee and Retiree Benefits ...................................................................................30
    U.    Preservation of Rights of Action .................................................................................31
    V.    Distribution Trust ........................................................................................................31

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............33
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ...................33
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases...................34
    C.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed Pursuant to the
Plan ..............................................................................................................................34
    D.    Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases..........34
    E.    Intercompany Contracts, Contracts and Leases Entered Into After the Petition Date,
Assumed Executory Contracts and Unexpired Leases................................................35
    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements..........35
    G.    Reservation of Rights ..................................................................................................35

    H.      Nonoccurrence of Effective Date ...................................................................................35

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...........................................................35
    A.      Timing and Calculation of Amounts to Be Distributed ...............................................35
    B.      Disbursing Agent .........................................................................................................36
    C.      Rights and Powers of Disbursing Agent .....................................................................36
    D.      Distributions on Account of Claims Allowed After the Effective Date.........................36
    E.      Delivery of Distributions and Undeliverable or Unclaimed Distributions....................37
    F.      Compliance with Tax Requirements/Allocations..........................................................37
    G.      Setoffs.........................................................................................................................38
    H.      Claims Paid or Payable by Third Parties......................................................................38

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
              DISPUTED CLAIMS .................................................................................................39
    A.      Allowance of Claims and Interests...............................................................................39
    B.      Claims and Interests Administration Responsibilities..................................................39
    C.      Estimation of Claims and Interests...............................................................................39
    D.      Expungement or Adjustment to Claims Without Objection...........................................39
    E.      No Interest....................................................................................................................40
    F.      Disallowance of Claims or Interests ............................................................................40
    G.      Offer of Judgment .......................................................................................................40
    H.      Amendments to Claims ...............................................................................................41

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............41
    A.      Discharge of Claims and Termination of Interests.......................................................41
    B.      Subordinated Claims ....................................................................................................41
    C.      Compromise and Settlement of Claims and Controversies...........................................41
    **D.**      **Releases by the Debtors** ..........................................................................................42
    **E.**      **Exculpation** ...........................................................................................................42
    **F.**      **Third-Party Releases by Holders of Claims and Interests** ...................................42
    **G.**      **Injunction**...............................................................................................................43
    **H.**      **Setoffs**....................................................................................................................43
    **I.**      **Recoupment** ...........................................................................................................43
    J.      Release of Liens...........................................................................................................44

ARTICLE IX. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ..........44
    A.      Final Fee Applications .................................................................................................44
    B.      Payment of Interim Amounts .......................................................................................44
    C.      Professional Fee Escrow Account.................................................................................44
    D.      Professional Fee Reserve Amount................................................................................44
    E.      Post-Confirmation Date Fees and Expenses.................................................................45
    F.      Senior Note Indenture Trustee Fee Claims ..................................................................45

ARTICLE X. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN...................45
    A.      Conditions Precedent to the Effective Date .................................................................45
    B.      Waiver of Conditions ..................................................................................................46

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN....................46
    A.      Modification and Amendments.....................................................................................46
    B.      Effect of Confirmation on Modifications......................................................................46
    C.      Revocation or Withdrawal of the Plan .........................................................................46

ARTICLE XII. RETENTION OF JURISDICTION.................................................................................46

ARTICLE XIII. MISCELLANEOUS PROVISIONS ..............................................................................48
    A.      Immediate Binding Effect ...........................................................................................48

| | | |
|---|---|---|
| B. | Additional Documents | 48 |
| C. | Payment of Statutory Fees | 49 |
| D. | Dissolution of Committees | 49 |
| E. | Reservation of Rights | 49 |
| F. | Successors and Assigns | 49 |
| G. | Service of Documents | 49 |
| H. | Term of Injunctions or Stays | 49 |
| I. | Plan Supplement | 49 |
| J. | Entire Agreement | 50 |
| K. | Nonseverability of Plan Provisions | 50 |
| L. | Votes Solicited in Good Faith | 50 |
| **M.** | **Waiver or Estoppel** | 50 |
| N. | Conflicts | 50 |

K&E 15432970.4

# INTRODUCTION

DBSD North America, Inc. and the other Debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**") hereby respectfully propose the following joint plan of reorganization (the "**Plan**") for the resolution of outstanding claims against and interests in the Debtors pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101-1532. Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The primary purpose of the Plan is to effect the restructuring and substantial de-leveraging of the Debtors' capital structure to bring it into alignment with the Debtors' future operating prospects and to provide the Debtors with greater liquidity. The Plan will allow the Debtors to continue their business in the ordinary course. Presently, based on the current outlook, the Debtors have insufficient liquidity to meet their current debt service requirements and to satisfy their current debt obligations unless the restructuring is consummated. The Debtors believe that the restructuring will reduce uncertainty with respect to their future and better position them to finish development and commercialization of the Debtors' satellite system.

The Debtors are focused on emerging from chapter 11 as expeditiously as practicable to minimize the monetary and non-monetary costs of the bankruptcy proceedings and to maintain good relations with the parties critical to their ongoing operations. As such, the Debtors, the Principal Noteholders, and the Existing Stockholder have spent considerable time working to manage these Chapter 11 Cases smoothly and efficiently. The Debtors believe that the financial and operational restructurings proposed under the Plan will provide sufficient liquidity to fund the Debtors' swift emergence from chapter 11 and appropriately capitalize the Reorganized Debtors to facilitate the implementation of the Debtors' business plan, which will send a positive message to, and help regain the confidence of, the telecommunications industry in support of the Debtors and their anticipated emergence. Conversely, a prolonged chapter 11 would adversely affect the Debtors' relationships with their vendors, as well as the Debtors' ability to retain or attract potential business parties and new investors.

The Plan provides that through the Debtors' restructuring, including (1) the substantial de-leveraging and concomitant reduction in interest obligations, (2) a re-alignment of their operations to focus on their core operations, and (3) continued path as a development-stage enterprise, the Reorganized Debtors will be able to capitalize on opportunities in the future to maximize the value of the Debtors' assets. The Debtors will reduce their funded debt and other financial obligations through converting all of the Senior Note Claims and General Unsecured Claims into equity of the Reorganized Debtors. By utilizing the powers of the Bankruptcy Code, including by rejecting unwanted and unprofitable contracts and leases and renegotiating other contracts and leases, the operations of the Reorganized Debtors will be consistent with the Reorganized Debtors' needs. This process has already begun in earnest and will continue through the Consummation of the Plan with the assistance of the Principal Noteholders and the Existing Stockholder and with continued negotiations with the Prepetition Lenders and the Committee as well as the Debtors' suppliers and other significant constituents.

With their de-leveraged balance sheet and streamlined operations, the Reorganized Debtors will be best positioned to continue to pursue value maximizing alternatives, including:

1.      forming strategic partnerships with parties who are able to complement the Debtors' satellite offerings and benefit from the Debtors' satellite and terrestrial network components; and

2.      raising additional capital to continue funding their developmental-stage enterprise to the extent additional funding is necessary.

The Debtors believe that the elimination of a significant portion of their current debt coupled with their equity value, which is expected to exceed significantly the debt of the Reorganized Debtors, will enable the Reorganized Debtors to attract potential strategic relationships that will capitalize on the benefits of the Debtors' satellite system and spectrum. Without the overhang of the Debtors' capital structure and without the burden of the costs of the bankruptcy proceedings, the Reorganized Debtors will be well positioned to continue their operations.

With their balance sheet and with additional time, the Reorganized Debtors should be able to attract new capital, as and when needed, in the form of debt or equity to continue to fund their ongoing operations.

In connection with developing the Plan, the Debtors reviewed their current business operations and compared their prospects as an ongoing business enterprise with the estimated recoveries of Holders of Allowed Claims and Interests in various liquidation scenarios. As a result, the Debtors concluded that the recovery for Holders of Allowed Claims and Interests would be maximized by continuing to operate as a going concern. The Debtors believe that their business and assets have significant value that would not be realized in a liquidation, either in whole or in substantial part. Consistent with the liquidation analysis described in Article VII.C.2 of the Disclosure Statement, the value of the Debtors' assets would be considerably greater if the Debtors operate as a going concern instead of liquidating. Moreover, the Debtors believe that any alternative to Confirmation of the Plan, such as a liquidation or attempts by another party in interest to file a plan of reorganization, would result in significant delays, litigation, and additional costs and, ultimately, would lower the recoveries for Holders of Allowed Claims and Interests. Accordingly, the Debtors strongly recommend that you vote to accept the Plan, if you are entitled to vote.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.*      *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "**Accrued Professional Compensation**" means, at any given moment, all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Confirmation Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses, but in all events subject to estimation as provided in Article IX.D hereof. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.      "**Administrative Claim**" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual, necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates (including wages, salaries, or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

3.      "**Administrative Claim Bar Date**" means the deadline for filing requests for payment of Administrative Claims, which shall be 45 days after the Effective Date.

4.      "**Agent**" means Wells Fargo Bank, N.A., as successor administrative agent under the Prepetition Credit Agreement.

5.      "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code; provided, however, that an Affiliate of the Debtors shall not include ICO Global or any of its affiliates that is not a Debtor.

6.    "**Allowed**" means, with respect to Claims:  (a) any Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code or a Final Order; (b) any Claim that is listed in the Schedules as of the Effective Date as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan or a Final Order; provided, however, that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if any, or such an objection is so interposed and the Claim shall have been Allowed for distribution purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors or the Reorganized Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

7.    "**Amended Facility**" means that certain credit facility to be entered into pursuant to the Amended Facility Agreement.

8.    "**Amended Facility Agreement**" means the agreement documenting the recovery of the Holders of the Prepetition Facility Claims under the Plan in form and substance substantially on the terms set forth in Exhibit D to the Third Amendment to the Plan Supplement, dated September 2, 2009.

9.    "**Asset Sale Event**" means the sale, for Cash, of all or substantially all of the assets of Reorganized DBSD and its subsidiaries, on a consolidated basis.

10.    "**Auction Rate Securities**" means the student-loan-backed auction-rate securities consisting of variable rate bonds with maturities ranging from 24 to 39 years owned by DBSD N.A.

11.    "*Ballot*" means the ballot upon which Holders of Impaired Claims or Interests entitled to vote shall cast their vote to accept or reject the Plan.

12.    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases.

13.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or any other court having jurisdiction over the Chapter 11 Cases.

14.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15.    "**Beneficial Interests**" means the interests of the Holders of Allowed Class 5 General Unsecured Claims in the assets of the Distribution Trust.

16.    "**Business Day**" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

17.    "**Cash**" means the legal tender of the United States of America or the equivalent thereof.

18.    "**Cause of Action**" means any claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362, 510, 542, 543, 544 through 550,

3

or 553 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; (f) any claim or cause of action of any kind against any Released Party or Exculpated Party based in whole or in part upon acts or omissions occurring prior to or after the Petition Date; and (g) any Cause of Action listed in the Plan Supplement.

19.     "**Certificate**" means any instrument evidencing a Claim or an Interest.

20.     "**Chapter 11 Cases**" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

21.     "**Claim**" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

22.     "**Claims and Solicitation Agent**" means The Garden City Group, Inc.

23.     "**Claims Bar Date**" means the date by which Proofs of Claim must be Filed with respect to such Claim, as ordered by the Bankruptcy Court.

24.     "**Claims Bar Date Order**" means the *Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 90].

25.     "**Claims Register**" means the official register of Claims maintained by the Claims and Solicitation Agent.

26.     "**Class**" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

27.     "**Class 5 General Unsecured Claims**" means, collectively, all General Unsecured Claims classified in Class 5A, Class 5B, Class 5C, Class 5D, Class 5E, Class 5F, Class 5G, Class 5H, and Class 5I.

28.     "**Class 6 Unsecured Convenience Class Claims**" means, collectively, all Unsecured Convenience Class Claims classified in Class 6A, Class 6B, Class 6C, Class 6D, Class 6E, Class 6F, Class 6G, Class 6H, and Class 6I.

29.     "**Collateral Trust Agreement**" means that certain intercreditor agreement with respect to the Amended Facility Agreement and the New Credit Facility Agreement by and among certain of the Reorganized Debtors, the New Credit Facility Agent, and any lender or administrative agent under the Amended Facility Agreement that becomes a party thereto, in form and substance mutually acceptable to the Reorganized Debtors, the Principal Noteholders, and the Existing Stockholder, and substantially on the terms set forth in Exhibit F to the Third Amendment to the Plan Supplement, dated September 2, 2009.

30.     "**Committee**" means the official committee of unsecured creditors (and any and all subcommittees thereof) appointed in the Chapter 11 Cases on May 29, 2009 pursuant to section 1102 of the Bankruptcy Code.

31.     "**Confirmation**" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

32.     "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

33.     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

34.　　"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

35.　　"**Consummation**" means the occurrence of the Effective Date.

36.　　"**Constituents' Equity Allocation**" means the total number of shares of New Common Stock to be issued on the Effective Date or reserved for issuance as of the Effective Date to Holders of Allowed Class 2 Senior Note Claims, Allowed Class 8 Other Equity Interests, and Allowed Class 9 Existing Stockholder Interests, which shall be the number of New Common Stock to be issued on the Effective Date or reserved for issuance as of the Effective Date to Entities other than the recipients of the General Unsecured Creditors' Shares and the New Credit Facility Shares.  The Constituents' Equity Allocation is subject to dilution by the issuance, if any, of New Common Stock upon exercise of the Warrants.

37.　　"**Cure Claim**" means a Claim based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

38.　　"**D&O Indemnification Agreements**" means those agreements to be executed by each New Board member, in a form reasonably acceptable to such member and Reorganized DBSD upon his or her appointment, and in substantially the forms set forth in the Plan Supplement.

39.　　"**DBSD Amended and Restated Bylaws**" means the amended and restated bylaws for the Reorganized Debtors, in form and substance acceptable to the Debtors, the Principal Noteholders, and the Existing Stockholder, and in substantially the form set forth in the Plan Supplement.

40.　　"**DBSD Amended and Restated Charter**" means the amended and restated charter for the Reorganized Debtors, in form and substance acceptable to the Debtors, the Principal Noteholders, and the Existing Stockholder, and in substantially the form set forth in the Plan Supplement.

41.　　"**DBSD N.A.**" means DBSD North America, Inc., formerly known as ICO North America, Inc.

42.　　"**Debtor**" means one of the Debtors, in its individual capacity as a debtor in these Chapter 11 Cases.

43.　　"**Debtors**" means, collectively:  DBSD North America, Inc.; 3421554 Canada Inc.; DBSD Satellite Management, LLC; DBSD Satellite North America Limited; DBSD Satellite Services G.P.; DBSD Satellite Services Limited; DBSD Services Limited; New DBSD Satellite Services G.P.; and SSG UK Limited.

44.　　"**Debtors in Possession**" means, collectively, the Debtors, as debtors in possession in these Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

45.　　"**Delayed Draw Amount**" means the amount of the New Credit Facility that is not accessed on or before the Effective Date in accordance with the New Credit Facility Agreement.

46.　　"**Disbursing Agent**" means the Reorganized Debtors, or the Entity or Entities chosen by the Reorganized Debtors to make or facilitate distributions pursuant to the Plan.

47.　　"**Disclosure Statement**" means the *Disclosure Statement for the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated July 24, 2009 as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

48.　　"**Disputed**" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

K&E 15432970.4

49.　"**Distribution Trust**" means that certain trust to be created on the Effective Date for the benefit of the Distribution Trust Beneficiaries in accordance with the provisions of the Distribution Trust Agreement.

50.　"**Distribution Trust Agreement**" means that certain trust agreement, in form and substance satisfactory to the Debtors and the Committee and to be Filed as part of the Plan Supplement, that, among other things: (a) establishes and governs the Distribution Trust; (b) sets forth the respective powers, duties, and responsibilities of the Distribution Trustee; and (c) provides for distribution of the funds in the Distribution Trust to the Distribution Trust Beneficiaries.

51.　"**Distribution Trust Beneficiaries**" means the Holders of Allowed Class 5 General Unsecured Claims.

52.　"**Distribution Trust Fund Amount**" means an amount in Cash equal to $400,000.00.

53.　"**Distribution Trustee**" means the Entity to be designated by the Committee, identified at or prior to the Confirmation Hearing, and retained as of the Effective Date, as the employee or fiduciary responsible for implementing the applicable provisions of the Plan, with respect to, and administering the Distribution Trust in accordance with, the Plan and the Distribution Trust Agreement.

54.　"**Effective Date**" means the date selected by the Debtors that is a Business Day after the Confirmation Date on which the conditions as specified in the Plan have been satisfied or waived.　Unless otherwise specifically provided in the Plan, any of the documents contained in the Plan Supplement, or the New Credit Facility Agreement, anything required to be done by the Debtors on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

55.　"**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

56.　"**Equity Security**" shall have the meaning set forth in section 101(16) of the Bankruptcy Code in a Debtor.

57.　"**Equity Valuation**" means the aggregate value of Original Shares based on: (a) in the case of a Sale Event, the actual value per share received in respect of the Original Shares as a result of the Sale Event; (b) in the case of a Public Merger Event, the per share volume weighted average price (**VWAP**) of the Securities received in such transaction in respect of the Original Shares during any Reference Period following such Public Merger Event and ending prior to the expiration date of the Warrants; (c) in the case of a Qualified Offering, the per share VWAP of the Original Shares during any Reference Period following the Qualified Offering and ending prior to the expiration date of the Warrants; (d) in the case of an Asset Sale Event, the per share value of the Original Shares, after reduction for all liabilities (including contingent liabilities) of Reorganized DBSD, of the consideration received by Reorganized DBSD as a result of the Asset Sale Event; and (e) in the case of a Liquidation Event, the per share value of the consideration received by the stockholders of Reorganized DBSD in respect of the Original Shares as a result of the Liquidation Event; in each case increased by the aggregate value of any dividends or distributions made to the stockholders of Reorganized DBSD from the Effective Date until the Valuation Event.

58.　"**Equity Value**" means for purposes of distribution, $572.8 million, which is the average of the total common equity value of the Reorganized Debtors set forth in Article VI.A of the Disclosure Statement or such amount provided in the Confirmation Order as the Equity Value of the Reorganized Debtors.

59.　"**Estate**" means the bankruptcy estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

60.　"**Exchange Act**" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq., as now in effect and hereafter amended.

61.　"**Exculpated Claim**" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in or out of court restructuring, the Debtors' Chapter 11 Cases, formulation,

preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other agreement; provided, however, that Exculpated Claims shall not include liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, willful misconduct, criminal conduct, or misuse of confidential information that causes damages or ultra vires acts; provided, further, that Exculpated Claims shall not include liability of any Entity that is determined by a Final Order to have arisen from the potential Causes of Action listed with respect to such Entity in Category 18 of the List of Causes of Action to Be Retained by the Reorganized Debtors set forth in Exhibit M to the Plan Supplement [Docket No. 269].

62.  "**Exculpated Party**" means each of:  (a) the Debtors; (b) the Reorganized Debtors; (c) the New Credit Facility Agent and the New Credit Facility Lenders; (d) the Committee and the members thereof, in each case, in their capacity as such; (e) the Principal Noteholders; (f) the Senior Note Indenture Trustee; (g) the Existing Stockholder; and (h) all of the respective members (including ex officio members), officers, directors, principals, managers, employees, partners, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, consultants, agents, affiliates, and representatives of each of the foregoing Entities (in each case in his, her, or its capacity as such) as of or after the Petition Date.

63.  "**Executory Contract**" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

64.  "**Existing Stockholder**" means ICO Global.

65.  "**Existing Stockholder Interests**" means any Equity Security in DBSD N.A. held by the Existing Stockholder.

66.  "**Existing Stockholder Shares**" means the 5% of the Constituents' Equity Allocation to be issued to the Holder of Allowed Class 9 Existing Stockholder Interests.

67.  "**FCC**" means the Federal Communications Commission.

68.  "**Federal Judgment Rate**" means the federal judgment rate in effect as of the Petition Date.

69.  "**File**" or "**Filed**" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

70.  "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

71.  "**First Day Pleadings**" means those certain pleadings Filed by the Debtors within five days of the Petition Date.

72.  "**General Unsecured Claim**" means any Claim against any of the Debtors that is not a/an: (a) Administrative Claim; (b) Priority Tax Claim; (c) Prepetition Facility Claim; (d) Senior Note Claim; (e) Other Secured Claims; (f) Other Priority Claim; (g) Unsecured Convenience Class Claim; or (h) Intercompany Claim.

73.  "**General Unsecured Creditors' Shares**" means the total number of shares of New Common Stock to be issued on the Effective Date to Holders of Allowed Class 5 General Unsecured Claims or to the Distribution Trust for potential distribution to Holders of Allowed Class 5 General Unsecured Claims, which shall be a number of shares equal to (a) the total number of shares of New Common Stock to be issued and outstanding on

the Effective Date, minus the New Credit Facility Shares to be issued on the Effective Date, multiplied by (b) the lesser of (i) 1.5% and (ii) a fraction (expressed as a percentage), the denominator of which is the Equity Value and the numerator of which is (x) $8.6 million minus (y) 50% of the aggregate amount asserted as Class 5 General Unsecured Claims filed prior to the Effective Date by the counterparties to Executory Contracts and Unexpired Leases that are assumed pursuant to the Plan or prior order of the Court, which Claims relate to the Executory Contracts or Unexpired Leases that are so assumed; provided that, if no Class 5 General Unsecured Claim was filed by a counterparty to an assumed contract or lease, then the Claim amount for purposes of this clause (y) shall be the aggregate Cure Claim amount Allowed on account of such Executory Contract or Unexpired Lease. Upon the termination of the Distribution Trust, any General Unsecured Creditors' Shares issued to the Distribution Trust but later determined to be in excess of the number of shares calculated pursuant to the foregoing sentence shall be deemed to be canceled and extinguished and shall not be outstanding for any purpose without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. The General Unsecured Creditors' Shares are subject to dilution by the issuance, if any, of New Common Stock upon exercise of the Warrants and any other shares of New Common Stock issued after the Effective Date.

74. "**Governmental Unit**" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

75. "**Holder**" means, as applicable, an Entity holding a Claim or an Interest.

76. "**ICO Global**" means ICO Global Communications (Holdings) Limited including its Affiliates other than the Debtors.

77. "**Identified Company**" means the Entity identified by Reorganized DBSD to the Principal Noteholders (if any) in connection with negotiating the Support Agreement.

78. "**Impaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

79. "**Intercompany Claim**" means any Claim held by a Debtor against another Debtor; provided that, for the avoidance of doubt, the term Intercompany Claim does not include any Claims held by ICO Global against a Debtor or by a Debtor against ICO Global.

80. "**Intercompany Contract**" means any agreement, contract, or lease all parties to which are Debtors; provided that, for the avoidance of doubt, the term Intercompany Contract does not include any agreement, contract, or lease to which ICO Global is a party.

81. "**Intercompany Interest**" means any Equity Security in a Debtor held by another Debtor; provided that, for the avoidance of doubt, the term Intercompany Interest does not include an Equity Security in a Debtor held by ICO Global.

82. "**Interests**" means, collectively, Other Equity Interests, Existing Stockholder Interests, and Intercompany Interests.

83. "**Interim Compensation Order**" means the *Amended Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 91], as may have been modified by a Bankruptcy Court order approving the retention of the Professionals.

84. "**Judicial Code**" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

85. "**Liquidation Event**" means the dissolution or liquidation of Reorganized DBSD.

86. "**Lien**" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

87. "**New Board**" means the initial board of directors of Reorganized DBSD.

K&E 15432970.4

88. "**New Common Stock**" means the newly-issued shares of common stock in Reorganized DBSD, par value $.001 per share.

89. "**New Credit Facility**" means that certain second lien, secured credit facility to be entered into pursuant to the New Credit Facility Agreement.

90. "**New Credit Facility Agent**" means an Entity, as administrative agent under the New Credit Facility Agreement, or any successor agent appointed in accordance with the New Credit Facility Agreement.

91. "**New Credit Facility Agreement**" means that certain credit agreement to be entered into by and among the Reorganized Debtors, the New Credit Facility Agent, and the New Credit Facility Lenders on the Effective Date, in form and substance substantially on the terms set forth in Exhibit E to the Third Amendment to the Plan Supplement, dated September 2, 2009, and on terms and subject to conditions substantially as set forth in [Exhibit Q] to the [Fifth] Amendment to the Plan Supplement, dated September [18,] 2009.

92. "**New Credit Facility Commitment Letters**" means those certain commitment letters signed by the New Credit Facility Lenders pursuant to the which the New Credit Facility Lenders committed to provide the Debtors and the Reorganized Debtors, as applicable, with approximately $53,750,000 in financing under the New Credit Facility, in form and substance substantially on the terms and conditions set forth in [Exhibit Q] to the [Fifth] Amendment to the Plan Supplement, dated September [18], 2009.

93. "**New Credit Facility Lenders**" means the lenders from time to time under the New Credit Facility.

94. "**New Credit Facility Shares**" means (a) the 5% to 10% of the New Common Stock to be issued on the Effective Date or reserved for issuance as of the Effective Date to the New Credit Facility Lenders as set forth in the New Credit Facility Agreement and (b) the 5% to 7% of the New Common Stock to be issued upon the Debtors accessing the Delayed Draw Amount to the New Credit Facility Lenders as set forth in the New Credit Facility Agreement. The New Credit Facility Shares are subject to dilution by the issuance, if any, of New Common Stock upon exercise of the Warrants.

95. "**Original Shares**" means the shares of New Common Stock outstanding as of the Effective Date (appropriately adjusted for stock splits, recombinations, and similar events).

96. "**Other Equity Interest**" means any: (a) Equity Security in DBSD N.A., including all issued, unissued, authorized, or outstanding shares of stock together with any warrants, options, and contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto (to the extent such warrants, options, and contractual rights to purchase or acquire such Equity Securities are exercised on or before the Effective Date in accordance with the terms thereof); and (b) partnership, limited liability company, and similar interest in DBSD N.A.; provided that, Other Equity Interest does not include any Existing Stockholder Interests or Intercompany Interest.

97. "**Other Equity Shares**" means the 0.0081% of the Constituents' Equity Allocation to be issued to the Holders of Allowed Class 8 Other Equity Interests.

98. "**Other Priority Claim**" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim and a Priority Tax Claim.

99. "**Other Secured Claim**" means any Secured Claim that is not a Prepetition Facility Claim or a Senior Note Claim.

100. "**Petition Date**" means May 15, 2009.

9

101.    "**Plan**" means this *Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code*, as amended, supplemented, or modified from time to time, including, without limitation, the Plan Supplement, which is incorporated herein by reference.

102.    "**Plan Supplement**" means that certain Plan Supplement Filed on August 17, 2009 [Docket Nos. 268 and 269], and as the same may be altered, amended, modified, removed, augmented, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules.

103.    "**Prepetition Credit Agreement**" means that certain Amended and Restated Revolving Credit Agreement, dated as of April 7, 2008, by and among DBSD N.A., as borrower, each of DBSD N.A.'s subsidiaries, as guarantors, Wells Fargo Bank, N.A., as successor administrative agent, the financial institutions and other persons from time to time lenders party thereto, and The Bank of New York Mellon (f/k/a The Bank of New York), as collateral agent.

104.    "**Prepetition Facility**" means that certain $40 million working capital facility entered into pursuant to the Prepetition Credit Agreement.

105.    "**Prepetition Facility Claim**" means any Claim derived from or based upon the Prepetition Facility, including any accrued interest and fees and expenses owed thereunder, not previously paid by the Debtors.

106.    "**Prepetition Lenders**" means the lenders from time to time under the Prepetition Credit Agreement.

107.    "**Principal Noteholders**" means those certain Senior Noteholders who are party to the Support Agreement.

108.    "**Priority Tax Claim**" means any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

109.    "**Pro Rata**" means:  (a) with respect to Claims, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of the Allowed Claims in that Class or the proportion that an Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan bears to the aggregate amount of such Allowed Claims and (b) with respect to Interests, the proportion that an Allowed Interest in a particular Class bears to the aggregate amount of the Allowed Interests in that Class or the proportion that an Allowed Interest in a particular Class and other Classes entitled to share in the same recovery as such Allowed Interest under the Plan bears to the aggregate amount of such Allowed Interests.

110.    "**Professional**" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

111.    "**Professional Fee Escrow Account**" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Reorganized Debtors on and after the Effective Date for the purpose of paying all Allowed and unpaid fees and expenses of Professionals in the Chapter 11 Cases.

112.    "**Professional Fee Reserve Amount**" means Accrued Professional Compensation through the Confirmation Date as estimated in accordance with Article IX.D hereof.

113.    "**Proof of Claim**" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

K&E 15432970.4

114.    "**Public Merger Event**" means any merger, business combination, or acquisition involving Reorganized DBSD, or substantially all of the assets of Reorganized DBSD, where the surviving company or acquiring company is a public reporting company and the consideration paid to the stockholders of Reorganized DBSD consists of Securities that are listed on a United States national securities exchange.

115.    "**Qualified Offering**" means a bona fide underwritten public offering by a nationally recognized investment banking firm registered under the Securities Act:  (a) that results in gross proceeds to Reorganized DBSD of not less than $150 million; and (b) following which the New Common Stock is listed on a United States national securities exchange.

116.    "**Reference Period**" means any period of 40 consecutive trading days during which:  (a) the Securities in question during each such trading day have a daily trading volume with a value not less than $13 million; (b) no Senior Noteholder is subject to any lock-up or similar agreement which has not fully expired or been terminated; (c) no Senior Noteholder is subject to any "black out" or other trading restriction imposed by the issuer (including as a result of being affiliated with any director or having received any information from Reorganized DBSD); and (d) the issuer has maintained the effectiveness of a shelf registration enabling all of the Senior Noteholders to freely transfer shares of New Common Stock under the Securities Act.

117.    "**Registration Rights Agreement**" means the registration rights agreement among Reorganized DBSD, the Principal Noteholders, and the Existing Stockholder, in form and substance mutually acceptable to the Reorganized Debtors, the Principal Noteholders, and the Existing Stockholder, and in substantially the form set forth in the Plan Supplement.

118.    "**Reinstated**" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Interest so as to leave such Claim or Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default:  (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder.

119.    "**Released Party**" means each of:  (a) the Debtors; (b) the Reorganized Debtors; (c) the New Credit Facility Agent and the New Credit Facility Lenders; (d) the Committee and the members thereof, in each case, in their capacity as such; (e) the Principal Noteholders; (f) the Senior Note Indenture Trustee; (g) the Existing Stockholder; and (h) all of the respective members (including ex officio members), officers, directors, principals, managers, employees, partners, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, consultants, agents, affiliates, and representatives of each of the foregoing Entities (in each case in his, her, or its capacity as such) as of and after the Petition Date.

120.    "**Reorganized Debtors**" means the Debtors, in each case, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

121.    "**Reorganized DBSD**" means DBSD N.A., as reorganized under and pursuant to the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

122.    "**Sale Event**" means the Cash acquisition by any Entity of a controlling interest in Reorganized DBSD.

K&E 15432970.4

123.     "**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be amended, modified, or supplemented from time to time.

124.     "**Secured**" means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a Secured Claim.

125.     "**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect and hereafter amended.

126.     "**Security**" shall have the meaning set forth in section 2(a)(1) of the Securities Act.

127.     "**Senior Note Claim**" means any Claim derived from or based upon the Senior Notes and the Senior Note Indenture.

128.     "**Senior Note Indenture**" means that certain indenture dated August 15, 2005, as supplemented and amended, among DBSD N.A., the guarantors named therein, and The Bank of New York Mellon (f/k/a The Bank of New York), as trustee, pursuant to which DBSD N.A. issued the 7.5% Convertible Senior Secured Notes due 2009.

129.     "**Senior Note Indenture Trustee**" means The Bank of New York Mellon (f/k/a The Bank of New York), in its capacity as trustee under the Indenture.

130.     "**Senior Note Indenture Trustee Fee Claim**" means a claim against the Debtors relating to any unpaid compensation, disbursement, fees, and expenses payable under the Senior Note Indenture accrued through the Effective Date.

131.     "**Senior Noteholders**" means Holders of the Senior Note Claims, including, without limitation, the Principal Noteholders.

132.     "**Senior Noteholders' Shares**" means the 94.9919% of the Constituents' Equity Allocation to be issued to the Holders of Allowed Class 2 Senior Note Claims.

133.     "**Senior Notes**" means those 7.5% Convertible Senior Secured Notes due 2009, issued under the Indenture.

134.     "**Stockholders' Agreement**" means the stockholders' agreement among Reorganized DBSD, the Senior Noteholders, and the Existing Stockholder, in form and substance mutually acceptable to the Debtors, the Principal Noteholders, and the Existing Stockholder, and in substantially the form set forth in the Plan Supplement.

135.     "**Support Agreement**" means the support agreement dated as of May 14, 2009, among the Debtors, the Principal Noteholders, and the Existing Stockholder, a copy of which is attached to the Disclosure Statement as Exhibit C.

136.     "**Transition Services Agreement**" means the transition services agreement among the Reorganized Debtors, the Principal Noteholders, and the Existing Stockholder, in form and substance mutually acceptable to the Reorganized Debtors, the Principal Noteholders, and the Existing Stockholders, and in substantially the form set forth in the Plan Supplement.  Without limiting the foregoing, the Transition Services Agreement shall provide for appropriate transition periods and that all third party services shall be passed through at cost.

K&E 15432970.4

137.     "**Unexpired Lease**" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

138.     "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

139.     "**Unsecured Convenience Class Claim**" means any Claim against any of the Debtors that is not a/an: (a) Administrative Claim, (b) Priority Tax Claim, (c) Prepetition Facility Claim, (d) Senior Note Claim, (e) Other Secured Claims, (f) Other Priority Claim, or (g) Intercompany Claim and (x) that is Allowed in an amount of $50,000.00 or less or (y) for which the Holder of such Claim elects to treat such Claim as an Unsecured Convenience Class Claim in accordance with Article III.B.5 hereof.

140.     "**Valuation Event**" means any of a Sale Event, a Public Merger Event, a Qualified Offer, a Liquidation Event, or an Asset Sale Event.

141.     "**Voting Classes**" means, collectively, Class 1, Class 2, Class 5A, Class 5B, Class 5C, Class 5D, Class 5E, Class 5F, Class 5G, Class 5H, Class 5I, Class 6A, Class 6B, Class 6C, Class 6D, Class 6E, Class 6F, Class 6G, Class 6H, Class 6I, Class 8, and Class 9.

142.     "**Voting Deadline**" means August 24, 2009.

143.     "**Voting Record Date**" means July 10, 2009.

144.     "**Warrants**" means warrants to purchase up to 10.00% of the fully-diluted New Common Stock at an exercise price of $0.01 per share, as more fully set forth in the Warrant Agreement.

145.     "**Warrant Agreement**" means the warrant agreement among the Reorganized Debtors and the Existing Stockholder, in form and substance mutually acceptable to the Debtors, the Principal Noteholders, and the Existing Stockholder, and in substantially the form set forth in the Plan Supplement.

146.     "**Warrant Term**" means the second anniversary of the Effective Date, or subject to the occurrence of certain events as set forth in Article IV.G hereof, a later date.

B.     *Rules of Interpretation*

The following rules for interpretation and construction shall apply to this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in such form or substantially on such terms and conditions; (3) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (4) unless otherwise stated, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time; (5) any reference herein to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (6) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (7) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (9) unless otherwise stated, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

K&E 15432970.4

C.    *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than Section 5-1401 and Section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.    *Administrative Claims*

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Administrative Claim, each Holder of such Allowed Administrative Claim shall be paid in full in Cash on the later of the Effective Date or the date on which an Administrative Claim becomes an Allowed Administrative Claim or as soon as practicable thereafter.

All requests for payment of an Administrative Claim must be Filed with the Claims and Solicitation Agent and served upon counsel to the Debtors or the Reorganized Debtors, as applicable, on or before the Administrative Claim Bar Date. Any request for payment of an Administrative Claim that is not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court or other Entity. The Reorganized Debtors may settle and pay any Administrative Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

B.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Confirmation Date shall receive on, or as soon as reasonably practicable after the Effective Date: (1) Cash in an amount equal to the amount of such

Allowed Priority Tax Claim; (2) Cash in an amount agreed to by such Holder and the Debtors; or (3) at the option of the Debtors, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of not more than 5 years after the Petition Date pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Summary*

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.      *Classification and Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1.   Class 1 - Prepetition Facility Claims

   (a)      *Classification*:  Class 1 consists of all Prepetition Facility Claims.

   (b)      *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Prepetition Facility Claim, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 1 Prepetition Facility Claim shall receive its Pro Rata share of the Reorganized Debtors' obligations under the Amended Facility Agreement.  The distribution to the Allowed Class 1 Claims takes into account and conforms to the relative priority and rights of the Claims in Class 1 and in Class 2 in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principals of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, and are in full settlement and discharge thereof.  Accordingly, the Holders of the Allowed Class 1 Claims shall have no entitlement to any portion of the distribution to the Holders of the Allowed Class 2 Claims.

   (c)      *Voting*:  Class 1 is Impaired by the Plan.  Holders of Class 1 Prepetition Facility Claims are entitled to vote to accept or reject the Plan.

2.   Class 2 – Senior Note Claims

   (a)      *Classification*:  Class 2 consists of all Senior Note Claims.  For purposes of the Plan, all Senior Note Claims shall be Allowed in full without setoff, counterclaim, defense, or recharacterization of any kind or nature whatsoever.

   (b)      *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Senior Note Claim, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 2 Senior Note Claim shall receive its Pro Rata share of the Senior Noteholders' Shares.  The distributions to the Allowed Class 1 Claims and the Allowed Class 2 Claims take into account and conform to the relative priority and rights of the Claims in Class 1 and in Class 2 in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising

under general principals of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, and are in full settlement and discharge thereof.

The Holders of Allowed Class 2 Senior Note Claims are entitled to receive the distributions provided pursuant to the Plan to Holders of Allowed Class 5 General Unsecured Claims, Allowed Class 6 Unsecured Convenience Class Claims, Allowed Class 8 Other Equity Interests, and Allowed Class 9 Existing Stockholder Interests. Notwithstanding the foregoing, the Holders of Allowed Class 2 Senior Note Claims have agreed to transfer their right to receive such distribution in favor of the Holders of Allowed Class 5 General Unsecured Claims, Allowed Class 6 Unsecured Convenience Class Claims, Allowed Class 8 Other Equity Interests, and Allowed Class 9 Existing Stockholder Interests each of which shall receive the treatment described in accordance with Article III.B.5, Article III.B.6, Article III.B.8, and Article III.B.9 hereof, respectively.

(c)     *Voting*:  Class 2 is Impaired by the Plan.  Holders of Class 2 Senior Note Claims are entitled to vote to accept or reject the Plan.

3.   Class 3 - Other Secured Claims

(a)     *Classification*:  Class 3 consists of all Other Secured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, release, and discharge of and in exchange for each Allowed Other Secured Claim, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 3 Other Secured Claim shall receive one of the following treatments, in the sole discretion of the Debtors or the Reorganized Debtors, as applicable: (i) payment of such Allowed Other Secured Claim in full in Cash; (ii) delivery of the collateral securing such Allowed Other Secured Claim and payment of interest required to be paid under section 506(b) of the Bankruptcy Code, if any; or (iii) treatment of such Allowed Other Secured Claim in any other manner such that the Allowed Other Secured Claim shall be rendered Unimpaired.

(c)     *Voting*:  Class 3 is Unimpaired by the Plan.  Each Holder of a Class 3 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Class 3 Other Secured Claims are not entitled to vote to accept or reject the Plan.

4.   Class 4 - Other Priority Claims

(a)     *Classification*:  Class 4 consists of all Other Priority Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, release, and discharge of and in exchange for each Allowed Other Priority Claim, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 4 Other Priority Claim shall be paid in full in Cash, either in accordance with the original terms or on or as soon as practicable after the Effective Date.

(c)     *Voting*:  Class 4 is Unimpaired by the Plan.  Each Holder of a Class 4 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Class 4 Other Priority Claims are not entitled to vote to accept or reject the Plan.

5. Class 5 - General Unsecured Claims

    (a)    Class 5A – General Unsecured Claims against DBSD North America, Inc.

        (i)    *Classification*:  Class 5A consists of all General Unsecured Claims against DBSD North America, Inc.

        (ii)    *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 5A General Unsecured Claim against DBSD North America, Inc., on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 5A General Unsecured Claim against DBSD North America, Inc. shall receive:  (1) its Pro Rata share of the General Unsecured Creditors' Shares; and (2) its Pro Rata share of the Distribution Trust Fund Amount remaining, if any, after the Distribution Trust is terminated.

        (iii)    *Election Rights*:  Each Holder of an Allowed Class 5A General Unsecured Claim against DBSD North America, Inc. may elect to be treated as a Holder of an Allowed Class 6A Unsecured Convenience Class Claim against DBSD North America, Inc. by electing to reduce its Allowed Class 5A General Unsecured Claim against DBSD North America, Inc. to the amount of $50,000.00 in full and final satisfaction, release, and discharge of such Allowed Claim.  Any such election must be made on the Ballot, and, except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a General Unsecured Claim can elect the treatment as an Unsecured Convenience Class Claim after the Voting Deadline.  Upon any such valid election, the Claim of such Holder shall be automatically reduced to $50,000.00, and such Holder's otherwise applicable share of the General Unsecured Creditors' Shares shall be canceled and of no further force or effect.

        (iv)    *Voting*:  Class 5A is Impaired by the Plan.  Holders of Class 5A General Unsecured Claims against DBSD North America, Inc. are entitled to vote to accept or reject the Plan.

    (b)    Class 5B – General Unsecured Claims against 3421554 Canada Inc.

        (i)    *Classification*:  Class 5B consists of all General Unsecured Claims against 3421554 Canada Inc.

        (ii)    *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 5B General Unsecured Claim against 3421554 Canada Inc., on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 5B General Unsecured Claim against 3421554 Canada Inc. shall receive: (1) its Pro Rata share of the General Unsecured Creditors' Shares; and (2) its Pro Rata share of the Distribution Trust Fund Amount remaining, if any, after the Distribution Trust is terminated.

        (iii)    *Election Rights*:  Each Holder of an Allowed Class 5B General Unsecured Claim against 3421554 Canada Inc. may elect to be treated as a Holder of an Allowed Class 6B Unsecured Convenience Class Claim against 3421554 Canada Inc. by electing to reduce its Allowed Class 5B General Unsecured Claim against 3421554 Canada Inc. to the amount of $50,000.00 in full and final satisfaction, release, and discharge of such Allowed Claim.  Any such election must be made on the Ballot, and, except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a General Unsecured Claim can elect the treatment as an Unsecured Convenience Class Claim after the Voting Deadline.  Upon any such valid election, the Claim of such Holder shall be automatically reduced to $50,000.00, and such Holder's otherwise applicable share of the General Unsecured Creditors' Shares shall be canceled and of no further force or effect.

(iv) *Voting*: Class 5B is Impaired by the Plan. Holders of Class 5B General Unsecured Claims against 3421554 Canada Inc. are entitled to vote to accept or reject the Plan.

(c) <u>Class 5C – General Unsecured Claims against DBSD Satellite Management, LLC</u>

(i) *Classification*: Class 5C consists of all General Unsecured Claims against DBSD Satellite Management, LLC.

(ii) *Treatment*: In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 5C General Unsecured Claim against DBSD Satellite Management, LLC, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 5C General Unsecured Claim against DBSD Satellite Management, LLC shall receive: (1) its Pro Rata share of the General Unsecured Creditors' Shares; and (2) its Pro Rata share of the Distribution Trust Fund Amount remaining, if any, after the Distribution Trust is terminated.

(iii) *Election Rights*: Each Holder of an Allowed Class 5C General Unsecured Claim against DBSD Satellite Management, LLC may elect to be treated as a Holder of an Allowed Class 6C Unsecured Convenience Class Claim against DBSD Satellite Management, LLC by electing to reduce its Allowed Class 5C General Unsecured Claim against DBSD Satellite Management, LLC to the amount of $50,000.00 in full and final satisfaction, release, and discharge of such Allowed Claim. Any such election must be made on the Ballot, and, except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a General Unsecured Claim can elect the treatment as an Unsecured Convenience Class Claim after the Voting Deadline. Upon any such valid election, the Claim of such Holder shall be automatically reduced to $50,000.00, and such Holder's otherwise applicable share of the General Unsecured Creditors' Shares shall be canceled and of no further force or effect.

(iv) *Voting*: Class 5C is Impaired by the Plan. Holders of Class 5C General Unsecured Claims against DBSD Satellite Management, LLC are entitled to vote to accept or reject the Plan.

(d) <u>Class 5D – General Unsecured Claims against DBSD Satellite North America Limited</u>

(i) *Classification*: Class 5D consists of all General Unsecured Claims against DBSD Satellite North America Limited.

(ii) *Treatment*: In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 5D General Unsecured Claim against DBSD Satellite North America Limited, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 5D General Unsecured Claim against DBSD Satellite North America Limited shall receive: (1) its Pro Rata share of the General Unsecured Creditors' Shares; and (2) its Pro Rata share of the Distribution Trust Fund Amount remaining, if any, after the Distribution Trust is terminated.

(iii) *Election Rights*: Each Holder of an Allowed Class 5D General Unsecured Claim against DBSD Satellite North America Limited may elect to be treated as a Holder of an Allowed Class 6D Unsecured Convenience Class Claim against DBSD Satellite North America Limited by electing to reduce its Allowed Class 5D General Unsecured Claim against DBSD Satellite North America Limited to the amount of $50,000.00 in full and final satisfaction, release, and discharge of such Allowed Claim. Any such election must be made on the Ballot, and, except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a General Unsecured Claim can elect the treatment as an Unsecured

18

Convenience Class Claim after the Voting Deadline. Upon any such valid election, the Claim of such Holder shall be automatically reduced to $50,000.00, and such Holder's otherwise applicable share of the General Unsecured Creditors' Shares shall be canceled and of no further force or effect.

(iv)   *Voting*: Class 5D is Impaired by the Plan. Holders of Class 5D General Unsecured Claims against DBSD Satellite North America Limited are entitled to vote to accept or reject the Plan.

(e)   <u>Class 5E – General Unsecured Claims against DBSD Satellite Services G.P.</u>

(i)   *Classification*: Class 5E consists of all General Unsecured Claims against DBSD Satellite Services G.P.

(ii)   *Treatment*: In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 5E General Unsecured Claim against DBSD Satellite Services G.P., on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 5E General Unsecured Claim against DBSD Satellite Services G.P. shall receive: (1) its Pro Rata share of the General Unsecured Creditors' Shares; and (2) its Pro Rata share of the Distribution Trust Fund Amount remaining, if any, after the Distribution Trust is terminated.

(iii)   *Election Rights*: Each Holder of an Allowed Class 5E General Unsecured Claim against DBSD Satellite Services G.P. may elect to be treated as a Holder of an Allowed Class 6E Unsecured Convenience Class Claim against DBSD Satellite Services G.P. by electing to reduce its Allowed Class 5E General Unsecured Claim against DBSD Satellite Services G.P. to the amount of $50,000.00 in full and final satisfaction, release, and discharge of such Allowed Claim. Any such election must be made on the Ballot, and, except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a General Unsecured Claim can elect the treatment as an Unsecured Convenience Class Claim after the Voting Deadline. Upon any such valid election, the Claim of such Holder shall be automatically reduced to $50,000.00, and such Holder's otherwise applicable share of the General Unsecured Creditors' Shares shall be canceled and of no further force or effect.

(iv)   *Voting*: Class 5E is Impaired by the Plan. Holders of Class 5E General Unsecured Claims against DBSD Satellite Services G.P. are entitled to vote to accept or reject the Plan.

(f)   <u>Class 5F – General Unsecured Claims against DBSD Satellite Services Limited</u>

(i)   *Classification*: Class 5F consists of all General Unsecured Claims against DBSD Satellite Services Limited.

(ii)   *Treatment*: In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 5F General Unsecured Claim against DBSD Satellite Services Limited, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 5F General Unsecured Claim against DBSD Satellite Services Limited shall receive: (1) its Pro Rata share of the General Unsecured Creditors' Shares; and (2) its Pro Rata share of the Distribution Trust Fund Amount remaining, if any, after the Distribution Trust is terminated.

(iii)   *Election Rights*: Each Holder of an Allowed Class 5F General Unsecured Claim against DBSD Satellite Services Limited may elect to be treated as a Holder of an Allowed Class 6F Unsecured Convenience Class Claim against DBSD Satellite Services Limited by electing to reduce its Allowed Class 5F General

Unsecured Claim against DBSD Satellite Services Limited to the amount of $50,000.00 in full and final satisfaction, release, and discharge of such Allowed Claim. Any such election must be made on the Ballot, and, except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a General Unsecured Claim can elect the treatment as an Unsecured Convenience Class Claim after the Voting Deadline. Upon any such valid election, the Claim of such Holder shall be automatically reduced to $50,000.00, and such Holder's otherwise applicable share of the General Unsecured Creditors' Shares shall be canceled and of no further force or effect.

(iv) *Voting*: Class 5F is Impaired by the Plan. Holders of Class 5F General Unsecured Claims against DBSD Satellite Services Limited are entitled to vote to accept or reject the Plan.

(g) Class 5G – General Unsecured Claims against DBSD Services Limited

(i) *Classification*: Class 5G consists of all General Unsecured Claims against DBSD Services Limited.

(ii) *Treatment*: In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 5G General Unsecured Claim against DBSD Services Limited, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 5G General Unsecured Claim against DBSD Services Limited shall receive: (1) its Pro Rata share of the General Unsecured Creditors' Shares; and (2) its Pro Rata share of the Distribution Trust Fund Amount remaining, if any, after the Distribution Trust is terminated.

(iii) *Election Rights*: Each Holder of an Allowed Class 5G General Unsecured Claim against DBSD Services Limited may elect to be treated as a Holder of an Allowed Class 6G Unsecured Convenience Class Claim against DBSD Services Limited by electing to reduce its Allowed Class 5G General Unsecured Claim against DBSD Services Limited to the amount of $50,000.00 in full and final satisfaction, release, and discharge of such Allowed Claim. Any such election must be made on the Ballot, and, except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a General Unsecured Claim can elect the treatment as an Unsecured Convenience Class Claim after the Voting Deadline. Upon any such valid election, the Claim of such Holder shall be automatically reduced to $50,000.00, and such Holder's otherwise applicable share of the General Unsecured Creditors' Shares shall be canceled and of no further force or effect.

(iv) *Voting*: Class 5G is Impaired by the Plan. Holders of Class 5G General Unsecured Claims against DBSD Services Limited are entitled to vote to accept or reject the Plan.

(h) Class 5H – General Unsecured Claims against New DBSD Satellite Services G.P.

(i) *Classification*: Class 5H consists of all General Unsecured Claims against New DBSD Satellite Services G.P.

(ii) *Treatment*: In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 5H General Unsecured Claim against New DBSD Satellite Services G.P., on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 5H General Unsecured Claim against New DBSD Satellite Services G.P. shall receive: (1) its Pro Rata share of the General Unsecured Creditors' Shares; and (2) its Pro Rata share of the Distribution Trust Fund Amount remaining, if any, after the Distribution Trust is terminated.

(iii) *Election Rights*: Each Holder of an Allowed Class 5H General Unsecured

Claim against New DBSD Satellite Services G.P. may elect to be treated as a Holder of an Allowed Class 6H Unsecured Convenience Class Claim against New DBSD Satellite Services G.P. by electing to reduce its Allowed Class 5H General Unsecured Claim against New DBSD Satellite Services G.P. to the amount of $50,000.00 in full and final satisfaction, release, and discharge of such Allowed Claim. Any such election must be made on the Ballot, and, except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a General Unsecured Claim can elect the treatment as an Unsecured Convenience Class Claim after the Voting Deadline. Upon any such valid election, the Claim of such Holder shall be automatically reduced to $50,000.00, and such Holder's otherwise applicable share of the General Unsecured Creditors' Shares shall be canceled and of no further force or effect.

(iv) *Voting*: Class 5H is Impaired by the Plan. Holders of Class 5H General Unsecured Claims against New DBSD Satellite Services G.P. are entitled to vote to accept or reject the Plan.

(i) <u>Class 5I – General Unsecured Claims against SSG UK Limited</u>

(i) *Classification*: Class 5I consists of all General Unsecured Claims against SSG UK Limited.

(ii) *Treatment*: In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 5I General Unsecured Claim against SSG UK Limited, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 5I General Unsecured Claim against SSG UK Limited shall receive: (1) its Pro Rata share of the General Unsecured Creditors' Shares; and (2) its Pro Rata share of the Distribution Trust Fund Amount remaining, if any, after the Distribution Trust is terminated.

(iii) *Election Rights*: Each Holder of an Allowed Class 5I General Unsecured Claim against SSG UK Limited may elect to be treated as a Holder of an Allowed Class 6I Unsecured Convenience Class Claim against SSG UK Limited by electing to reduce its Allowed Class 5I General Unsecured Claim against SSG UK Limited to the amount of $50,000.00 in full and final satisfaction, release, and discharge of such Allowed Claim. Any such election must be made on the Ballot, and, except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a General Unsecured Claim can elect the treatment as an Unsecured Convenience Class Claim after the Voting Deadline. Upon any such valid election, the Claim of such Holder shall be automatically reduced to $50,000.00, and such Holder's otherwise applicable share of the General Unsecured Creditors' Shares shall be canceled and of no further force or effect.

(iv) *Voting*: Class 5I is Impaired by the Plan. Holders of Class 5I General Unsecured Claims against SSG UK Limited are entitled to vote to accept or reject the Plan.

6. <u>Class 6 – Unsecured Convenience Class Claims</u>

(a) <u>Class 6A – Unsecured Convenience Class Claims against DBSD North America, Inc</u>.

(i) *Classification*: Class 6A consists of all Unsecured Convenience Class Claims against DBSD North America, Inc.

(ii) *Treatment*: In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 6A Unsecured Convenience Class Claim against DBSD North America, Inc., on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 6A Unsecured Convenience Class Claim against DBSD North America, Inc. shall be paid in Cash 40% of its

21

> Allowed Unsecured Convenience Class Claim.

    (iii)    *Voting*:  Class 6A is Impaired by the Plan.  Holders of Class 6A Unsecured Convenience Class Claims against DBSD North America, Inc. are entitled to vote to accept or reject the Plan.

(b)    <u>Class 6B – Unsecured Convenience Class Claims against 3421554 Canada Inc</u>.

    (i)    *Classification*:  Class 6B consists of all Unsecured Convenience Class Claims against 3421554 Canada Inc.

    (ii)    *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 6B Unsecured Convenience Class Claim against 3421554 Canada Inc., on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 6B Unsecured Convenience Class Claim against 3421554 Canada Inc. shall be paid in Cash 40% of its Allowed Unsecured Convenience Class Claim.

    (iii)    *Voting*:  Class 6B is Impaired by the Plan.  Holders of Class 6B Unsecured Convenience Class Claims against 3421554 Canada Inc. are entitled to vote to accept or reject the Plan.

(c)    <u>Class 6C – Unsecured Convenience Class Claims against DBSD Satellite Management, LLC</u>

    (i)    *Classification*:  Class 6C consists of all Unsecured Convenience Class Claims against DBSD Satellite Management LLC.

    (ii)    *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 6C Unsecured Convenience Class Claim against DBSD Satellite Management LLC, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 6C Unsecured Convenience Class Claim against DBSD Satellite Management LLC shall be paid in Cash 40% of its Allowed Unsecured Convenience Class Claim.

    (iii)    *Voting*:  Class 6C is Impaired by the Plan.  Holders of Class 6C Unsecured Convenience Class Claims against DBSD Satellite Management LLC are entitled to vote to accept or reject the Plan.

(d)    <u>Class 6D – Unsecured Convenience Class Claims against DBSD Satellite North America Limited</u>

    (i)    *Classification*:  Class 6D consists of all Unsecured Convenience Class Claims against DBSD Satellite North America Limited.

    (ii)    *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 6D Unsecured Convenience Class Claim against DBSD Satellite North America Limited, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 6D Unsecured Convenience Class Claim against DBSD Satellite North America Limited shall be paid in Cash 40% of its Allowed Unsecured Convenience Class Claim.

    (iii)    *Voting*:  Class 6D is Impaired by the Plan.  Holders of Class 6D Unsecured Convenience Class Claims against DBSD Satellite North America Limited are entitled to vote to accept or reject the Plan.

(e)    <u>Class 6E – Unsecured Convenience Class Claims against DBSD Satellite Services G.P</u>.

    (i)    *Classification*:  Class 6E consists of all Unsecured Convenience Class Claims against DBSD Satellite Services G.P.

(ii)     *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 6E Unsecured Convenience Class Claim against DBSD Satellite Services G.P., on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 6E Unsecured Convenience Class Claim against DBSD Satellite Services G.P. shall be paid in Cash 40% of its Allowed Unsecured Convenience Class Claim.

(iii)    *Voting*:  Class 6E is Impaired by the Plan.  Holders of Class 6E Unsecured Convenience Class Claims against DBSD Satellite Services G.P. are entitled to vote to accept or reject the Plan.

(f)    Class 6F – Unsecured Convenience Class Claims against DBSD Satellite Services Limited

(i)     *Classification*:  Class 6F consists of all Unsecured Convenience Class Claims against DBSD Satellite Services Limited.

(ii)     *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 6F Unsecured Convenience Class Claim against DBSD Satellite Services Limited, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 6F Unsecured Convenience Class Claim against DBSD Satellite Services Limited shall be paid in Cash 40% of its Allowed Unsecured Convenience Class Claim.

(iii)    *Voting*:  Class 6F is Impaired by the Plan.  Holders of Class 6F Unsecured Convenience Class Claims against DBSD Satellite Services Limited are entitled to vote to accept or reject the Plan.

(g)    Class 6G – Unsecured Convenience Class Claims against DBSD Services Limited

(i)     *Classification*:  Class 6G consists of all Unsecured Convenience Class Claims against DBSD Services Limited.

(ii)     *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 6G Unsecured Convenience Class Claim against DBSD Services Limited, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 6G Unsecured Convenience Class Claim against DBSD Services Limited shall be paid in Cash 40% of its Allowed Unsecured Convenience Class Claim.

(iii)    *Voting*:  Class 6G is Impaired by the Plan.  Holders of Class 6G Unsecured Convenience Class Claims against DBSD Services Limited are entitled to vote to accept or reject the Plan.

(h)    Class 6H – Unsecured Convenience Class Claims against New DBSD Satellite Services G.P.

(i)     *Classification*:  Class 6H consists of all Unsecured Convenience Class Claims against New DBSD Satellite Services G.P.

(ii)     *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 6H Unsecured Convenience Class Claim against New DBSD Satellite Services G.P., on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 6H Unsecured Convenience Class Claim against New DBSD Satellite Services G.P. shall be paid in Cash 40% of its Allowed Unsecured Convenience Class Claim.

(iii)    *Voting*:  Class 6H is Impaired by the Plan.  Holders of Class 6H Unsecured Convenience Class Claims against New DBSD Satellite Services G.P. are entitled to vote to accept or reject the Plan.

23

(i)      <u>Class 6I – Unsecured Convenience Class Claims against SSG UK Limited</u>

         (i)     *Classification*:  Class 6I consists of all Unsecured Convenience Class Claims against SSG UK Limited.

         (ii)     *Treatment*:  In full and final satisfaction, release, and discharge of and in exchange for each Allowed Class 6I Unsecured Convenience Class Claim against SSG UK Limited, on the Effective Date or as soon thereafter as practicable, each Holder of an Allowed Class 6I Unsecured Convenience Class Claim against SSG UK Limited shall be paid in Cash 40% of its Allowed Unsecured Convenience Class Claim.

         (iii)     *Voting*:  Class 6I is Impaired by the Plan.  Holders of Class 6I Unsecured Convenience Class Claims against SSG UK Limited are entitled to vote to accept or reject the Plan.

7.    <u>Class 7 - Intercompany Claims</u>

     (a)     *Classification:*  Class 7 consists of all Intercompany Claims.

     (b)     *Treatment:*  Each Allowed Intercompany Claim shall be Reinstated on the Effective Date. After the Effective Date, the Reorganized Debtors, in their sole discretion, shall have the right to resolve or compromise Allowed Intercompany Claims without further notice to or action, order, or approval of the Bankruptcy Court.

     (c)     *Voting:*  Class 7 is Unimpaired by the Plan.  Each Holder of a Class 7 Intercompany Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Class 7 Intercompany Claims are not entitled to vote to accept or reject the Plan.

8.    <u>Class 8 – Other Equity Interests</u>

     (a)     *Classification*:  Class 8 consists of all Other Equity Interests.

     (b)     *Treatment*:  On the Effective Date, all Other Equity Interests shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancellation or otherwise.  In full and final satisfaction, release, and discharge of and in exchange for each Other Equity Interest, on the Effective Date or as soon thereafter as practicable, each Holder of a Class 8 Other Equity Interest shall receive its Pro Rata share of the Other Equity Shares.

     (c)     *Voting*:  Class 8 is Impaired by the Plan.  Holders of Class 8 Other Equity Interest are entitled to vote to accept or reject the Plan.

9.    <u>Class 9 – Existing Stockholder Interests</u>

     (a)     *Classification*:  Class 9 consists of all Existing Stockholder Interests.

     (b)     *Treatment*:  On the Effective Date, all Existing Stockholder Interests shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancellation or otherwise.  In full and final satisfaction, settlement, release, and discharge of each Existing Stockholder Interest, and on account of all valuable consideration provided by the Existing Stockholder, including, without limitation, certain consideration provided in the Support Agreement, on the Effective Date or as soon thereafter as practicable, the Holder of such Class 9 Existing Stockholder Interest shall receive the Existing Stockholder Shares and the Warrants.

(c)　　*Voting*:　Class 9 is Impaired by the Plan.　Holders of Class 9 Existing Stockholder Interests are entitled to vote to accept or reject the Plan.

10.　Class 10 - Intercompany Interests

(a)　　*Classification:*　Class 10 consists of all Intercompany Interests.

(b)　　*Treatment:*　All Intercompany Interests shall be Reinstated for the benefit of the Holders thereof.

(c)　　*Voting:*　Class 10 is Unimpaired by the Plan.　Each Holder of a Class 10 Intercompany Interest is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.　Holders of Class 10 Intercompany Interests are not entitled to vote to accept or reject the Plan.

C.　　*Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.　　*Acceptance or Rejection of the Plan*

1.　Presumed Acceptance of the Plan

Classes 3, 4, 7, and 10 are Unimpaired under the Plan.　The Holders of Claims and Interests in such Classes are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

2.　Voting Classes

The Voting Classes are Impaired under the Plan.　Each Holder of an Allowed Claim or Interest as of the Voting Record Date in each of the Voting Classes shall be entitled to vote to accept or reject the Plan.

3.　Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

4.　Elimination of Vacant Classes

Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.　　*Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.　The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

K&E 15432970.4

*F.      Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *New Credit Facility*

On the Effective Date, the Reorganized Debtors may enter into the New Credit Facility, and all documents or agreements related thereto, including, without limitation, the Amended Facility Agreement, the Collateral Trust Agreement, and the New Credit Facility Commitment Letters. The proceeds of such New Credit Facility shall be used as follows: (a) to pay Cash amounts required under the Plan; and (b) to provide for the Reorganized Debtors' capital expenditure and liquidity needs. The forms of the New Credit Facility Agreement, the Amended Facility Agreement, the Collateral Trust Agreement, and the New Credit Facility Commitment Letters shall be in form and substance substantially on the terms set forth in the Plan Supplement.

B.      *Sources of Consideration for Plan Distributions*

All consideration necessary for the Reorganized Debtors to make payments or distributions pursuant hereto shall be obtained from the New Credit Facility, Cash from the sale or other monetization of Auction Rate Securities, and the Debtors' Cash on hand on the Effective Date.

C.      *Issuance of New Common Stock*

The issuance of the New Common Stock, including the shares of the New Common Stock, the Warrants, options, or other equity awards, if any, reserved for the Existing Stockholder, by Reorganized DBSD is authorized without the need for any further corporate action or without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity except for those expressly required pursuant to the Plan. On the Effective Date or as soon as reasonably practicable thereafter, the New Common Stock shall be issued to Holders of Allowed Senior Note Claims, Allowed General Unsecured Claims, Allowed Existing Stockholder Interests, and Allowed Other Equity Interests pursuant to Article III.B hereof.

All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

D.      *Section 1145 and Other Exemptions*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities contemplated by the Plan and any and all settlement agreements incorporated herein, including the New Common Stock and Warrants, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. To the extent that section 1145 of the Bankruptcy Code is not available, the Warrants and the New Common Stock to be issued pursuant to the Warrants will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance on the private placement exemption under section 4(2) of the Securities Act or Regulation D promulgated thereunder.

In addition, under section 1145 of the Bankruptcy Code, any Securities contemplated by the Plan and any and all settlement agreements incorporated therein, including the New Common Stock and Warrants, will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating

to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (2) the restrictions, if any, on the transferability of such Securities and instruments; and (3) applicable regulatory approval.

E.      Listing of New Common Stock

The Reorganized Debtors shall not be obligated to list the New Common Stock on a national securities exchange. In order to ensure that the Reorganized Debtors will not become subject to the reporting requirements of the Exchange Act except in connection with a public offering, the New Common Stock will be subject to certain trading restrictions to limit the number of record holders thereof as shall be more fully described in the Plan Supplement.

F.      Registration Rights Agreement

On or after the Effective Date, the Reorganized Debtors shall execute and deliver the Registration Rights Agreement for the benefit of all holders of New Common Stock.

G.      Issuance of the Warrants

On the Effective Date or as soon as reasonably practicable thereafter, Reorganized DBSD shall issue the Warrants to the Existing Stockholder pursuant to the terms set forth herein and the Warrant Agreement. As Holders of Class 9 Interests, the Existing Stockholder shall receive the Warrants, which shall be exercisable only upon a Valuation Event.

The Warrants shall be issued in three tranches and shall be identical except as set forth below:

(1)      Warrants representing 5.00% of the New Common Stock shall be exercisable if the aggregate Equity Valuation upon a Valuation Event is equal to or greater than $1.0 billion; plus

(2)      Warrants representing 2.50% of the New Common Stock shall be exercisable if the aggregate Equity Valuation upon a Valuation Event is equal to or greater than $1.5 billion; plus

(3)      Warrants representing 2.50% of the New Common Stock shall be exercisable if the aggregate Equity Valuation upon a Valuation Event is equal to or greater than $2.0 billion.

In the event that the Warrants are extended as described below so that they are exercisable after the second anniversary of the Effective Date, the relevant valuation thresholds set forth above shall be increased at the rate of 30% per annum (or portion thereof) beginning on the second anniversary of the Effective Date.

The Warrants shall expire on the Warrant Term; provided that:

(1)      if Reorganized DBSD enters into binding definitive documents (which have been approved by the New Board) for the consummation of a Valuation Event prior to the second anniversary of Effective Date, then the Warrant Term shall be extended until the earlier of (a) the closing of such Valuation Event and (b) the termination or abandonment of such Valuation Event (but only with respect to such Valuation Event);

(2)      if Reorganized DBSD shall have entered into a binding definitive agreement for the consummation of a business combination (which has been approved by the New Board) with the Identified Company within twelve months of the Effective Date, then the Warrant Term shall be extended until the later of (a) the third anniversary of the Effective

Date, (b) the closing of the transaction with the Identified Company, and (c) the termination or abandonment of the transaction with the Identified Company (but only with respect to such transaction if the event in clauses (b) or (c) hereof is after such third anniversary);

      (3)      if the Warrant Term has been extended until the third anniversary of the Effective Date and Reorganized DBSD enters into binding definitive documents with respect to a Valuation Event during such time, then the Warrant Term shall be extended until the earlier of (a) the closing of such Valuation Event and (b) the termination or abandonment of such Valuation Event (but only with respect to such Valuation Event).

The Warrants shall provide for appropriate adjustments in the event of stock splits, stock recombination, conversion of the New Common Stock into other Securities, or other similar events. The Warrants shall be non-transferable and shall contain terms and conditions acceptable to the Reorganized Debtors, the Principal Noteholders, and the Existing Stockholder.

**H.**      *Stockholders' Agreement*

The Stockholders' Agreement shall contain terms and conditions acceptable to the Reorganized Debtors, the Principal Noteholders, and the Existing Stockholder. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the Stockholders' Agreement and, upon the Effective Date, the Stockholders' Agreement shall be deemed to become valid, binding, and enforceable in accordance with its terms, and each Holder of New Common Stock shall be bound thereby.

**I.**      *Corporate Governance*

As shall be set forth in the DBSD Amended and Restated Charter and the DBSD Amended and Restated Bylaws, which shall be included in the Plan Supplement, the New Board shall consist of five to ten members, with one member being designated by the Existing Stockholder and the remaining members being designated by the Senior Noteholders in their sole discretion on terms to be negotiated among the Holders of the Senior Note Claims. Each member of the New Board shall be entitled to execute a D&O Indemnification Agreement. In accordance with section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose at or prior to the Confirmation Hearing **to the extent known**: (1) the identities and affiliations of any person proposed to serve as a member of the New Board; and (2) the nature of compensation for any member of the New Board who is an "insider" under section 101(31) of the Bankruptcy Code.

**J.**      *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as applicable, with all the powers of a corporation, limited liability company, partnership, or other form, as applicable, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity except for those expressly required pursuant to the Plan.

**K.**      *Corporate Action*

Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without further

28

notice to or action, order, or approval of the Bankruptcy Court or any other Entity except for those expressly required pursuant to the Plan.

L.        *Certificate of Incorporation and Bylaws*

        The certificates of incorporation and bylaws of DBSD N.A. (or other formation documents relating to limited liability companies) shall be amended, if applicable, as set forth in the Plan Supplement.  On or as soon as reasonably practicable after the Effective Date, each of the Reorganized Debtors shall file new certificates of incorporation with the secretary of state (or equivalent state officer or entity) of the state under which each such Reorganized Debtor is or is to be incorporated.  After the Effective Date, each Reorganized Debtor may file new, or amend and restate its other existing constituent documents as permitted by the relevant state corporate law.

M.        *Transition Services Agreement*

        Upon Consummation of the Plan, the Reorganized Debtors and the Existing Stockholder shall enter into the Transition Services Agreement.

N.        *Effectuating Documents; Further Transactions*

        On and after the Effective Date, the Reorganized Debtors and the officers and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity except for those expressly required pursuant to the Plan.

O.        *Vesting of Assets in the Reorganized Debtors*

        Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens, if any, granted to secure the New Credit Facility) without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity except for those expressly required pursuant to the Plan.  On and after the Effective Date, except as otherwise provided in the Plan and subject to the Distribution Trust Agreement, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity except for those expressly required pursuant to the Plan and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

P.        *Intercompany Interests*

        Intercompany Interests shall be retained, and the legal, equitable, and contractual rights to which the Holders of such Intercompany Interests are entitled shall remain unaltered to implement the Plan.

Q.        *Cancellation of Securities and Agreements*

        On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under the Prepetition Credit Agreement and the Senior Note Indenture and any other Certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of

29

incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, the Senior Note Indenture shall continue in effect for the sole purpose of (1) allowing the Senior Note Indenture Trustee to make distributions as provided by Article III.B.2 hereof and (2) permitting the Senior Note Indenture Trustee to maintain any rights or Liens that it may have for fees and expenses or other amounts not paid pursuant to Article IX hereof or otherwise paid pursuant to any order of the Bankruptcy Court; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors. In addition, any other agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect for the purposes of allowing such Holders to receive distributions under the Plan. The preceding sentence shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors.

R.    *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that the Reorganized Debtors determine are necessary or appropriate.

S.    *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security or the making or delivery of an instrument of transfer by a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, FCC filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

T.    *Employee and Retiree Benefits*

Except as otherwise provided herein, on and after the Effective Date, the Reorganized Debtors may, but shall have no obligation to: (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in each case to the extent disclosed in the Disclosure Statement or the First Day Pleadings, for, among other things, compensation (including equity based and bonus compensation), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity at any time; (2) distribute or reallocate any unused designated employee success fee and bonus funds related to Confirmation and Consummation in the

K&E 15432970.4

ordinary course of their business; and (3) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date; provided, however, that the Debtors' or Reorganized Debtors' performance of any employment agreement will not entitle any Entity to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan. Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid to the extent required by applicable law. As of the Effective Date, any equity award, stock option, or similar plans shall be cancelled, including any such plans incorporated into any existing employment agreement.

U.      *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Causes of Actions described in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, as applicable. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. The Reorganized Debtors reserve and shall retain the foregoing Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.

V.      *Distribution Trust*

1.      Generally

The powers, authority, responsibilities, and duties of the Distribution Trust and the Distribution Trustee are set forth in and shall be governed by the Distribution Trust Agreement. The Distribution Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, without limitation, any and all provisions necessary to ensure the continued treatment of the Distribution Trust as a grantor trust and the Distribution Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. The Distribution Trust and the Distribution Trustee, including any successors, shall be bound by the Plan and shall not challenge any provision of the Plan.

2.      Purpose and Establishment of the Distribution Trust

On the Effective Date, the Distribution Trust shall be established for the primary purpose of: (a) filing, withdrawing, or litigating to judgment objections to General Unsecured Claims; (b) settling or compromising any

Disputed General Unsecured Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) administering and adjusting the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Distribution Trust.

For all federal income tax purposes, the Distribution Trust Beneficiaries will be treated as grantors and owners of the Distribution Trust and it is intended that the Distribution Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations. The Distribution Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Distribution Trust Beneficiaries treated as grantors and owners of the trust. Accordingly, for federal income tax purposes, it is intended that the Distribution Trust Beneficiaries be treated as if they had received a distribution of an undivided interest in the General Unsecured Creditors' Shares and Distribution Trust Fund Amount and then contributed such undivided interest to the Distribution Trust. The Distribution Trustee shall, in an expeditious but orderly manner, make timely distributions to Distribution Trust Beneficiaries pursuant to the Plan and the Distribution Trust Agreement and not unduly prolong its duration. The Distribution Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Distribution Trust Agreement.

On or before the Effective Date, the Reorganized Debtors and counsel to the Committee, on behalf of the Distribution Trust Beneficiaries, shall execute the Distribution Trust Agreement and shall take all other steps necessary to establish the Distribution Trust pursuant to the Distribution Trust Agreement and consistent with the Plan.

3.   Nontransferability of Beneficial Interests

Ownership of a Beneficial Interest in the Distribution Trust will not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Distribution Trust by the Distribution Trustee. The Beneficial Interests in the Distribution Trust will not be registered pursuant to the Securities Act, as amended, or any state securities law. If the Beneficial Interests constitute "securities," the parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to the Beneficial Interests. The Beneficial Interests will not be capable of being, and will not be, transferred, assigned, pledged, or hypothecated, in whole or in part. Any transfer, assignment, pledge, or hypothecation of a Beneficial Interest or any part thereof will be void *ab initio*.

4.   Appointment of the Distribution Trustee

On the Effective Date and in compliance with the provisions of the Plan and the Distribution Trust Agreement, the Committee will appoint the Distribution Trustee in accordance with the Distribution Trust Agreement and, thereafter, any successor Distribution Trustee shall be appointed and serve in accordance with the Distribution Trust Agreement. The Distribution Trustee or any successor thereto will administer the Distribution Trust in accordance with the Plan and the Distribution Trust Agreement.

5.   Funding of the Distribution Trust

On the Effective Date, the Reorganized Debtors will deposit with the Distribution Trust: (a) the General Unsecured Creditors' Shares; and (b) the Distribution Trust Fund Amount to fund the expenses of the Distribution Trust.

6.   Distributions; Withholding

The Distribution Trustee shall make distributions to the Distribution Trust Beneficiaries when and as authorized pursuant to the Distribution Trust Agreement in compliance with the Plan. The Distribution Trustee may withhold from amounts otherwise distributable to any Entity any and all amounts required by the Distribution Trust Agreement, any law, regulation, rule, ruling, directive, treaty, or other governmental requirement.

K&E 15432970.4

7.   Termination of the Distribution Trust

The Distribution Trust shall terminate as soon as practicable, but in no event later than the fifth anniversary of the Effective Date; provided that, on or after the date that is six months prior to such termination date, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Distribution Trust for a finite period if such an extension is necessary to complete any pending matters required under the Distribution Trust Agreement and the Distribution Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service to the effect that any such extension would not adversely affect the status of the Distribution Trust as a grantor trust for federal income tax purposes.  Notwithstanding the foregoing, multiple extensions may be obtained so long as the conditions in the preceding sentence are met no more than six months prior to the expiration of the then-current termination date of the Distribution Trust.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     *Assumption and Rejection of Executory Contracts and Unexpired Leases*

1.   Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (a) is listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement; (b) has been previously assumed or rejected by the Debtors by Final Order of the Bankruptcy Court or has been assumed or rejected by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; (d) is an Intercompany Contract; or (e) is otherwise assumed pursuant to the terms herein.

The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Non-Debtor parties to Executory Contracts or Unexpired Leases that are rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under section 502(g) of the Bankruptcy Code; provided that, the Non-Debtor parties must comply with Article V.B hereof.

Further, the Plan Supplement will contain a schedule of "Rejected Executory Contracts and Unexpired Leases;" provided, however, that any Executory Contract and Unexpired Lease not previously assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court, and not listed in either the schedule of "Rejected Executory Contracts and Unexpired Leases" or the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement will be rejected on the Effective Date, notwithstanding its exclusion from the schedule of "Rejected Executory Contracts and Unexpired Leases."  Each contract and lease listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease.

2.   Assumption of Executory Contracts and Unexpired Leases

On the Effective Date, the Reorganized Debtors shall assume all of the Executory Contracts and Unexpired Leases listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement.  With respect to each such Executory Contract and Unexpired Lease listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in the Plan Supplement, the Debtors shall have designated a proposed amount of the Cure Claim, and the assumption of such Executory Contract and Unexpired Lease may be conditioned upon the disposition of all issues with respect to such Cure Claim.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

(a)     Modified or Amended Executory Contracts and Unexpired Leases:  Each Executory Contract and Unexpired Lease to be assumed under the Plan includes any modifications,

amendments, supplements, restatements, or other agreements that in any manner affects such contract or lease, unless any such modification, amendment, supplement, restatement, or other agreement is rejected pursuant hereunder.

(b) <u>Proofs of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed</u>: Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including hereunder, except Proofs of Claim asserting Cure Claims pursuant to the order approving such assumption, including the Confirmation Order, shall be deemed disallowed and expunged from the Claims Register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Notwithstanding anything in the Claims Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease, including pursuant hereto, gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim will be forever barred and will not be enforceable against the Debtors, their respective successors, or their respective property unless a Proof of Claim is Filed, served, and actually received by the Reorganized Debtors no later than 30 days after the Effective Date. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims against the Debtors and shall be treated in accordance with Article III.B.5 hereof.

C.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan*

With respect to any Executory Contract or Unexpired Lease to be assumed pursuant hereto, all Cure Claims will be satisfied at the option of the Debtors or their assignee, if any, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity except for those expressly required pursuant to the Plan.

At least 15 calendar days prior to the Confirmation Hearing, the Debtors shall file with the Bankruptcy Court and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption which will: (1) list the applicable Cure Claim, if any; (2) describe the procedures for filing objections to the proposed assumption or Cure Claim; and (3) explain the process by which related disputes will be resolved by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or Cure Claim must be Filed, served, and actually received by the Debtors at least 5 days prior to the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption and Cure Claim will be deemed to have assented to such assumption and Cure Claim, as applicable.

In the event of a dispute regarding: (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under such Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption or assumption and assignment of such Executory Contract or Unexpired Lease, the payment of any Cure Claim will be made following the entry of a Final Order resolving the dispute and approving the assumption of such Executory Contract or Unexpired Lease; <u>provided</u>, <u>however</u>, that the Reorganized Debtors or any assignee, as applicable, may settle any dispute regarding the amount of any Cure Claim without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity except for those expressly required pursuant to the Plan.

D.      *Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any nonbankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not

waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or the Reorganized Debtors, as applicable, from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

E.    *Intercompany Contracts, Contracts and Leases Entered Into After the Petition Date, Assumed Executory Contracts and Unexpired Leases*

Any (1) Intercompany Contracts, (2) contracts and leases entered into after the Petition Date by any Debtor to the extent not rejected prior to the Effective Date, and (3) any Executory Contracts and Unexpired Leases assumed by any Debtor and not rejected prior to the Effective Date may be performed by the applicable Reorganized Debtor in the ordinary course of business.

F.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under the Plan.

Modifications, amendments, supplements, and restatements to Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.    *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit to the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtors, or their respective Affiliates, have any liability thereunder.

The Debtors and the Reorganized Debtors reserve the right to alter, amend, modify, or supplement the schedule of "Assumed Executory Contracts and Unexpired Leases" and the schedule of "Rejected Executory Contracts and Unexpired Leases" until and including the Effective Date or as otherwise provided by court order; provided, however, that if there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection or with respect to an asserted Cure Claim, then the Debtors will have 30 days following the entry of a Final Order resolving such dispute to amend their decision to assume or reject such Executory Contract or Unexpired Lease.

H.    *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distribution that such Holder is entitled to pursuant to the Plan; provided that, Allowed

Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Reorganized Debtors are authorized to make periodic distributions on account of Allowed Claims and Interests and, if such periodic distributions are made, the Debtors shall reserve New Common Stock, as applicable, from distributions to Holders of Allowed Senior Note Claims, Allowed Other Equity Interests, and Allowed Existing Stockholder Interests equal to the distributions to which Holders of Disputed Claims would be entitled if such Disputed Claims become Allowed Claims.

B.      *Disbursing Agent*

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other Entity designated by the Reorganized Debtors as a Disbursing Agent. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be as agreed by and between the Reorganized Debtors and such Disbursing Agent.

Distributions of New Common Stock to the Holders of Allowed Senior Note Claims, Allowed Other Equity Interests, and Allowed Existing Stockholder Interests shall be made by the Debtors or the Reorganized Debtors to the Disbursing Agent for the benefit of the Holders of Allowed Senior Note Claims, Allowed Other Equity Interests, and Allowed Existing Stockholder Interests. Distributions of Cash to the Holders of Allowed Unsecured Convenience Class Claims shall be made by the Debtors or the Reorganized Debtors to the Disbursing Agent for the benefit of the Holders of Allowed Unsecured Convenience Class Claims. Distributions or payments to the Holders of Allowed General Unsecured Claims shall be made by the Distribution Trustee as and when due in accordance with the Distribution Trust Agreement. All distributions by the Disbursing Agent shall be at the discretion of the Reorganized Debtors, and the Disbursing Agent shall not have any liability to any Entity for distributions made by them under the Plan.

C.      *Rights and Powers of Disbursing Agent*

        1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

        2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.      *Distributions on Account of Claims Allowed After the Effective Date*

        1.      Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2. Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties:  (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Disputed Claims have been Allowed.

E.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1. Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Reorganized Debtors' records as of the date of any such distribution; provided that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; and provided, further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

2. Delivery of Distributions to Holders of Allowed Senior Note Claims

The distribution provided by Article III.B.2 hereof shall be made to the Senior Note Indenture Trustee.  To the extent possible, the Debtors and the Disbursing Agent shall provide that the Senior Noteholders' Shares are eligible to be distributed to Senior Noteholders through the Depository Trust Company's book entry system at the direction of the Senior Note Indenture Trustee.

3. Minimum Distributions

Notwithstanding anything herein to the contrary, the Disbursing Agent shall not be required to make distributions or payments of Cash of less than the amount of $50 and shall not be required to make partial distributions or payments of fractions of dollars.  Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down.  The Reorganized Debtors shall not be required to make partial distributions or payments of fractions of shares of New Common Stock and such fractions of shares shall be deemed to be zero.

4. Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

F.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding

37

distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens and encumbrances.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G.     Setoffs

The Debtors and the Reorganized Debtors may withhold (but not setoff except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim (other than the Allowed Prepetition Facility Claims and the Allowed Senior Note Claims) an amount equal to any claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. In the event that any such claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights, and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

H.     Claims Paid or Payable by Third Parties

1.     Claims Paid by Third Parties

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from an Entity that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.     Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

K&E 15432970.4

3. Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, the Reorganized Debtors, or any other Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.
# PROCEDURES FOR RESOLVING CONTINGENT,
# UNLIQUIDATED, AND DISPUTED CLAIMS

A. *Allowance of Claims and Interests*

After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim immediately prior to the Effective Date, including the Causes of Action referenced in Article IV.U hereof. Except as expressly provided herein, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under Article I.A.6 hereof or the Bankruptcy Code.

B. *Claims and Interests Administration Responsibilities*

Except as otherwise provided in the Plan, after the Effective Date, the Reorganized Debtors and the Distribution Trust (as to the Distribution Trust, only with respect to Class 5 General Unsecured Claims to the extent set forth in the Distribution Trust Agreement) shall have the sole and exclusive authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C. *Estimation of Claims and Interests*

Before the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors and the Distribution Trustee (as to the Distribution Trust, only with respect to Class 5 General Unsecured Claims to the extent set forth in the Distribution Trust Agreement) may at any time request that the Bankruptcy Court estimate (1) any Disputed Claim pursuant to applicable law and (2) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any Entity previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtors or the Distribution Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding any provision in the Plan to the contrary, a Claim that has been disallowed or expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D. *Expungement or Adjustment to Claims Without Objection*

Any Claim that has been paid, satisfied, superseded, or compromised in full may be expunged on the Claims Register by the Reorganized Debtors or the Distribution Trustee (as to the Distribution Trust, only with respect to Class 5 General Unsecured Claims to the extent set forth in the Distribution Trust Agreement), and any

Claim that has been amended may be adjusted thereon by the Reorganized Debtors or the Distribution Trustee (as to the Distribution Trust, only with respect to Class 5 General Unsecured Claims to the extent set forth in the Distribution Trust Agreement), in both cases without a claims objection having to be Filed and without any further notice to or action, order, or approval by the Bankruptcy Court or any other Entity. Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from an Entity that is not a Debtor, Reorganized Debtor, or the Distribution Trustee on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Reorganized Debtors or the Distribution Trustee, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution hereunder. Additionally, any Claim that is duplicative or redundant with another Claim against the same Debtor may be adjusted or expunged on the Claims Register by the Reorganized Debtors or the Distribution Trustee (as to the Distribution Trust, only with respect to Class 5 General Unsecured Claims to the extent set forth in the Distribution Trust Agreement) without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

E.      *No Interest*

Unless otherwise specifically provided for in the Plan or agreed to by the Debtors, the Confirmation Order, or a postpetition agreement in writing between the Debtors and a Holder of a Claim, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

F.      *Disallowance of Claims or Interests*

Any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that are transferees of transfers avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims and Interests may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid.

EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT OR ANY OTHER ENTITY, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.

G.      *Offer of Judgment*

The Reorganized Debtors and the Distribution Trustee (as to the Distribution Trust, only with respect to Class 5 General Unsecured Claims to the extent set forth in the Distribution Trust Agreement) are authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Rule 68 of the Federal Rules of Civil Procedure shall apply to such offer of judgment. To the extent the Holder of a Claim must pay the costs incurred by the Reorganized Debtors or the Distribution Trust, as applicable, after the making of such offer, the Reorganized Debtors or the Distribution Trust, as applicable, are entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

*H.      Amendments to Claims*

On or after the later of the Effective Date or the applicable deadline set by the Bankruptcy Court, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval by the Bankruptcy Court or any other Entity.

# ARTICLE VIII.
# SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A.      Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors in accordance with Article III.B.7(b)) hereof, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

*B.      Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim (other than the Allowed Senior Note Claims) or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

*C.      Compromise and Settlement of Claims and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such an Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, after the Effective Date,

the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

### D.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence.**

### E.    *Exculpation*

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability for any Exculpated Claim, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the Securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Nothing in this paragraph shall impair the police or regulatory powers of the federal government of the United States of America, its agencies, departments, and agents.**

### F.    *Third-Party Releases by Holders of Claims and Interests*

**Except as otherwise specifically provided in the Plan, on and after the Effective Date, Holders of Claims and Interests voting to accept the Plan or abstaining from voting (do not vote to accept or reject the Plan) and not opting out from the release herein (which by definition, does not include Holders of Claims and Interests who (1) vote to reject the Plan or (2) are not entitled to vote to accept or reject the Plan), shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Debtors' Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before**

the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence. The federal government of the United States of America, including its agencies, departments, and agents, is deemed to have opted out of the releases provided for in this paragraph and, therefore, is not bound by the releases provided for in this paragraph (and any injunctions relating to such releases).

G.      *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.D hereof or Article VIII.F hereof, discharged pursuant to Article VIII.A hereof, or are subject to exculpation pursuant to Article VIII.E hereof are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtors or the Reorganized Debtors: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Nothing in the Plan or Confirmation Order shall preclude any Entity from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds so long as the Debtors or Reorganized Debtors, as applicable, and any such Entity agree in writing that such Entity will: (1) waive all Claims against the Debtors, the Reorganized Debtors, and the Estates related to such action; and (2) enforce any judgment on account of such Claim solely against applicable insurance proceeds, if any.

H.      *Setoffs*

Except as otherwise expressly provided for in the Plan, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may setoff against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); <u>provided</u> that, neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

I.       *Recoupment*

In no event shall any Holder of Claims against or Interests in the Debtors be entitled to recoup any such Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice

**thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or proof of Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.**

J.  *Release of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of an Other Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

# ARTICLE IX.
## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

A.  *Final Fee Applications*

All final requests for payment of Claims of a Professional shall be Filed no later than 45 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

B.  *Payment of Interim Amounts*

Except as otherwise provided in the Plan and subject to Article IX.A hereof, Professionals shall be paid pursuant to the Interim Compensation Order.

C.  *Professional Fee Escrow Account*

In accordance with Article IX.D hereof, on the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.  Any unpaid Allowed Claims owing to the Professionals on account of Professional Fees shall be paid in Cash to such Professionals from the Professional Fee Escrow Account, or the Reorganized Debtors if there are insufficient funds in the Professional Fee Escrow Account, when such Claims are Allowed by a Bankruptcy Court order.  When all Claims of Professionals for Professional Fees have been paid in full in the Allowed amount or otherwise disallowed, amounts remaining in the Professional Fee Escrow Account, if any, shall be released from the trust and paid to the Reorganized Debtors, and upon such release all such remaining funds shall be the property of the Reorganized Debtors without any claim thereon by any professional.

D.  *Professional Fee Reserve Amount*

On or before the Effective Date, the Professionals shall estimate their Accrued Professional Compensation prior to and as of the Confirmation Date and shall deliver such estimate to the Debtors.  If a Professional does not provide an estimate or if the Reorganized Debtors reasonably dispute the reasonableness of the estimate provided, then the Reorganized Debtors may estimate the unbilled fees and expenses of such Professional for purposes of setting the appropriate Professional Fee Reserve Amount with written notice to such Professional within three Business Days, subject to resolution of any dispute by the Bankruptcy Court; provided that, such estimate shall not be considered an admission with respect to the fees and expenses of such Professional.  The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

E.      *Post-Confirmation Date Fees and Expenses*

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Debtors.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

F.      *Senior Note Indenture Trustee Fee Claims*

The Reorganized Debtors shall pay any Senior Note Indenture Trustee Fee Claims in Cash in immediately available funds on the Effective Date without the need for the Senior Note Indenture Trustee to file an application for allowance with the Bankruptcy Court; provided, however, that the Senior Note Indenture Trustee shall provide reasonable and customary detail along with or as part of all invoices submitted in support of its Senior Note Indenture Trustee Fee Claims to counsel to the Reorganized Debtors, and the Reorganized Debtors shall have the right to file objections to such Senior Note Indenture Trustee Fee Claims based on a "reasonableness" standard within ten (10) days after receipt of such invoices, including supporting documentation.  Any disputed amount shall be subject to the jurisdiction of, and resolution by, the Bankruptcy Court.  Upon payment of such Senior Note Indenture Trustee Fee Claims in full or by resolution of the Bankruptcy Court, the Senior Note Indenture Trustee will be deemed to have released its Lien and priority rights for its fees and expenses under the Senior Note Indenture or solely to the extent of the amount paid hereunder.  All fees and expenses owed to the Senior Note Indenture Trustee incurred after the Effective Date shall be paid by the Reorganized Debtors.

# ARTICLE X.
# CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.B hereof:

1.      The Confirmation Order shall have been entered in a form and in substance reasonably satisfactory to the Debtors, the Principal Noteholders, and the Existing Stockholder.

2.      The New Credit Facility, and all documents or agreements related thereto, including, without limitation, the Amended Facility Agreement, the Collateral Trust Agreement, and the New Credit Facility Commitment Letters, in form and substance acceptable to the Debtors, the Principal Noteholders, and the Existing Stockholder shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof, and funding pursuant to the New Credit Facility shall have occurred.

3.      The final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in form and substance reasonably acceptable to the Debtors, the Principal Noteholders, and the Existing Stockholder without prejudice to the Reorganized Debtors' rights under the Plan to alter, amend, or modify certain of the schedules, documents, and exhibits contained in the Plan Supplement; provided that each such altered, amended, or modified schedule, documents, or exhibit shall be in form and substance acceptable to the Principal Noteholders and the Existing Stockholder.

4.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

5.    All authorizations, consents, and regulatory approvals shall have been obtained from the FCC or any other federal regulatory agency including, without limitation, any approvals required in connection with the transfer, change of control, or assignment of FCC licenses, and no appeals of such approvals remain outstanding.

*B.      Waiver of Conditions*

The conditions to the Effective Date of the Plan set forth in this Article X may be waived by the Debtors, the Principal Noteholders, and the Existing Stockholder without notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

# ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtors, in consultation with the Principal Noteholders and the Existing Stockholder, reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code; provided that such modified Plan or material term thereof shall be in form and substance acceptable to the Principal Noteholders and the Existing Stockholder.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or, to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XI.

*B.      Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.   If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void in all respects; and (3) nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims or Interests in any respect; (b) prejudice in any manner the rights of such Debtor or any other Entity in any respect; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity in any respect.

# ARTICLE XII.
## RETENTION OF JURISDICTION

Provided that the following neither expands nor reduces the Bankruptcy Court's subject matter jurisdiction or the jurisdiction of any other court or regulatory body beyond that allowed for the Chapter 11 Cases by applicable law, notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the

Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, of any request for the payment or distribution on account of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code, and of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or unexpired;

4.      Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date or may be instituted by the Reorganized Debtors or the Distribution Trust prior to or after the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the

47

termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

14.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.H.1 hereof;

15.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.     Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18.     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

19.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.     Enforce all orders previously entered by the Bankruptcy Court; and

23.     Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to Article X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan; provided that, each such agreement or other document shall be in form and substance acceptable to the Principal Noteholders and the Existing Stockholder.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or appropriate to effectuate the provisions and intent of the Plan.

K&E 15432970.4

C.      *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court, shall be paid for each quarter (including any fraction thereof) until the first to occur of the Chapter 11 Cases being converted, dismissed, or closed.

D.      *Dissolution of Committees*

On the Effective Date, the Committees, if any, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

E.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall have entered the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan or the Disclosure Statement, shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| | |
|---|---|
| DBSD NORTH AMERICA, INC. | KIRKLAND & ELLIS LLP |
| Attn:  General Counsel | Marc J. Carmel |
| 11700 Plaza America Drive | Sienna R. Singer |
| Suite 1010 | 300 North LaSalle Street |
| Reston, Virginia  20190 | Chicago, Illinois  60654 |

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Plan Supplement*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan, and any reference to the Plan shall mean the Plan and the Plan Supplement.  Upon

its Filing, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the Bankruptcy Court's website at www.nysb.uscourts.gov, and at the website of the Debtors' Claims and Solicitation Agent at http://gardencitygroup.com/cases/dbsd. The documents contained in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

J.      *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

K.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall be deemed to provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, subsidiaries, members, principals, shareholders, officers, directors, employees, representatives, agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan.

**M.      Waiver or Estoppel**

**Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.  Without limiting the foregoing, the Debtors acknowledge that the Principal Noteholders are party to the Support Agreement and that the parties thereto continue to be bound by the terms of the Support Agreement, subject to the terms thereto, until Consummation of the Plan.**

N.      *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, unless otherwise ordered by the Bankruptcy Court, the non exhibit or non document portion of the Plan shall govern and control.

K&E 15432970.4

Reston, Virginia
Dated:  September 4, 2009

DBSD North America, Inc. (for itself and all other Debtors)

By: _____

     Michael P. Corkery

Its:  Acting Chief Executive Officer, Executive Vice
     President and Chief Financial Officer

New York, New York
Dated: September 4, 2009

/s/ Marc. J. Carmel
_____

Prepared By:

James H.M. Sprayregen, P.C.
Christopher J. Marcus
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

- and -

Marc J. Carmel
Sienna R. Singer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

Counsel to the Debtors and Debtors in Possession

## PLAN SUPPLEMENT EXHIBITS LIST

A.	Form of D&O Indemnification Agreements

B.	DBSD Amended and Restated Bylaws

C.	DBSD Amended and Restated Charter

D.	Amended Facility Agreement

E.	New Credit Facility Agreement

F.	Collateral Trust Agreement

G.	Registration Rights Agreement

H.	Stockholders' Agreement

I.	Transition Services Agreement

J.	Warrant Agreement

K.	Form of New Common Stock Certificates

L.	Distribution Trust Agreement

M.	List of Causes of Action to Be Retained by the Reorganized Debtors

N.	Assumed Executory Contracts and Unexpired Leases

O.	Assume Executory Contracts:  Nondisclosure Agreements

P.	Rejected Executory Contracts and Unexpired Leases

Q.	New Credit Facility Commitment Letters