**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DBSD NORTH AMERICA, INC., *et al.*,[1] | ) | Case No. 09-13061 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## FINAL ORDER (A) AUTHORIZING THE DEBTORS
## TO OBTAIN POSTPETITION FINANCING ON A SECOND LIEN,
## SECURED SUPERPRIORITY BASIS AND (B) GRANTING RELATED RELIEF

Upon the motion, filed October 12, 2009 [Docket No. 458] (the "**Motion**") of the above-captioned debtors (the "**Debtors**") pursuant to sections 105, 361, 363, and 364 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Second Supplement to the Motion, filed December 7, 2009 [Docket No. 578] (the "**Second Supplement**") seeking entry of a final order (this "**Final DIP Order**") authorizing the Debtors to obtain postpetition financing (the "**DIP Financing**") in accordance with the terms of that certain Second Lien Secured Super-Priority Debtor-In-Possession Credit Agreement (the "**DIP Facility**") attached as Exhibit C to the Second Supplement; and interim hearings on the Motion and the Debtors' Supplement to the Motion (the "**Interim Hearing**") having been held on October 29, 2009 and November 2, 2009; and a status conference on the Motion having been held on October 30, 2009; and the Court having made certain rulings in respect of the DIP Financing at the Interim Hearing (the "**Bench Decision**"); and the Court having entered an order (the "**Interim DIP Order**") on November 3,

---

[1]      The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: DBSD North America, Inc. (6404); 3421554 Canada Inc. (4288); DBSD Satellite Management, LLC (3242); DBSD Satellite North America Limited (6400); DBSD Satellite Services G.P. (0437); DBSD Satellite Services Limited (8189); DBSD Services Limited (0168); New DBSD Satellite Services G.P. (4044); and SSG UK Limited (6399). The service address for each of the Debtors is 11700 Plaza America Drive, Suite 1010, Reston, Virginia 20190.

2009 [Docket No. 505] approving, with the disposition of any objections to the Motion being subject to paragraph 15 of the Interim DIP Order, that certain Secured Super-Priority Debtor-In-Possession Credit Agreement, dated November 3, 2009 (the "**DISH DIP Facility**"), among DBSD North America, Inc., the subsidiary guarantors party thereto, the lender party thereto and DISH Network Corporation ("**DISH**"), as administrative agent; and the Debtors having borrowed $15 million under the DISH DIP Facility on November 4, 2009; and as of December 15, 2009 approximately $307,500 in interest having accrued under the DISH DIP Facility but having not yet been paid; and certain fees and expenses (including reasonable attorneys' fees) payable under the DISH DIP Facility and Interim DIP Order having been incurred but having not yet been paid; and the final hearing on the motion having been held on December 15, 2009 (the "**Final Hearing**", and together with the Interim Hearing, the "**Hearings**"); and the Debtors having provided adequate notice of the Motion and the Hearings under the circumstances and it appearing that no further or other notice need be given; and based upon all of the pleadings filed with the Court and the Affidavit of Leo Chang in Support of Debtor in Possession Financing, the evidence presented at Hearing, and the entire record herein; and the Court having heard and resolved or overruled all objections to the relief requested in the Motion on a final basis; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING
FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[2]

       1.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Debtors' chapter 11 cases (the "**Chapter 11 Cases**"), the Motion, and the Entities[3] and property affected

---

[2]      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. <u>Petition Date</u>. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on May 15, 2009 (the "**Petition Date**"). The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

3. <u>Committee</u>. The United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Creditors' Committee**") pursuant to section 1102(a)(1) of the Bankruptcy Code, on May 29, 2009. No other committee has been appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Cases.

4. <u>Final Cash Collateral and Adequate Protection Order</u>. On July 22, 2009, this Court entered the Final Order (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection to Certain Prepetition Secured Parties, and (C) Granting Related Relief entered by the Bankruptcy Court [Docket No. 221] (the "**Final Cash Collateral and Adequate Protection Order**").[4] The Final Cash Collateral and Adequate Protection Order is incorporated herein by reference in its entirety, except to the extent it is modified or amended by the Final DIP Order.

5. <u>Plan of Reorganization</u>. A hearing to consider confirmation of the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (as it has heretofore been amended, the "**Plan**") was held on September

---

[3]      Consistent with and as set forth in section 101(15) of the Bankruptcy Code, "**Entity**" means any person, estate, trust, governmental unit, and United States Trustee.

[4]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion, the DIP Facility, or the Final Cash Collateral and Adequate Protection Order, as applicable.

22, 2009 through September 25, 2009. The Court issued a decision ruling in favor of confirmation of the Plan on October 26, 2009 [Docket No. 479] and entered an order confirming the Plan on November 23, 2009 [Docket No. 547] (the "**Confirmation Order**").

6. <u>DIP Documents</u>. The Debtors have proposed to enter into the DIP Facility and such additional agreements and documentation (together with the DIP Facility, the "**DIP Documents**") as may be required by and are consistent with the DIP Facility and the Final DIP Order.

7. <u>Necessity of Relief</u>. The Debtors require the financing described in the Motion to fund permitted administrative expenses of the Chapter 11 Cases and provide working capital for the Debtors during the pendency of the Chapter 11 Cases.

8. <u>Unavailability of Other Financing</u>. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Documents. A loan facility in the amount provided by the DIP Documents is not available on the terms provided in the DIP Documents to the Debtors without granting Nexbank, SSB, as administrative agent (the "**Administrative Agent**") for the Lenders[5] under the DIP Facility, for the benefit of the Lenders, Superpriority Claims (as defined herein), liens, and security interests, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided in this Final DIP Order and the DIP Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the DIP Financing provided under the DIP

---

[5]     Consistent with and as set forth in the DIP Facility, "**Lenders**" means (a) the financial institutions and other persons party to the DIP Facility as "Lenders" on the date the DIP Facility is executed, and (b) each financial institution or other person that becomes a party to the DIP Facility pursuant to an Assignment and Acceptance (as defined in the DIP Facility), other than, in each case, any such financial institution or person that has ceased to be a party to the DIP Facility pursuant to an Assignment and Acceptance.

Documents represents the best working capital financing available to them at this time. Additionally, the terms of the DIP Documents are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

9.    Good Cause.    Based upon the record presented to the Court by the Debtors, it appears that the ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Documents is vital to the Debtors, their estates, and creditors. The liquidity to be provided under the DIP Documents will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of their businesses and estates. Good cause has, therefore, been shown for granting the relief sought in the Motion on a final basis.

10.    Good Faith.    For the reasons set forth on the record at the Final Hearing, the DIP Facility and the DIP Documents have been negotiated in good faith and at arm's length among the Debtors, the Administrative Agent and the Lenders. All of the obligations and indebtedness arising under, in respect of or in connection with the DIP Financing and the DIP Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Documents, and any other obligations under the DIP Documents, including, without limitation, any credit extended in respect of any overdrafts and related liabilities and other depository, treasury, hedging, swap, and cash management services and other clearing services provided by any Lender, the Administrative Agent or their respective affiliates, shall be deemed to have been extended by the Lenders and the Administrative Agent and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations (as defined herein), the DIP Liens (as defined herein), and the Superpriority Claims

shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits, and privileges of this Final DIP Order regardless of whether this Final DIP Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect or the Chapter 11 Cases are subsequently converted or dismissed.

        11.    <u>Consideration</u>.  The Debtors will receive and have received fair and reasonable consideration in exchange for access to the DIP Financing and all other financial accommodations provided under the DIP Documents and this Final DIP Order.  The terms of the DIP Documents are fair and reasonable under the circumstances.

        12.    <u>Consent</u>.  Under the Collateral Trust Agreement dated as of August 15, 2005 (as amended, supplemented, or modified from time to time, the "**Collateral Trust Agreement**"), among ICO Global Communications (Holdings) Limited, the Debtors, and the Bank of New York, as collateral agent (the "**Collateral Agent**") and as trustee under the Indenture (as defined in the Final Cash Collateral and Adequate Protection Order), holders of more than 50% of outstanding principle amount of Senior Notes (as defined in the Plan) may consent on behalf of all Senior Noteholders (as defined in the Plan) to the priming of the Senior Notes.  After due deliberation and consideration, Senior Noteholders holding in the aggregate more than 50% of the Senior Notes have explicitly consented to the entry of this Final DIP Order, the execution and consummation of the DIP Documents, and all of the transactions contemplated herein and therein (including without limitation the priming effected by this Final DIP Order and the DIP Documents) and on that basis, among others, this Court has requisite authority to enter this Final DIP Order under applicable law, and such consent is sufficient under applicable law and the Indenture governing the Senior Notes to bind all Senior Noteholders,[6]

---

[6]    No Senior Noteholder has objected to the DIP Documents or entry of this Final DIP Order, other than DISH Network Corporation.

who are hereby deemed to have consented to the entry of this Final DIP Order, the execution and consummation of the DIP Documents, and all of the transactions contemplated herein and therein (including without limitation the priming effected by this Final DIP Order and the DIP Documents). Nothing in this Final DIP Order or in the DIP Documents shall, nor shall it be deemed to, amend, alter, or waive the rights, claims, defenses, and obligations of any of the Prepetition Secured Parties.

13.     Notice.  The Final Hearing was held in accordance with Bankruptcy Rule 4001(c)(2) and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").  Notice of the Motion and Final Hearing was served by the Debtors on:  (a) the Office of the United States Trustee for the Southern District of New York (the "**United States Trustee**"); (b) counsel to the Committee; (c) counsel to DISH; (d) counsel to the ad hoc committee of Senior Noteholders (the "**Ad Hoc Committee**"); (e) all known Senior Noteholders; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; and (h) the parties in interest who have formally requested notice by filing a written request for notice (collectively, the "**Notice Parties**").  Under the circumstances, the notice given by the Debtors of the Motion and Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(c) and Local Rule 4001-2.

14.     Entry of DIP Order.  The permission granted herein to enter into the DIP Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors and their estates and creditors.  This Court concludes that entry of this Final DIP Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow the Debtors to fund the administrative expenses of the Chapter 11 Cases and their working capital needs during the pendency of the Chapter 11 Cases.  Based

upon the foregoing findings and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

15.     _Disposition_.  The Motion and the relief requested therein is granted on a final basis and on the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on their merits with prejudice.

16.     _Effectiveness_.  This Final DIP Order shall constitute findings of fact and conclusions of law and shall take effect on a final basis and be fully enforceable as a final order immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final DIP Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final DIP Order.

17.     _Approval of DIP Documents_.  The Debtors are hereby authorized to execute and enter into, on a final basis, the DIP Facility and each of the other DIP Documents. The DIP Documents and this Final DIP Order shall govern the financial and credit accommodations to be provided to the Debtors by the Lenders and the Administrative Agent, and the Debtors' obligations thereunder.

18.     _Authority to Borrow_.  The Debtors are hereby authorized to borrow funds pursuant to the DIP Documents up to an aggregate amount of $25 million on a final basis, which shall be used solely as expressly provided in the DIP Documents or the Budget (as defined in the DIP Facility) to repay all obligations under the DISH DIP Facility and Interim DIP Order as more fully set forth in paragraph 19 below, to fund certain permitted administrative expenses of the Chapter 11 Cases and provide working capital for the Debtors during the pendency of the

Chapter 11 Cases; provided that, notwithstanding anything to the contrary in the DIP Documents or this Final DIP Order, no proceeds of the DIP Financing, including no portion of the Carve Out (as defined herein), may be used (a) in any manner that causes or would reasonably be expected to cause the Loans or the application of such proceeds to violate any regulations of the Board of Governors of the Federal Reserve System of the United States, including, without limitation, Regulation T, Regulation U and Regulation X, or to violate the Securities Exchange Act; (b) for any purpose that is prohibited under the Bankruptcy Code or the Final DIP Order; (c) for the payment of the fees and/or expenses incurred in (i) challenging, or supporting any challenge of, the Debtors' obligations under the DIP Documents (the "**DIP Obligations**"), the DIP Liens, the Superpriority Claims, the Indenture, the Collateral Trust Agreement or the Prepetition Junior Liens (as defined in the Final Cash Collateral and Adequate Protection Order), (ii) the initiation or prosecution of any claim or cause of action against the Administrative Agent, Lenders, Senior Noteholders or their respective directors, officers, employees, advisors, agents, successors, and assigns, provided that nothing shall impair or affect the Debtors' rights to enforce the terms of the Final DIP Order or DIP Documents, (iii) financing in any way (other than any objection to fees being unreasonable): (A) any adversary action, suit, arbitration, proceeding, application, motion, or other litigation of any type against or adverse to the interests of the Administrative Agent, the Lenders, and the Senior Noteholders (or their respective directors, officers, employees, advisors, agents, attorneys, successors, and assigns) or their respective rights and remedies under the DIP Facility, the DIP Documents, the Indenture, the Collateral Trust Agreement and this Final DIP Order, including, without limitation, to commence or prosecute or join in any action against any or all of the Administrative Agent, the Senior Noteholders and the Lenders seeking (1) to avoid, subordinate, challenge or recharacterize the DIP Obligations or the

obligations under the Indenture or Collateral Trust Agreement or any of the Second Priority Adequate Protection Liens (as defined in the Final Cash Collateral and Adequate Protection Order), Prepetition Junior Liens, or DIP Liens (defined below), (2) any monetary, injunctive or other affirmative relief against any or all of the Administrative Agent, the Lenders, and Senior Noteholders (or their respective directors, officers, employees, advisors, attorneys, agents, successors, and assigns) or their Pledged Collateral in connection with the DIP Documents, DIP Facility, the Indenture and the Collateral Trust Agreement, (3) to prevent or restrict the exercise by any or all of the Administrative Agent and the Lenders of any of their respective rights or remedies under the DIP Documents and DIP Facility; or (B) any other action which with the giving of notice or the passing of time would result in an event of default (as defined in the DIP Documents, an "**Event of Default**") thereunder; provided that nothing in this subparagraph (c) or in this Final DIP Order shall prevent the Debtors from paying fees and/or expenses with respect to, nor prosecuting or defending any claim or cause of action (other than in respect of the amount and priority of the claims or the validity, priority and enforceability of the liens in respect of the Indenture, the Collateral Trust Agreement, the DIP Obligations and the DIP Liens), with respect to the Administrative Agent, the Lender, or Senior Noteholders, including, without limitation, exercising any appellate rights in the Chapter 11 Cases; (d) for the payment of fees, expenses, interest, or principal with respect to any prepetition indebtedness (other than pursuant to the Final Cash Collateral and Adequate Protection Order) or as otherwise permitted pursuant to the terms of the DIP Documents; (e) to settle any claim by the allowance of an administrative priority or non-dischargeable claim; (f) to make any distribution under a confirmed plan of reorganization in the Chapter 11 Cases, unless the DIP Obligations are repaid in full in cash on or prior to the effective date of such plan and prior to the distribution on account of any other

claim; or (g) for the payment or reimbursement of any third party expenses incurred in connection with any sale, transfer, or other disposition of all or any substantial part of the Debtors' assets (whether pursuant to Section 363 of the Bankruptcy Code or otherwise, a "**Disposition**") or any proposed Disposition, except any Disposition or proposed Disposition pursuant to which the DIP Obligations are to be paid in cash prior to any other obligations of the Debtors; provided, however, that nothing herein shall in any way prejudice or prevent the Administrative Agent or the Lenders from objecting, for any reason, to any requests, motions, or applications made in the Bankruptcy Court, including any application of final allowances of compensation for services rendered or reimbursement of expenses incurred under Section 105(a), 330 or 331 of the Bankruptcy Code by any party in interest (and each such order shall preserve the Administrative Agent's and the Lender's right to review and object to such requests, motions or applications).

19.     Repayment of DISH DIP Facility.  Upon entry into the DIP Facility, but no later than January 8, 2010, the Debtors shall satisfy in full all outstanding obligations under the DISH DIP Facility, including, without limitation, all outstanding principal, accrued and unpaid interest, and all fees and expenses (including reasonable attorneys' fees) payable under the DISH DIP Facility and Interim DIP Order; provided that, with respect to the fees and expenses of professionals, the deadline to object to such fees and expenses has expired without objection, or all objections thereto have been resolved.  All fees and expenses (including reasonable attorneys' fees) incurred and payable under the DISH DIP Facility and Interim DIP Order but not yet invoiced on the date of entry into the DIP Facility shall be paid by the Debtors no later than five (5) business days from the date which such fees and expenses become due and owing.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final

DIP Order or the DIP Facility, the Interim DIP Order, including without limitation, the Superpriority Claims (as defined in the Interim DIP Order) and DIP Liens (as defined in the Interim DIP Order) granted in respect of the DISH DIP Facility pursuant to the Interim DIP Order, shall remain in full force and effect until such time as all obligations under the DISH DIP Facility (including without limitation all outstanding principal, accrued and unpaid interest, and all fees and expenses (including reasonable attorneys' fees) payable under the DISH DIP Facility and Interim DIP Order) are paid in full.

20. <u>Budget</u>. Nothing in the DIP Documents regarding the Budget approval process shall supersede the provisions of the Final Cash Collateral and Adequate Protection Order, which shall remain in full force and effect in accordance with the terms thereof, including all notice and approval rights of DISH.

21. <u>Authority to Guarantee</u>. Each Debtor is hereby authorized to unconditionally guaranty (on a joint and several basis) all of the DIP Obligations, including, without limitation, all borrowings, interest, fees, costs, and expenses, in accordance with the terms of this Final DIP Order and the DIP Documents.

22. <u>Authority to Execute, Deliver, and Perform</u>. In furtherance of the foregoing and without further approval of this Court, the Debtors are hereby authorized on a final basis to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), and to pay all reasonable fees that may be required or necessary for the Debtors' entry into the DIP Documents and performance of their obligations thereunder, including, without limitation:

(a)     the execution and delivery of the DIP Documents, including, without limitation, any guarantees, any security and pledge agreements, and any mortgages contemplated thereby;

(b)     the execution and delivery of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents for, among other things, the purpose of adding additional financial institutions and other persons as lenders and reallocating the commitments under the DIP Documents among the such lenders, in each case in such form as the Debtors, the Administrative Agent, and the Lenders may agree;

(c)     the performance of all of the Debtors' obligations under the DIP Documents, any modifications thereto (subject to any limitations on amendments to such documents set forth in this Final DIP Order), any guarantees thereof, and this Final DIP Order;

(d)     the payment of non-refundable fees referred to in the DIP Documents and costs and expenses as may be due in accordance with the DIP Documents; and

(e)     the performance of all other acts required under or in connection with the DIP Documents.

23.     <u>Binding Obligations</u>.  All obligations under the DIP Documents shall constitute valid and binding obligations of each of the Debtors enforceable against each of them, and each of their successors and assigns, in accordance with their terms and the terms of this Final DIP Order.  No obligation, payment, transfer, or grant of a security under the DIP Documents or this Final DIP Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other

challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

24. <u>Superpriority Claims</u>. The Administrative Agent, for the benefit of the Lenders, is hereby granted an allowed superpriority administrative expense claim (the "**Superpriority Claims**"), pursuant to section 364(c)(1) of the Bankruptcy Code, for all DIP Obligations, having priority over any and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof. The Superpriority Claims granted in this paragraph shall be subject and subordinate in priority of payment only to the Carve Out and the allowed superpriority administrative expense claims granted to DISH pursuant to the Final Cash Collateral and Adequate Protection Order (the "**First Lien Superpriority Claims**"). Except as expressly set forth herein or in the Final Cash Collateral and Adequate Protection Order, no other Superpriority Claims shall be granted or allowed in these Chapter 11 Cases. For the avoidance of doubt, the Superpriority Claims may be satisfied from the proceeds of the Avoidance Actions (as defined herein) otherwise in excess of the first $5 million of proceeds of any Avoidance Actions (consistent with and as set forth in paragraph 8(a) of the Final Cash Collateral and Adequate Protection Order), other than Avoidance Actions or the proceeds of Avoidance Actions against a person or entity that is a

Prepetition Lender,[7] Senior Noteholder or Lender, <u>provided however</u>, that the Superpriority Claims shall first be satisfied from all other assets (and/or proceeds thereof) of the Debtors and their estates; and <u>provided further however</u>, that no person or entity (other than the Lenders in accordance with this paragraph) shall receive the proceeds of Avoidance Actions (other than Avoidance Actions or the proceeds of Avoidance Actions against a Prepetition Lender, Senior Noteholder, or Lender) until such time as all DIP Obligations have been satisfied in full. For the avoidance of doubt, nothing in this paragraph shall abrogate, limit, or otherwise diminish, alter, modify, or otherwise impact or affect any other term or condition of this Final DIP Order or any right of the Administrative Agent or the Lenders (or any finding with respect thereto) pursuant to this Final DIP Order, the Bankruptcy Code (including, without limitation, section 364(e) of the Bankruptcy Code), or applicable law.

25. <u>Indemnity</u>. The indemnity provisions of the DIP Documents are hereby approved to the extent provided in this Final DIP Order. The Debtors shall, jointly and severally, indemnify and hold harmless the Administrative Agent, the Lenders, and each of their respective affiliates, officers, directors, fiduciaries, employees, agents, advisors, attorneys, and representatives (in their respective capacities as such with respect to the Administrative Agent or Lenders) from and against all reasonable out of pocket costs and any and all losses, claims, liabilities, damages, fees, fines, penalties, actions, judgments, suits and all related expenses (including, without limitation, out-of-pocket fees and disbursements of advisors) in connection with any investigation, litigation, or proceeding, or the preparation of any defense with respect

---

[7] Consistent with and as set forth in the DIP Facility, a "**Prepetition Lender**" means the lenders party to that certain Amended and Restated Revolving Credit Agreement, dated as of April 7, 2008, by and among DBSD N.A., as borrower, each of DBSD N.A.'s subsidiaries, as guarantors, Wells Fargo Bank, N.A., as successor administrative agent, the financial institutions and other persons from time to time lenders party thereto, and The Bank of New York Mellon (f/k/a The Bank of New York), as collateral agent (the "**Prepetition Credit Agreement**").

thereto, arising out of, directly or indirectly (but materially related to), the DIP Documents or the transactions contemplated in the DIP Facility, except to the extent resulting from gross negligence or willful misconduct of the Administrative Agent or the Lenders.

26.     DIP Liens.

(a)     The Administrative Agent is hereby granted for the benefit of the Lenders:

i.     pursuant to section 364(c)(2) of the Bankruptcy Code, a fully-perfected lien on all assets of the Debtors (now existing or hereafter acquired and all proceeds thereof) that were not subject to a perfected, non-avoidable lien as of the Petition Date, subject and subordinate only to the liens granted to the Prepetition First Lien Lenders pursuant to the Final Cash Collateral and Adequate Protection Order (the "**Senior Adequate Protection Liens**"), but senior to all other liens;

ii.     pursuant to section 364(c)(3) of the Bankruptcy Code, a fully-perfected lien on all assets of the Debtors (now or hereafter acquired and all proceeds thereof) that were, as of the Petition Date, subject to the liens of the Prepetition Lender securing the Prepetition Credit Agreement (the "**Prepetition First Priority Liens**"), immediately junior to such Prepetition First Priority Liens and the Senior Adequate Protection Liens, but senior to all other liens; and

iii.     pursuant to section 364(d)(1) of the Bankruptcy Code, a fully-perfected senior priming lien on all assets of the Debtors (now or hereafter acquired and all proceeds thereof) that are subject to any liens (other than the Prepetition First Priority Liens and the Senior Adequate Protection Liens, but including, without limitation, all other liens created under the Final Cash Collateral and Adequate Protection Order and the liens of the Senior Noteholders securing the Senior Notes (the "**Senior Noteholders' Liens**").

iv.     The liens created as described in clauses (i), (ii), and (iii) above (the "**DIP Liens**") shall cover all property and assets of the Debtors and their estates (now or hereafter acquired and all proceeds thereof), except (a) claims and causes of action under Sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code (the "**Avoidance Actions**") and the proceeds thereof; and (b) as otherwise agreed to by the Lenders.  Solely to the extent that (x) applicable non-bankruptcy law prohibits the granting of a lien or security interest on the FCC License (as such term is defined in the Collateral Trust Agreement) to the Lenders and (y) such prohibition, if any, is not preempted or otherwise rendered ineffective by the Bankruptcy Code or other applicable law as may be determined by order of this Court or any other court with jurisdiction, the DIP Liens and the Superpriority Claims shall not extend to the FCC License; provided, however, that, notwithstanding the foregoing, the DIP Liens and the Superpriority Claims shall extend to the Proceeds (as defined in the Uniform Commercial Code of the State of New York) of the FCC License to the fullest extent allowed by applicable law.

(b)     The DIP Liens shall be effective immediately upon the entry of this Final DIP Order.

(c)     Except as provided in this Final DIP Order, the DIP Liens shall not at any time be made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim.

(d)     The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the date of this Final DIP Order without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, or other agreements, such that no additional steps need be taken by the Administrative Agent or the Lenders to perfect such interests.  Any provision of any

lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity, or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the Administrative Agent, for the benefit of the Lenders, a priority security interest in such fee, leasehold, or other interest or other collateral or the proceeds of any assignment, sale, or other transfer thereof, by any of the Debtors in favor of the Administrative Agent, for the benefit of the Lenders, in accordance with the terms of the DIP Facility and the other DIP Documents.

27. <u>Enforcement of Priority of DIP Liens and Superpriority Claims</u>. Notwithstanding anything in the Prepetition Loan Documents (as that term is defined in the DIP Facility), including in the Collateral Trust Agreement, the Collateral Agent shall, and is hereby directed to comply with the provisions of this Final DIP Order granting the Claims[8] and Liens[9] of the Lenders priority over the Claims and Liens granted to the Indenture Trustee and Senior Noteholders under the Prepetition Loan Documents and the Final Cash Collateral and Adequate Protection Order, and so long as any Obligations under the DIP Facility are outstanding, shall not

---

[8] "**Claim**" shall have the meaning assigned to such term in section 101(5) of the Bankruptcy Code.

[9] Consistent with and as set forth in the DIP Facility, "**Lien**" means, with respect to any property, (a) any mortgage, deed of trust, lien (statutory or other), pledge, encumbrance, claim, charge, assignment, hypothecation, deposit arrangement, security interest or encumbrance of any kind or any arrangement to provide priority or preference or any filing of any financing statement under the UCC or any other similar notice of Lien under any similar notice or recording statute of any Governmental Authority, including any easement, servitude, right-of-way or other encumbrance on title to Real Property, in each of the foregoing cases whether voluntary or imposed by law, and any agreement to give any of the foregoing and (b) the interest of a vendor or a lessor under any conditional sale agreement, capital lease or title retention agreement (or any financing lease having substantially the same economic effect as any of the foregoing) relating to such property.

make any distribution to the Indenture Trustee or the Senior Noteholders, but shall instead make any distribution otherwise due to them to the Administrative Agent and the Lenders until the Obligations under the Final DIP Facility are paid in full.

28.     Continuation in Superseding Cases.    Notwithstanding anything to the contrary in the Confirmation Order, the Superpriority Claims, DIP Liens, and other rights, benefits, and remedies granted under this Final DIP Order to the Administrative Agent, for the benefit of the Lenders, shall maintain their priority as provided in this Final DIP Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and the Lender's commitments have been terminated in accordance with the DIP Documents including, (a) in any superseding case or cases under the Bankruptcy Code resulting from conversion of one or more of these Chapter 11 Cases (each, a "**Superseding Case**") to the extent permitted by applicable law, (b) following any dismissal of the Chapter 11 Cases to the extent permitted by applicable law, and (c) following the effective date of the Plan.

29.     Carve Out.    The Superpriority Claims and the DIP Liens are hereby subject and subordinate to payment of the Carve Out specified in Paragraphs 15 and 16 of the Final Cash Collateral and Adequate Protection Order (the "**Carve Out**"), and the Lenders shall be entitled to deliver a Carve Out Trigger Notice as set forth in section 8.02 of the DIP Facility.

30.     Costs and Expenses.    All costs and/or expenses (including, without limitation, reasonable attorneys' fees) reimbursed or reimbursable by the Debtors to the Administrative Agent and the Lenders are hereby approved as set forth in the DIP Documents. The Debtors shall promptly pay all such costs and expenses, without the necessity of any further application with the Court for approval or payment of such costs or expenses.  Notwithstanding anything to the contrary herein, the costs and expenses (other than those of professionals retained

by the Administrative Agent and Lenders) of the Administrative Agent and the Lenders are deemed fully earned, non-refundable, irrevocable, and non-avoidable as of the date of this Final DIP Order; provided that with respect to the expenses of professionals of the Administrative Agent and the Lenders, such professionals shall submit copies of their invoices to the Debtors, Creditors' Committee, DISH, and the United States Trustee and, provided that no objection is raised to such expenses within five (5) days of the provision of such invoice by the Debtors, Creditors' Committee, DISH, or the United States Trustee, the Debtors shall promptly pay such expenses which shall, upon payment, be deemed fully earned, non-refundable, irrevocable, and non-avoidable.

31.     Releases.   The release provisions of the DIP Documents are approved to the extent provided in this Final DIP Order.   As further consideration for the Loans, the Administrative Agent and the Lenders are granted the following:   (a) the Debtors hereby acknowledge that the Debtors and any of their subsidiaries have no defenses, counterclaims, offsets, recoupments, cross complaints, claims, or demands of any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of the Debtors' DIP Obligations and liabilities to repay the Administrative Agent or any Lender as provided in the DIP Documents or to seek affirmative relief or damages of any kind or nature from the Administrative Agent or any Lender (in their respective capacities as such); provided that nothing herein shall limit, waive, or impair the Debtors' rights to enforce the terms of the Final DIP Order and DIP Documents; and (b) the Debtors, on behalf of their bankruptcy estates, successors, assigns, any affiliates, and any person(s) acting for and on behalf of, or claiming through them (collectively, the "**Releasing Parties**"), hereby fully, finally, and forever releases and discharges the Administrative Agent and the Lenders, and all of the Administrative Agent's and the Lenders' past and present

officers, directors, servants, agents, attorneys, other professionals, assigns, heirs, parents, subsidiaries, and each Person acting for or on behalf of any of them solely in their respective capacities under the DIP Documents and limited to actions arising directly or indirectly therefrom (but materially related thereto) (collectively, the "**Released Parties**") of and from any and all past and present actions, causes of action, demands, suits, claims, liabilities, Liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses, and other obligations of any kind or nature whatsoever, whether in law, equity, or otherwise (including, without limitation, those arising under Sections 541 through 550 of the Bankruptcy Code and interest or other carrying costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential, and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against any of the Released Parties, whether held in a personal or representative capacity, and which are based on any act, fact, event or omission, or other matter, cause or thing occurring at or from any time prior to and including the date hereof in any way, directly or indirectly (but materially related thereto) arising out of the DIP Documents and this Final DIP Order, or the negotiation of the terms thereof or hereof); provided that nothing herein shall limit, waive, or impair the Debtors' rights to enforce the terms of the Final DIP Order and DIP Documents. For the avoidance of doubt, nothing in this Final DIP Order or the releases set forth above or in the DIP Documents shall, nor shall they be deemed to, act as a general release of any of the Released Parties for any matter, claim, action, demand, liability or obligation of any kind or nature

whatsoever, directly or indirectly, arising from, related to, or connected with anything other than the Final DIP Order and the DIP Documents.

32. <u>Amendments, Consents, Waivers, and Modifications</u>. The Debtors may enter into (a) express written agreements with the Required Lenders and Administrative Agent to waive, amend, supplement, or modify provisions of the DIP Facility, and/or (b) express written agreements with the Required Lenders and Administrative Agent to waive, amend, supplement, or modify provisions of the DIP Documents other than the DIP Facility, without the need for further notice and hearing or any order of this Court, <u>provided</u>, <u>however</u>, that, as set forth in the DIP Facility, without the express written consent of each lender directly affected thereby, as applicable, no such agreements shall (i) increase any commitment of any Lender, (ii) reduce the principal amount or premium, if any, of any Loan or reduce the rate of interest thereon or change the form or currency of payment of any Obligation, (iii) postpone or extend the maturity of any Loan, or any date for the payment of any interest or fees payable under the DIP Facility or reduce the amount of, waive or excuse any such payment or postpone the scheduled date of expiration of any commitment, (iv) alter the order of or the pro rata sharing of payments or proceeds of Pledged Collateral or setoffs, (v) change the percentage set forth in the definition of "Required Lenders" or any other provision of any DIP Document specifying the number or percentage of Lenders required to waive, amend, or modify any rights thereunder or make any determination or grant any consent thereunder, (vi) release all or substantially all of the Subsidiary Guarantors from their respective Guarantees or limit their liability in respect of such Guarantees, (vii) except as expressly permitted in DIP Documents, release all or substantially all of the Pledged Collateral from the Liens of the Collateral Documents or alter the relative priorities of the Obligations entitled to the Liens of the Collateral Documents, (viii) change the

provisions of the DIP Facility with respect to successors and assigns in a manner which further restricts assignments thereunder, or (ix) waive or amend any of the conditions to the Lenders' obligation to make the Loans on the Closing Date, provided, further, that a copy of any such waiver, amendment, supplement, or modification shall be (x) provided by the Debtors to the United States Trustee, DISH, and the Creditors' Committee as soon as reasonably practicable before such waiver, amendment, supplement, or modification shall be effective and (y) filed by the Debtors with the Court. No consent shall be implied by any other action, inaction, or acquiescence of the Administrative Agent or any Lender or any other party in interest in the Chapter 11 Cases.

33. <u>Reservation of Rights</u>. Except as expressly provided herein, nothing contained in this Final DIP Order shall impair or modify any rights, claims, or defenses available in law or equity to the Lenders or the Administrative Agent or the right of the Debtors in respect of any such rights, claims, or defenses. The consent of the Senior Noteholders and the Indenture Trustee to the priming of the Senior Noteholders' Liens by the DIP Liens (a) is limited solely to the DIP Financing and does not extend to any other postpetition financing the Debtors may subsequently propose to enter into and (b) does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Senior Noteholders that, absent such consent, their respective interests in the Prepetition Collateral (as defined in the Final Cash Collateral and Adequate Protection Order) would be adequately protected pursuant to this Final DIP Order or in any other proposed financing.

34. <u>Perfection of DIP Liens</u>.

(a) The Administrative Agent is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or

similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to it hereunder, in each case without the necessity to pay any mortgage recording fee or similar fee or tax. Whether or not the Administrative Agent on behalf of the Lenders shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge dispute or subordination, at the time and on the date of entry of the Final DIP Order and thereafter. The Debtors shall, if requested, execute and deliver to the Administrative Agent all such agreements, financing statements, instruments, and other documents as the Administrative Agent may reasonably request from time to time to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the Filing Date.

(b) A certified copy of this Final DIP Order may, in the discretion of the Administrative Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Final DIP Order for filing and recording.

35. <u>Application of Proceeds</u>. The Debtors are hereby directed to remit (as and when required by the DIP Documents and this Final DIP Order) to the Administrative Agent one hundred percent (100%) of all collections on, and proceeds of, the Pledged Collateral (as that term is defined in the DIP Facility, including, without limitation, the Prepetition Collateral),

subject to any use of proceeds permitted by the DIP Documents, including, without limitation, all accounts receivable collections, proceeds of sales of inventory, fixed assets, and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the date of this Final DIP Order come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the Administrative Agent or the Lenders to retain and apply all collections, remittances, and proceeds of the Pledged Collateral in accordance with the DIP Documents, without further order of this Court.

36. <u>Access to Pledged Collateral</u>. Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the Administrative Agent or the Lenders contained in this Final DIP Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon five (5) business days' written notice (with a copy to the Debtors, the United States Trustee, DISH, and any Committee) to the landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Documents or a default by any of the Debtors of any of their obligations under this Final DIP Order has occurred and is continuing, the Administrative Agent or the Lenders (i) may, only subject to any separate agreement by and between the applicable landlord or licensor, and the Administrative Agent or the Lenders (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the Debtors for the purpose of exercising any remedy with respect to Pledged Collateral located thereon and (ii) subject to applicable law, shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any

and all trademarks, tradenames, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder, provided, however, that the Administrative Agent or the Lenders shall pay only rent and additional rent, fees, royalties, or other obligations of the Debtors that first arise after the Administrative Agent's or the Lenders' written notice referenced above and that are payable during the period of such occupancy or use by the Administrative Agent or the Lenders, as the case may be, calculated on a per diem basis. To the extent applicable law prohibits the foregoing access or use of rights, the Administrative Agent or the Lenders shall have the right to an expedited hearing on five (5) business days notice to obtain Court authorization to obtain such access and/or use such rights. Nothing herein shall require the Debtors, the Administrative Agent, or the Lenders to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the Administrative Agent and the Lenders in this paragraph.

        37. <u>Automatic Stay Modified</u>. The automatic stay provisions of section 362 of the Bankruptcy Code hereby are, to the extent applicable, vacated, and modified to the extent necessary without the need for any further order of this Court:

        (a)     whether or not a Default or an Event of Default under the DIP Documents or a default by any of the Debtors of any of their obligations under this Final DIP Order has occurred, to require all cash, checks, or other collections or proceeds from Pledged Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Documents, subject to any use of proceeds permitted by the DIP Documents, and to apply any amounts so deposited and other amounts paid to or received by the Administrative Agent and the

Lenders, under the DIP Documents in accordance with any requirements of the DIP Documents without further order of this Court;

(b)    following an Event of Default under the DIP Documents or a default by any of the Debtors of any of their obligations under this Final DIP Order, the Administrative Agent and the Lenders are authorized to exercise any and all of their rights and remedies in accordance with the terms of the DIP Documents, and to take all actions required or permitted by the DIP Documents without necessity of further Court orders; provided that the Administrative Agent shall give five (5) business days notice to the Debtors, the United States Trustee, DISH, and any Committee of such action; provided further, however, that this Final DIP Order shall not prejudice the rights of any party-in-interest to oppose the exercise of the Administrative Agent's or the Lenders' remedies; provided further, that the only issue that may be raised by any entity in opposition thereto shall be whether a default, Default, or Event of Default has in fact occurred and is continuing, and all entities hereby waive their right to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit, restrict, or delay the exercise or benefit of, the rights and remedies of Administrative Agent or the Lenders under the DIP Documents or this Final DIP Order.

38.    Subsequent Reversal or Modification.  This Final DIP Order is entered pursuant to, *inter alia*, section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the Lenders all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this Final DIP Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (i) the validity of any obligation, indebtedness, or liability incurred hereunder by any of the Debtors to the Administrative Agent and the Lenders prior to the date of receipt by the Administrative Agent and the Lenders of written notice of the effective

date of such action or (ii) the validity and enforceability of any lien, claim, or priority authorized or created under this Final DIP Order or pursuant to the DIP Documents. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by any of the Debtors to the Administrative Agent and the Lenders prior to written notice to the Administrative Agent and the Lenders of the effective date of such action, shall be governed in all respects by the original provisions of this Final DIP Order, and the Administrative Agent and the Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Documents with respect to all such indebtedness, obligations, or liability.

39. <u>Pledged Collateral Rights</u>. In the event that any person or entity that holds a lien or security interest in the Pledged Collateral that is junior and/or subordinate to the DIP Liens in such Pledged Collateral receives or is paid the proceeds of such Pledged Collateral, or receives any other payment with respect thereto from any other source, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Documents, and termination of the commitments in accordance with the DIP Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Pledged Collateral in trust for the Lenders, and shall immediately turnover such proceeds to the Administrative Agent for application in accordance with the DIP Documents and this Final DIP Order.

40. <u>Prohibition on Additional Liens</u>. Except as provided in the DIP Documents and/or this Final DIP Order, the Debtors shall be enjoined and prohibited from, at any time during the Chapter 11 Cases until such time as the DIP Obligations have been indefeasibly paid in full, granting liens on the Pledged Collateral or any portion thereof to any

other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to, *pari passu* with, or junior to the liens granted to the Administrative Agent, for the benefit of the Lenders, except in accordance with the DIP Documents and this Final DIP Order.

41. <u>Sale/Conversion/Dismissal/Plan</u>.

(a) No order providing for either the sale of the ownership of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless in connection and concurrently with any such event, the proceeds of such sale shall be used to satisfy, in cash the DIP Obligations in accordance with the DIP Documents.

(b) No motion shall be filed by any Debtor seeking dismissal or conversion of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or seeking appointment of a chapter 11 trustee or an examiner with expanded powers unless and until (i) the DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Documents are terminated in accordance therewith or (ii) the Administrative Agent expressly consents in writing. If an order dismissing or converting any of these cases under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered, and unless otherwise agreed to by the Administrative Agent with the consent of the  Requisite Lenders, such order shall provide that (x) the DIP Liens and Superpriority Claims granted hereunder and in the DIP Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Final DIP Order until all DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Documents are terminated in accordance with the DIP Documents, (y) this Court

shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens and the Superpriority Claims, and (z) all postpetition indebtedness, obligation, or liability incurred by any of the Debtors to the Administrative Agent or the Lenders prior to the date of such order, including, without limitation, the DIP Obligations, shall be governed in all respects by the original provisions of this Final DIP Order, and the Administrative Agent and the Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Documents with respect to all such indebtedness, obligations, or liability.

42.     <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final DIP Order, on the other hand, the terms and provisions of this Final DIP Order shall govern.

43.     <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect, or incidental beneficiary.

44.     <u>Rights Under Section 363(k)</u>.  The full amount of the DIP Obligations may be used to "credit bid" for the assets and property of the Debtors as provided for in section 363(k) of the Bankruptcy Code, in accordance with the terms of the DIP Facility without the need for further Court order authorizing the same.

45.     <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final DIP Order.

46.     <u>Reporting</u>.  The Debtors shall provide to the Administrative Agent the same financial statements, reports, and other information the Debtors provide to the Collateral

Agent and/or the Creditors' Committee as and when the Debtors provide such information to the Collateral Agent and/or the Creditors' Committee.

47.     No Consent.  No action, inaction, or acquiescence by the Administrative Agent, the Lenders, the Senior Noteholders or the Junior Collateral Agent (as defined in the Final Cash Collateral and Adequate Protection Order), including funding the Debtors' ongoing operations under this Final DIP Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the Administrative Agent, the Lenders or the Senior Noteholders to a charge against the Pledged Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.  The Administrative Agent and the Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Pledged Collateral.

48.     Waiver.  Effective upon entry of this Final DIP Order and until such time as all DIP Obligations are paid in full, no person or entity shall be entitled, directly or indirectly, to (a) charge or recover from the Pledged Collateral, whether by operation of sections 105, 506(c), and 552(b) of Bankruptcy Code or otherwise, other than the Carve Out; or (b) direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of Pledged Collateral after an Event of Default under the DIP Documents, or termination or breach under the DIP Documents or this Final DIP Order.  For the avoidance of doubt, no party shall be entitled to charge or recover against the Pledged Collateral or otherwise receive a distribution pursuant to sections 105, 506(c), or 552(b) of the Bankruptcy Code, other than the Carve Out, until such time as all DIP Obligations have been satisfied in full.

49.     Binding Effect; Successors and Assigns.  The DIP Documents and the provisions of this Final DIP Order, including all findings herein, shall be binding upon all

parties-in-interest in these Chapter 11 Cases, including, without limitation, the Debtors and their creditors and equity interest holders, the Administrative Agent, the Lenders, DISH, the Senior Noteholders, any official committee of unsecured creditors or examiner appointed in these Chapter 11 Cases, and their respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in these Chapter 11 Cases, in any Superseding Cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the Administrative Agent, the Lenders, and the Debtors and their respective successors and assigns. In determining to make any loan (whether under the DIP Documents, a promissory note, or otherwise), or in exercising any rights or remedies as and when permitted pursuant to this Final DIP Order or the DIP Documents, the Administrative Agent and the Lenders shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.  Each agreement contained in or arising under this Final DIP Order shall also be binding upon all other parties in interest, including any committee, under all circumstances and for all purposes.

50.    <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce this Final DIP Order according to its terms.


Dated: New York, New York
        December *16*, 2009


                        *s/ Robert E. Gerber*
                         **UNITED STATES BANKRUPTCY JUDGE**