**Hearing Date and Time:  April 9, 2010 at 9:45 a.m. (ET)**
**Objection Deadline:  March 19, 2010 at 4:00 p.m. (ET)**

James H.M. Sprayregen, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
601 Lexington Ave.
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

      - and -

Marc J. Carmel
Lauren M. Hawkins
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| DBSD NORTH AMERICA, INC., *et al.*,[1] | ) | Case No. 09-13061 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**SECOND INTERIM APPLICATION OF KIRKLAND & ELLIS LLP FOR**
**(A) COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**(B) REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED**
**DURING THE PERIOD AUGUST 1, 2009 THROUGH DECEMBER 31, 2009**

---

[1]    The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are:  DBSD North America, Inc. (6404); 3421554 Canada Inc. (4288); DBSD Satellite Management, LLC (3242); DBSD Satellite North America Limited (6400); DBSD Satellite Services G.P. (0437); DBSD Satellite Services Limited (8189); DBSD Services Limited (0168); New DBSD Satellite Services G.P. (4044); and SSG UK Limited (6399).  The service address for each of the Debtors is 11700 Plaza America Drive, Suite 1010, Reston, Virginia 20190.

## TABLE OF CONTENTS

Summary of Second Interim Fee Application ..................................................................................2

Jurisdiction ........................................................................................................................................3

Background ........................................................................................................................................4

Compliance with Operating Guidelines and  Reporting Requirements for Debtors in
      Possession and Trustees................................................................................................................5

Retention and Disinterestedness of Kirkland & Ellis LLP .............................................................5

Compensation and Expenses Requested ..........................................................................................7

Summary of Services Rendered by Kirkland..................................................................................10

Reasonable and Necessary Services Rendered by Kirkland...........................................................19

Actual and Necessary Expenses Incurred by Kirkland & Ellis LLP .............................................21

Kirkland's Requested Compensation and Reimbursement Should Be Allowed ............................22

Notice .............................................................................................................................................24

No Prior Request.............................................................................................................................24

Conclusion ......................................................................................................................................25

K&E 16193104.14

# TABLE OF AUTHORITIES

## Statutes

11 U.S.C. § 101(14) ........................................................................................................... 6

11 U.S.C. § 1102 ............................................................................................................... 8

11 U.S.C. § 1107(b) .......................................................................................................... 7

11 U.S.C. § 327 ................................................................................................................ 23

11 U.S.C. § 330 .......................................................................................... 3, 4, 6, 11, 23, 24

11 U.S.C. § 330(a)(1) ....................................................................................................... 23

11 U.S.C. § 330(a)(3) ....................................................................................................... 24

11 U.S.C. § 331 .............................................................................................. 3, 4, 6, 23

28 U.S.C. § 1334 ............................................................................................................... 4

28 U.S.C. § 1408 ............................................................................................................... 4

28 U.S.C. § 1409 ............................................................................................................... 4

28 U.S.C. § 157 (b)(2) ....................................................................................................... 4

## Rules

Bankruptcy Rule 2002 ..................................................................................................... 24

Bankruptcy Rule 2016 .................................................................................................. 3, 4

Bankruptcy Rule 2016(b) ................................................................................................. 6

General Order M-389, Amended Guidelines for Fees and Disbursements
    for Professionals in Southern District of New York Bankruptcy Cases ..................... 3, 4

Local Bankruptcy Rule 2016-1 ..................................................................................... 3, 4

Operating Guidelines and Reporting Requirements
    for Debtors in Possession and Trustees ........................................................................ 5

Order Establishing Procedures for Interim
    Compensation and Reimbursement of
    Expenses for Professionals ........................................................................................... 3

United States Trustee Guidelines for Reviewing Applications
for Compensation and Reimbursement of Expenses
Filed Under 11 U.S.C. § 330................................................................................................ 3

iii

## SUMMARY OF SECOND INTERIM FEE APPLICATION

NAME OF APPLICANT:                                        Kirkland & Ellis LLP

AUTHORIZED TO PROVIDE PROFESSIONAL SERVICES TO:          Debtors

DATE OF RETENTION:                                        May 15, 2009
                                                         (Order entered June 9, 2009)

COMPENSATION & EXPENSE REIMBURSEMENT PERIOD:             Aug. 1, 2009 – Dec. 31, 2009

AMOUNT OF COMPENSATION REQUESTED:                        $4,629,693.50

AMOUNT OF EXPENSE REIMBURSEMENT REQUESTED:               $358,934.08

TOTAL AMOUNT OF COMPENSATION & EXPENSE
    REIMBURSEMENT REQUESTED:                             $4,988,627.58

TOTAL AMOUNT OF PREVIOUSLY REQUESTED AND AWARDED
    COMPENSATION & EXPENSE REIMBURSEMENT FOR PERIOD
    MAY 15, 2009 – JULY 31, 2009:                        $2,474,681.52

2

Kirkland & Ellis LLP ("**Kirkland**"), counsel for the above-captioned debtors and debtors in possession (the "**Debtors**"), submits this second interim fee application (the "**Second Interim Fee Application**") pursuant to sections 330 and 331 of title 11 of the United States Code (the **"Bankruptcy Code"**), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), General Order M-389, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "**Local Guidelines**"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 89] (the "**Interim Compensation Order**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 effective January 30, 1996 (the "**UST Guidelines**," together with the Local Guidelines, the "**Guidelines**"), for allowance and approval of interim compensation for professional services rendered to the Debtors and for reimbursement of actual and necessary expenses incurred in connection with such services during the period August 1, 2009 through December 31, 2009 (the "**Second Interim Fee Period**").

In support of this Second Interim Fee Application, Kirkland respectfully represents as follows.

## Jurisdiction

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3

3.      The bases for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Rule 2016-1, and the Guidelines.  Pursuant to the Local Guidelines, a certification of compliance is attached hereto as **Exhibit A**.

## Background

4.      On May 15, 2009 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Court held a hearing on confirmation of the *Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "**Plan**") on September 22, 2009 through September 25, 2009 (the "**Confirmation Hearing**"), and, on November 23, 2009, the Court confirmed the Plan.[2]  Under its terms, the Plan cannot go effective until the Federal Communications Commission (the "**FCC**") has approved the Debtors' application to transfer control of certain FCC licenses to the reorganized Debtors (the "**FCC Application**").[3]  The Debtors expect the FCC to approve the FCC Application during the first half of 2010.

5.      Four appeals relating to the Chapter 11 Cases have been filed and are pending in the District Court of the Southern District of New York (the "**District Court**"):  (a) an appeal by Sprint Nextel Corporation ("**Sprint**") of the Bench Decision on Debtors' Objection to Proofs of Claim (the "**Sprint Claim Appeal**"); (b) an appeal by DISH Network Corporation ("**DISH**") of the Order Designating the Votes of DISH Network Corporation to Reject the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the

---

[2]    See Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 547] (the "**Confirmation Order**").

[3]    See Plan Art. X.A.5 [Docket No. 500].

4

"**Designation Appeal**"); and (c) two separate appeals by Sprint and DISH of the Confirmation Order (collectively with the Sprint Claim Appeal and the Designation Appeal, the "**Appeals**").

6.      Currently, Kirkland is working with the Debtors and their other advisors to contest the Appeals and to ensure that the Debtors are prepared for the Plan to go effective after the FCC Application is approved.

**Compliance with Operating Guidelines and
Reporting Requirements for Debtors in Possession and Trustees**

7.      In accordance with the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (revised March 27, 2009), the Debtors have paid all quarterly fees to the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") and have filed all monthly operating reports [Docket Nos. 136, 216, 303, 413, 480, 543, 595, and 609].

**Retention and Disinterestedness of Kirkland & Ellis LLP**

8.      On June 9, 2009, the Court entered an order authorizing the Debtors to retain Kirkland as their counsel to render legal services in the prosecution of the Chapter 11 Cases and all related matters *nunc pro tunc* to the Petition Date [Docket No. 94] (the "**Retention Order**"). The Retention Order authorizes the Debtors to compensate and reimburse Kirkland in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Interim Compensation Order, and the Guidelines. The Retention Order also authorizes the Debtors to compensate Kirkland at Kirkland's hourly rates charged for services of this type and to reimburse Kirkland for Kirkland's actual and necessary out-of-pocket expenses incurred, subject to application to this Court as set forth herein. A copy of the Retention Order is attached hereto as **Exhibit B**.

5

9.     As disclosed in the *Declaration of James H.M. Sprayregen, P.C. in Support of the Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 22, Ex. B] and the *Supplemental Declaration of James H.M. Sprayregen, P.C. in Support of the Employment and Retention of Kirkland & Ellis LLP as Attorneys for the Debtors* [Docket No. 501] (the "**Declarations**"), Kirkland does not hold or represent any interest adverse to the Debtors' estates and is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code.

10.     Kirkland may have in the past represented, may currently represent, and likely in the future will represent, parties in interest in connection with matters unrelated to the Debtors in the Chapter 11 Cases.  In the Declarations, Kirkland disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts.  Kirkland will update the Declarations, as appropriate, if Kirkland becomes aware of relevant and material new information.

11.     Kirkland performed the services for which it is seeking compensation on behalf of or for the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

12.     Except to the extent of the advance payments paid to Kirkland that Kirkland previously disclosed to this Court in the Declarations, Kirkland has received no payment and no promises for payment from any source other than the Debtors for services rendered or to be rendered in any capacity whatsoever in connection with the Chapter 11 Cases.

13.     Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared, nor has Kirkland agreed to share (a) any compensation it has received or may receive with another party or person

6

other than with the partners, counsel, and associates of Kirkland or (b) any compensation another person or party has received or may receive.

## Compensation and Expenses Requested

14.    On October 6, 2009, Kirkland filed the *First Interim Application of Kirkland & Ellis LLP for (A) Compensation for Professional Services Rendered and (B) Reimbursement of Actual and Necessary Expenses Incurred During the Period May 15, 2009 Through July 31, 2009* [Docket No. 447] (the "**First Interim Fee Application**").  In the First Interim Fee Application, Kirkland sought compensation in the amount of $2,383,447.00 and reimbursement of expenses in the amount of $91,234.52.

15.    On November 30, 2009, the Court entered the *Omnibus Order Granting First Interim Applications of Retained Professionals for (A) Compensation for Professional Services Rendered and (B) Reimbursement of Actual and Necessary Expenses* [Docket No. 562] (the "**First Interim Fee Order**"), which awarded Kirkland 100% of its fees and expenses on an interim basis and authorized the Debtors to remit 93% of Kirkland's fees and 100% of Kirkland's expenses for the period May 15, 2009 through July 31, 2009.

16.    Kirkland now files this Second Interim Fee Application asking that the Court allow compensation for professional services rendered to the Debtors during the Second Interim Fee Period on an interim basis in the aggregate amount of $4,629,693.50 and reimbursement of actual expenses incurred in connection with rendering such services in the aggregate amount of $358,934.08, for a total request of $4,988,627.58.

17.    In accordance with the Interim Compensation Order, Kirkland has served five monthly fee statements (collectively, the "**Monthly Fee Statements**") covering the Second Interim Fee Period.  Pursuant to the Interim Compensation Order, Kirkland has served each

7

monthly fee statement on: (a) the Debtors; (b) the U.S. Trustee; (c) counsel to the creditors appointed to the committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "**Committee**"); (d) counsel to the lenders under the prepetition working capital facility (the "**First Lien Lenders**"); and (e) counsel to the ad hoc committee of the Debtors' secured noteholders (the "**Second Lien Lenders**").

18.     The Monthly Fee Statement for August 2009 included a voluntary waiver of fees in the amount of $24,380.50 and expenses in the amount of $3,464.98.  The Monthly Fee Statement for September 2009 included a voluntary waiver of fees in the amount of $43,668.50 and expenses in the amount of $5,102.52.  The Monthly Fee Statement for October 2009 included a voluntary waiver of fees in the amount of $28,307.00 and expenses in the amount of $5,312.60.  The Monthly Fee Statement for November 2009 included a voluntary waiver of fees in the amount of $17,723.50 and expenses in the amount of $4,216.17.  The Monthly Fee Statement for December 2009 included a voluntary waiver of fees in the amount of $25,290.00 and expenses in the amount of $3,776.78.  In total, the Monthly Fee Statements incorporated a reduction to fees in the amount of $139,369.50 and expenses in the amount of $21,873.05.

19.     As of the date hereof, Kirkland has received $3,165,983.34 from the Debtors for fees and expenses incurred by Kirkland during the Second Interim Fee Period.  This represents 80% of fees and 100% of expenses for the August 2009 through October 2009 Monthly Fee Statements.  Kirkland has not yet received payment for the November 2009 or December 2009 Monthly Fee Statements.

8

20.     For the convenience of the Court and all parties in interest, attached hereto as **Exhibit C** is a schedule of the total amount of fees and expenses incurred under each internal Kirkland matter during the Second Interim Fee Period.

21.     Kirkland is only seeking compensation for services rendered to the Debtors and their estates in connection with the Chapter 11 Cases.  The rates described herein are Kirkland's hourly rates for services of this type provided during the Second Interim Fee Period.  Based on these rates and the services performed by each individual, the total reasonable value of such services rendered during the Second Interim Fee Period is $4,629,693.50.  The Kirkland attorneys and paraprofessionals expended a total of 9,967.40 hours working on the Chapter 11 Cases during the Second Interim Fee Period, at a blended average hourly rate of $464.48 for attorneys and paraprofessionals.

22.     Kirkland maintains computerized records of the time expended in rendering the professional services required by the Debtors and their estates.  These records are maintained in the ordinary course of Kirkland's practice.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit D** is a summary for the Second Interim Fee Period, setting forth the name of each attorney and paraprofessional for whose work on the Chapter 11 Cases compensation is sought, each attorney's year of bar admission and area of practice concentration, the aggregate time expended by each attorney and each paraprofessional, the hourly billing rate for each attorney and each paraprofessional at Kirkland's current billing rates, and an indication of the individual amounts requested as part of the total amount of compensation requested. Kirkland also maintains computerized records of all expenses incurred in connection with the performance of professional services.  A summary of the amounts and categories of expenses for

9

which reimbursement is sought for the Second Interim Fee Period is attached hereto as **Exhibit E**.

23.    Copies of Kirkland's computerized records of fees and expenses in the format specified by the Guidelines have been furnished to the Court, the U.S. Trustee, counsel to the Committee, counsel to the First Lien Lenders, and counsel to the Second Lien Lenders, and the records are attached hereto as **Exhibit F**.

24.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amount of fees requested is fair and reasonable in light of:  (a) the complexity of the Chapter 11 Cases; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

**Summary of Services Rendered by Kirkland**

25.    The specific professional services that Kirkland rendered during the Second Interim Fee Period are grouped into the numbered and titled categories of the subject matters described in paragraphs A through R herein (each, a "**Subject Matter**").

**A.    Business Operations (Matter 7)**
**(Fees: $7,077.50;  Expenses: $462.52;  Hours: 10.60)**

26.    This Subject Matter includes the time Kirkland spent on substantive and procedural issues related to the Debtors' business operations during the Chapter 11 Cases.  In particular, Kirkland analyzed the Debtors' business documents and communicated with the Debtors and their other advisors relating to the Debtors' business operations.

10

**B.      Case Administration (Matter 8)**
         **(Fees: $35,063.00;  Expenses:  $20,555.15;  Hours:  109.10)**

27.      This Subject Matter encompasses a number of activities undertaken by Kirkland
in the general administration of the Chapter 11 Cases and the Appeals during the Second Interim
Fee Period.   To the extent possible, Kirkland's paraprofessionals attended to these general
administrative matters, which included the following tasks.

### i.        Preparing Pleadings for Filing and Service

28.      The Debtors filed numerous pleadings in the Chapter 11 Cases and the Appeals
during the Second Interim Fee Period.   In connection with these filings, Kirkland typically
prepared notices, proposed orders, exhibits, and schedules, as applicable.   After filing such
pleadings with this Court and the District Court, Kirkland, together with the Debtors' notice and
claims agent (the "**Claims and Solicitation Agent**"), coordinated service to the master service
list and other affected parties, as appropriate.   Additionally, Kirkland coordinated the delivery of
such pleadings to this Court, the District Court, and the U.S. Trustee.

### ii.       Monitoring Docket, Distributing Pleadings, and Tracking Critical Dates

29.      Kirkland  paraprofessionals  spent  time  monitoring  the  dockets  of  the
Chapter 11 Cases and the Appeals for the filing of pleadings by interested parties and to remain
apprised of critical dates related to such pleadings.   For each pleading filed, Kirkland
paraprofessionals ensured that the appropriate attorneys and personnel of the Debtors remained
apprised of deadlines and other critical dates.

### iii.      Communicating Case Administration Issues with the Debtors

30.      To avoid redundancy in the provision of legal services while ensuring appropriate
consideration of the complex legal issues involved in the Chapter 11 Cases, Kirkland regularly

11

communicates with the Debtors' in-house counsel and management regarding staffing and case administration. In addition, during the Second Interim Fee Period Kirkland sought to ensure efficient case administration and staffing by: (a) preparing, maintaining, and distributing case calendars and timelines, task lists, and works in process lists; and (b) communicating with the Debtors' other advisors on a regular basis.

**C.    Cash Collateral and DIP Financing (Matter 9)**
**(Fees: $944,756.50; Expenses: $10,226.88; Hours: 1,922.90)**

31.    This Subject Matter comprises services performed by Kirkland during the Second Interim Fee Period relating to the use of cash collateral and financing of the Chapter 11 Cases. Kirkland attorneys and paraprofessionals spent considerable time:

a.    analyzing projections regarding the Debtors' use of cash collateral;

b.    conferring with the Debtors and their other advisors with respect to the Debtors' cash needs;

c.    reviewing and analyzing the Debtors' prepetition credit documents with respect to securing debtor in possession ("**DIP**") financing;

d.    negotiating with three prospective DIP lenders;

e.    drafting and revising a motion for authority to secure DIP financing, including two supplements and a response to objections to DIP financing;

f.    conducting due diligence in connection with the preparation of DIP financing documents;

g.    negotiating, drafting, and revising credit facility agreements and other credit documents and financing orders for interim and final DIP financing;

h.    preparing for the interim and final DIP financing hearings;

i.    reviewing and analyzing issues relating to the Debtors' obligations under the cash collateral and DIP Financing orders; and

j.    communicating with the Debtors, their other advisors, the Committee and other constituents in connection with the negotiation and development of the foregoing.

12

D.    **Claims Administration and Objections (Matter 10)**
      **(Fees: $308,229.50; Expenses: $13,074.44; Hours: 593.30)**

32.    This Subject Matter includes time Kirkland spent on matters related to claims administration and objections.  Specifically, Kirkland spent time:

   a.    reviewing and analyzing issues with respect to proofs of claim and possible settlements;

   b.    researching and analyzing claim issues;

   c.    drafting omnibus claims objections and preparing notices of presentment with respect to omnibus orders;

   d.    preparing presentations for the Debtors in connection with contract rejection claims; and

   e.    communicating with the Debtors and their other advisors with respect to numerous other claims issues.

33.    In addition, during the Second Interim Fee Period, Kirkland spent a significant amount of time addressing litigation in this Court pertaining to the Sprint claims and the Sprint Claim Appeal (together, the "**Sprint Claim Litigation**"), including:

   a.    communicating with the Debtors and their other advisors relating to the development of strategies in connection with the Sprint Claim Litigation;

   b.    analyzing and addressing discovery issues;

   c.    researching and drafting pleadings related to Sprint motions (i) for temporary allowance of claims, (ii) to withdraw the reference, and (iii) to stay issues related to allowance and treatment of its claims;

   d.    researching and drafting the Debtors' reply in support of their objection to Sprint's claims; and

   e.    researching and drafting pleadings relating to the Sprint Claim Appeal.

13

E.     **Corporate and Securities Issues (Matter 11)**
       **(Fees: $189,985.50; Expenses: $1,885.85; Hours: 394.50)**

34.     This Subject Matter comprises services that Kirkland performed in connection

with ensuring the Debtors' compliance with their corporate and securities-related obligations,

including:

a.     analyzing corporate and securities issues and developing strategy in
connection with the potential effect of claims trading on the FCC
Application;

b.     researching and drafting the claims trading motion and reply in support;

c.     negotiating and communicating with parties in interest regarding the
claims trading procedures, notices, and order;

d.     communicating with the Debtors, their other advisors, and parties in
interest regarding other corporate and securities issues; and

e.     advising the Debtors with respect to the corporate and financial aspects of
the Chapter 11 Cases.

F.     **Creditor and Equity Communications (Matter 12)**
       **(Fees: $5,300.50; Expenses: $34.51; Hours: 8.70)**

35.     This Subject Matter comprises Kirkland's efforts to keep the Debtors' creditors

and equity holders apprised of important information as the Chapter 11 Cases proceed.  During

the Second Interim Fee Period, Kirkland regularly communicated with the First Lien Lenders,

the Second Lien Lenders, the Committee, and ICO Global Communications (Holdings) Ltd.

regarding the Chapter 11 Cases.

G.     **Disclosure Statement, Plan, and Exit Planning (Matter 13)**
       **(Fees: $2,570,223.00; Expenses: $198,054.46; Hours: 5,570.20)**

36.     This Subject Matter includes time spent by Kirkland attorneys working with the

Debtors and their key constituencies to confirm the Plan and to develop a strategy for the

Debtors' exit from Chapter 11, including exploring alternative transactions to maximize value

14

for the Debtors' estates and creditors.  During the Second Interim Fee Period, Kirkland spent

considerable time:

    a.    revising the Plan and Plan supplement documents, including the amended credit facility agreement, the new credit facility agreement, and related credit documents, drafting pleadings related to Plan and Plan supplement modifications, and communicating with the Debtors and their other advisors regarding related issues;

    b.    researching and analyzing issues related to vote designation, drafting the motion to designate DISH's vote, and drafting the reply in support of the vote designation motion;

    c.    researching and analyzing issues related to confirmation of the Plan, reviewing and analyzing confirmation objections, developing strategies to resolve confirmation objections, negotiating with key creditor constituencies, and drafting Debtors' confirmation brief, affidavits in support of confirmation, omnibus response to confirmation objections, objection to Sprint's motion to stay confirmation, confirmation order, and related documents;

    d.    preparing for the Confirmation Hearing, including:  (i) negotiating and drafting the stipulated protective order and related documents, complying with Confirmation Hearing discovery requests, reviewing and analyzing document productions from counterparties, and analyzing and addressing other Confirmation Hearing discovery issues; (ii) drafting deposition notices, preparing for and attending depositions, and preparing deponents for depositions related to confirmation of the Plan; (iii) drafting hearing outlines, preparing arguments, developing direct and cross examination outlines, identifying and preparing witnesses, and compiling exhibits;

    e.    researching and analyzing issues related to the Appeals, drafting corporate disclosure statements for the Appeals, drafting the motion to consolidate the Appeals and the reply in support of consolidation, and drafting the appellee brief in the Sprint Confirmation Appeal;

    f.    researching and analyzing issues, drafting motions to extend the Debtors' exclusivity period, and drafting a reply in support of the Debtors' first exclusivity motion;

    g.    developing Chapter 11 exit strategies, including exploring restructuring alternatives to maximize the value of the Debtors' estates; and

15

h.  communicating with the Debtors, their other advisors, the Committee, the U.S. Trustee, and other constituents in connection with the negotiation and development of the foregoing.

**H.  Employee Issues (Matter 14)**
**(Fees: $7,213.50; Expenses: $620.32; Hours: 15.90)**

37.  This Subject Matter comprises services performed by Kirkland related to employees and employment benefits, including researching and analyzing employee benefits issues and communicating with the Debtors, the Debtors' other advisors, and the Debtors' constituents.

**I.  Contracts and Leases (Matter 15)**
**(Fees: $73,017.50; Expenses: $595.98; Hours: 181.00)**

38.  This Subject Matter includes legal services rendered to examine issues related to the Debtors' contracts and leases.  Kirkland attorneys spent time:

a.  reviewing and analyzing the Debtors' executory contracts and unexpired leases;

b.  negotiating with counterparties, drafting amendments to executory contracts and unexpired leases, and drafting related notices and pleadings;

c.  researching and drafting the motion seeking to extend the deadline for assumption or rejection of unexpired leases of nonresidential real property;

d.  analyzing claims relating to executory contracts and unexpired leases; and

e.  communicating with the Debtors and their other advisors with respect to their executory contracts and unexpired leases.

**J.  Hearings (Matter 16)**
**(Fees: $224,130.50; Expenses: $10,246.07; Hours: 554.80)**

39.  This Subject Matter includes time spent by Kirkland preparing for and attending various hearings in connection with the Chapter 11 Cases.  As part of any complex case, there are often multiple matters scheduled for each hearing that require the expertise of a number of

16

Kirkland attorneys. Kirkland is cognizant of this fact and uses its best efforts to minimize the number of attorneys present at each hearing.

40. During the Second Interim Fee Period, Kirkland attorneys prepared for and attended the hearings on:

a.  August 20, 2009, pertaining to Sprint's claims and Sprint's motions to temporarily allow its claims, withdraw the reference, and seek a stay of certain issues;

b.  September 22, 2009, pertaining to the assumption of certain executory contracts, immaterial modifications to the Plan, and the designation of DISH's vote to reject the Plan;

c.  September 22, 2009 through September 25, 2009, pertaining to confirmation of the Plan;

d.  October 29, 2009, pertaining to seeking an extension of the exclusivity period and authority to secure postpetition financing;

e.  November 2, 2009, pertaining to authority to secure postpetition financing;

f.  November 20, 2009, pertaining to Sprint's motion for a conditional stay of confirmation and the first interim fee applications;

g.  December 9, 2009, pertaining to the claims trading motion and a motion to assume certain unexpired leases; and

h.  December 15, 2009, pertaining to final authority to secure postpetition financing.

**K.  Contested Matters (Matter 17)**
**(Fees: $5,665.00; Expenses: $999.55; Hours: 11.40)**

41. This Subject Matter includes time spent by Kirkland addressing contested matters not otherwise allocated to a different subject matter.

**L.  Professional Retention, Fee Applications, and Monthly Statements (Matter 18)**
**(Fees: $139,683.00; Expenses: $3,264.49; Hours: 357.80)**

42. This Subject Matter includes time spent by Kirkland:

17

a.  preparing quarterly reports of payments to ordinary course professionals;

b.  communicating with ordinary course professionals regarding compliance with the ordinary course professionals order;

c.  preparing Monthly Fee Statements and drafting the First Interim Fee Application and the First Interim Fee Order to ensure compliance with the Bankruptcy Code and the Bankruptcy Rules;

d.  preparing and drafting a supplemental declaration in support of Kirkland's retention; and

e.  communicating with the Debtors' other advisors regarding compliance with the Interim Compensation Order and other professional retention issues.

**M.   Supplier and Vendor Issues (Matter 19)**
**(Fees: $7,087.50; Expenses: $12.56; Hours: 10.50)**

43.    This Subject Matter includes time spent by Kirkland on issues and disputes involving the Debtors' suppliers and vendors, including reviewing contracts and related documents and communicating with the Debtors.

**N.   Schedules of Assets and Liabilities, Statements of Financial Affairs, and Monthly Operating Reports (Matter 20)**
**(Fees: $11,946.50; Expenses: $178.00; Hours: 29.40)**

44.    This Subject Matter includes time spent by Kirkland advising the Debtors in connection with the preparation and filing of the Debtors' monthly operating reports. Time spent in this Subject Matter included reviewing and revising the Debtors' monthly operating reports and communicating with the Debtors regarding the preparation of their monthly operating reports.

18

**O.    Tax Issues (Matter 21)**
        **(Fees: $10,897.00; Expenses: $1.20; Hours: 14.30)**

45.    This Subject Matter includes time spent by Kirkland in connection with the Debtors' tax issues during the Second Interim Fee Period, including researching and analyzing tax issues and communicating with the Debtors and their other advisors regarding the foregoing.

**P.    Travel (Matter 22)**
        **(Fees: $77,356.00; Expenses: $98,607.94; Hours: 164.10)**

46.    This Subject Matter includes time Kirkland spent traveling while representing the Debtors.  Kirkland billed the Debtors for one-half of the total time that Kirkland spent for non-working travel.

**Q.    U.S. Trustee Issues (Matter 23)**
        **(Fees: $41.50; Expenses: $0.00; Hours: 0.10)**

47.    This Subject Matter reflects time Kirkland spent communicating with the U.S. Trustee.

**R.    Use, Sale, or Lease of Property (Matter 24)**
        **(Fees: $12,020.00; Expenses: $114.16; Hours: 18.80)**

48.    This Subject Matter includes time expended by Kirkland during the Second Interim Fee Period in connection with the Debtors' assets.  Kirkland spent time examining marketing processes and strategic alternatives and communicating with the Debtors and their other advisors with respect to such marketing processes and strategic alternatives.

### Reasonable and Necessary Services Rendered by Kirkland

49.    The foregoing professional services rendered by Kirkland on behalf of the Debtors during the Second Interim Fee Period were reasonable, necessary, and appropriate to the administration of the Chapter 11 Cases and related matters.

19

50.     The majority of the services performed by partners and associates of Kirkland were rendered by Kirkland's Restructuring Group.  Kirkland has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with more than 100 attorneys specializing in this area of law.  The attorneys in Kirkland's Restructuring Group have represented either the debtor or the creditors' committee or have acted as special counsel in many large Chapter 11 cases.  Due to the facts and circumstances of the Chapter 11 Cases, attorneys from Kirkland's litigation and corporate groups were also heavily involved with Kirkland's representation of the Debtors.  These practice groups also enjoy national and international reputations for their expertise.  As a consequence, Kirkland brings a particularly high level of expertise to the Chapter 11 Cases, which inures to the benefit of the Debtors, their estates, and all parties in interest.

51.     During the Second Interim Fee Period, Kirkland's hourly billing rates for attorneys ranged from $355 to $965.  The hourly rates and corresponding rate structure utilized by Kirkland in the Chapter 11 Cases are equivalent to the hourly rates and corresponding rate structure predominantly used by Kirkland for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—which were present in the Chapter 11 Cases.  Moreover, Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These

20

hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

**Actual and Necessary Expenses Incurred by Kirkland & Ellis LLP**

52.    As set forth in **Exhibit E** attached hereto, Kirkland has incurred a total of $358,934.08 in expenses on behalf of the Debtors during the Second Interim Fee Period.  Each category of expenses does not exceed and, in some instances, is well below the maximum rate set forth in the Guidelines.  These charges are intended to reimburse Kirkland's direct operating costs, which are not incorporated into the Kirkland hourly billing rates.  Kirkland charges external copying and computer research at the provider's cost without markup.  Only clients who actually use services of the types set forth in **Exhibit E** of this Second Interim Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

53.    The time constraints imposed by the circumstances of the Chapter 11 Cases required Kirkland attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, to respond to inquiries from various creditors and other parties in interest on a timely basis, and to satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates given the exigent circumstances of the Chapter 11 Cases.  Consistent with firm policy and as further disclosed in the Kirkland retention application, attorneys and other Kirkland employees who worked late in the evenings or on weekends or holidays were reimbursed for their reasonable meal and transportation costs.  Kirkland's regular practice is not to include components for those charges in overhead when establishing billing

21

rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of providing legal services.  The reimbursement amounts do not exceed those set forth in the Guidelines.

54.    In addition, due to the location of the Debtors' businesses, creditors, and other parties in interest in relation to Kirkland's offices, frequent telephone conferences involving numerous parties were required.  On many occasions, overnight delivery of documents and other materials was required as a result of the exigencies and circumstances of the Chapter 11 Cases.  The disbursements for such services are not included in Kirkland's overhead for the purpose of setting billing rates, and Kirkland has made every effort to minimize its disbursements in the Chapter 11 Cases.   The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in the Chapter 11 Cases.

55.    Kirkland scrutinizes its expenses to ensure that all expenses meet the requirements set forth in the Guidelines.  Among other things, Kirkland makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement.  As mentioned above, Kirkland voluntarily has reduced the expenses requested by $21,873.05.  This amounts to a voluntary reduction of more than 6% of the total request for expense reimbursement.

### Kirkland's Requested Compensation and Reimbursement Should Be Allowed

56.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation.  See 11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation

22

for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."

11 U.S.C. § 330(a)(1).    Section 330 also sets forth the criteria for the award of such

compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including —
>
> (A)    the time spent on such services;
> (B)    the rates charged for such services;
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> (E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

57.    In the Chapter 11 Cases, Kirkland respectfully submits that the services for which

it seeks compensation in this Second Interim Fee Application were, at the time rendered,

necessary for and beneficial to the Debtors and their estates and were rendered to protect and

preserve the Debtors' estates.  Kirkland believes that the services rendered to the Debtors were

performed economically, effectively, and efficiently and the results obtained benefited not only

the Debtors, but also the Debtors' estates and constituents.  Kirkland further submits that the

compensation requested herein is reasonable in light of the nature, extent, and value of such

services to the Debtors, their estates, and all parties in interest.

58.    In sum, Kirkland respectfully submits that the professional services rendered by Kirkland on behalf of the Debtors and their estates during the Chapter 11 Cases were necessary and appropriate given the complexity of the Chapter 11 Cases, the time expended by Kirkland, the nature and extent of Kirkland's services rendered, the value of Kirkland's services, and the cost of comparable services outside of bankruptcy, which are relevant factors set forth in section 330 of the Bankruptcy Code and, thus, the fees and expenses should be approved.

## **Notice**

59.    Notice of this Second Interim Fee Application has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the First Lien Lenders; (d) counsel to the Second Lien Lenders; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the parties in interest who have formally requested notice by filing a written request for notice, pursuant to Bankruptcy Rule 2002 and the Local Rules.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary. A copy of the Second Interim Fee Application is also available on the website of the Debtors' Claims and Solicitation Agent, The Garden City Group, Inc., at http://www.gardencitygroup.com/cases/dbsd.

## **No Prior Request**

60.    No prior request for the relief sought in this Second Interim Fee Application has been made to this or any other court.

K&E 16193104.14

**Conclusion**

WHEREFORE, Kirkland respectfully requests entry of an order: (a) allowing and awarding compensation for professional services rendered during the Second Interim Fee Period in the amount of $4,629,693.50 and reimbursement of all actual and necessary expenses incurred by Kirkland during the Second Interim Fee Period in the amount of $358,934.08, without prejudice to Kirkland's right to seek additional compensation for services performed and expenses incurred during this Second Interim Fee Period; and (b) granting such other and further relief as just and proper.

New York, New York
Dated: February 16, 2010

/s/ *Marc J. Carmel*

James H.M. Sprayregen, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

Marc J. Carmel
Lauren M. Hawkins
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Counsel to the Debtors
and Debtors in Possession

25