# Exhibit A
(Declaration of Stephen Blauner)

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
Susheel Kirpalani (SK-8926)
Scott C. Shelley (SS-1013)
Daniel S. Holzman (DH-5770)
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Counsel to Solus Alternative Asset Management LP
and Harbinger Capital Partners LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
In re:                                                     :   Chapter 11

DBSD NORTH AMERICA, INC., *et al.*,[1]     :   Case No. 09-13061 (REG)

                                                   :   (Jointly Administered)
        Debtors.
----------------------------------------------------------x

## DECLARATION OF STEPHEN J. BLAUNER

---

[1] The debtors in these chapter 11 cases, together with the last four digits of each debtor's federal tax identification number, are: DBSD North America, Inc. (6404); 3421554 Canada Inc. (4288); DBSD Satellite Management, LLC (3242); DBSD Satellite North America Limited (6400); DBSD Satellite Services G.P. (0437); DBSD Satellite Services Limited (8189); DBSD Services Limited (0168); New DBSD Satellite Services G.P. (4044); and SSG UK Limited (6399) (collectively, the "Debtors"). The service address for each of the Debtors is 11700 Plaza America Drive, Suite 1010, Reston, Virginia 20190.

I, STEPHEN J. BLAUNER, hereby declare as follows:

1. I am a Managing Director of Solus Alternative Asset Management LP, and I am also a member in good standing of the bar of New York. I submit this declaration in support of a request for a seven-day continuance of the above-captioned Debtors' motions to approve an investment agreement and replacement postpetition financing in connection with these chapter 11 cases.

2. Attached hereto as Attachment I is a true and correct copy of a letter proposal I sent to DBSD North America, Inc., on February 28, 2011 (the "Alternative Bidder Letter"), on behalf of Harbinger Capital Partners LLC and Solus Alternative Asset Management LP (the "Alternative Bidders").

3. As set forth in the Alternative Bidder Letter, the Alternative Bidders believe that the transaction contemplated thereby is superior to that submitted by DISH Network Corporation ("DISH") because the proposed transaction provides a greater cash component to holders of claims against the Debtors and permits certain of such creditors the option to participate in the equity of the reorganized company if they so choose.

4. I learned today that, in resisting a continuance of the pending motions, certain statements were made to the Court that only "non-binding expressions of interest," or a similar term, have been received by the Debtors, possibly leading the Court to believe that no serious expressions of interest had been submitted. I wish to clarify or correct this understanding and am prepared to testify about these matters if called or permitted to do so.

5. I was in attendance at the status conference before the Court on February 7, 2011, during which the Court indicated that the Debtors were "in play" and that the Debtors' Revlon obligations have "kicked in." Immediately following that hearing – indeed, in the hallway outside the courtroom -- I began discussions in earnest with representatives of the Debtors, including Donna Alderman and the financial advisors to the Debtors. I also promptly reached out to counsel for the

Official Committee of Unsecured Creditors. I have also had discussions with representatives of holders of the Senior Notes.

6. During the three weeks since the February 7th hearing, I have had substantive negotiations over the terms of an acceptable chapter 11 plan for the Debtors, which culminated in the submission of the Alternative Bidder Letter on February 28, 2011. A draft version of this proposal was submitted to the Debtors on Saturday, February 26, 2011, following further discussions with Ms. Alderman on Friday, February 25, 2011. The delay between Saturday and Monday was occasioned by my written request on Saturday to Andrew Whittaker and Donna Alderman "for comment and feedback."

7. I received no feedback from the Debtors or their financial advisor on the Alternative Bidder Letter. Rather, on Sunday evening I received a telephone call from Donna Alderman advising that the DBSD Board of Directors had determined to proceed with the DISH investment proposal. Ms. Alderman advised me that the Board thought the transaction reflected in the Alternative Bidder Letter was "thoughtful and promising," and represented that the Debtors would continue to pursue the transaction. Accordingly, I was surprised to hear that the Debtors advised the Court this morning that they had received no serious expressions of interest since the February 7th status conference.

8. Although references are made in the Alternative Bidder Letter to a possible combination of the Debtors with TerreStar Networks, Inc., another debtor in chapter 11 in this district, for the avoidance of doubt (and as explicitly stated in the transmittal letter to Donna Alderman), the transaction contemplated for the Debtors is not conditioned upon a business combination with TerreStar Networks, Inc. or any other company. Furthermore, the Alternative Bidder Letter, the statements therein and the statements in this Declaration are not intended to

solicit acceptance or rejection of, and are not provided for the purpose of soliciting acceptance or rejection of, a plan of reorganization for TerreStar Networks, Inc. or any other company.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, NY
      March 1, 2011

                                            /s/ Stephen J. Blauner

# Attachment I
(Alternative Bidder Letter, dated February 28, 2011)

Harbinger Capital Partners LLC
450 Park Avenue, 30th Floor
New York, NY 10022

Solus Alternative Asset Management LP
410 Park Avenue, 11th Floor
New York, NY 10022

February 28, 2011

Via Courier

DBSD North America, Inc.
11700 Plaza America Drive, Suite 1010
Reston, Virginia 20190
Attention: Donna Alderman

Dear Ms. Alderman:

      We are writing to express the interest of Harbinger Capital Partners, LLC ("Harbinger") and Solus Alternative Asset Management LP ("Solus"), on behalf of their managed funds and affiliates (collectively, "we") in acquiring DBSD North America, Inc., a Delaware corporation formerly known as ICO North America, Inc., and its subsidiaries ("DBSD" or the "Company") pursuant to a transaction (the "Transaction") that may also combine DBSD with Terrestar Networks, Inc., a Delaware corporation ("TSN") and be subject to the approval of the United States Bankruptcy Court for the Southern District of New York overseeing the pending chapter 11 cases of DBSD. For the avoidance of doubt, the contemplated acquisition of DBSD is not conditioned on a concurrent business combination with TSN.

      While we are prepared to discuss with you final terms and conditions of a Transaction, the preliminary terms and conditions we propose are set forth for your consideration in the Plan Term Sheet (the "Plan Term Sheet") attached as Exhibit A hereto. We believe the terms and conditions of the Transaction we propose are superior to the recently amended offer to acquire the reorganized Company submitted by DISH Network Corporation because the proposed Transaction permits DBSD stakeholders to participate in the equity of an entity that combines both DBSD and TSN, while resolving all claims against DBSD in the chapter 11 cases.

      This letter and the Plan Term Sheet are intended for discussion purposes only and do not constitute a binding offer on the part of Harbinger, Solus or any of their managed funds or affiliates. This letter and the terms and conditions set forth in the Plan Term Sheet are subject in

their entirety to the negotiation, execution and delivery of definitive documentation, as well as other customary conditions, including the completion of due diligence and the acceptance of customary expense reimbursement, indemnification and release terms.

We are excited about this opportunity and look forward to working expeditiously with DBSD to finalize the terms and conditions of the Transaction.

Please direct any questions you may have, as well as a proposed Non-Disclosure Agreement, to Susheel Kirpalani at the Quinn Emmanuel firm (SusheelKirpalani@QuinnEmanuel.com).

Very truly yours,

HARBINGER CAPITAL PARTNERS LLC

By: _____
Name: PHILIP A. FALCONE
Title: CHIEF EXECUTIVE OFFICER

SOLUS ALTERNATIVE ASSET MANAGEMENT LP

By: _____
Name: Christopher Pucillo
Title: President

cc (by email):

Kirkland & Ellis LLP

James H.M. Sprayregen, Esq.

Marc Kieselstein, Esq.

Ryan Blaine Bennett, Esq.

Lauren M. Hawkins, Esq.

Jefferies & Company, Inc.

Michael Henkin (mhenkin@jefferies.com)

Andrew Whittaker (awhittaker@jefferies.com)

# Exhibit A

# DBSD NORTH AMERICA, INC./TERRESTAR NETWORKS INC.

# PLAN TERM SHEET

This non-binding term sheet (this "**Plan Term Sheet**") describes the material terms of proposed debtor-in-possession financings and plans of reorganization (each, a "**Plan**") for each of DBSD North America, Inc., a Delaware corporation ("**DBSD**" and as reorganized, "**Reorganized DBSD**"), Terrestar Networks Inc., a Delaware corporation ("**TSN**" and as reorganized, "**Reorganized TSN**") and their respective chapter 11 subsidiaries (collectively, the "**Reorganized Debtors**"). This Term Sheet is provided for discussion only and does not constitute a binding commitment for any such DIP financing or Plan. Except as expressly provided in any binding written agreement the parties may enter into in the future, no past, present or future action, course of conduct, or failure to act relating to the transactions or proposals referred to in this Term Sheet or relating to the negotiation of the terms of such transactions or proposals shall give rise to or serve as the basis for any obligation or other liability on the part of such persons or any of their affiliates. The transactions contemplated by this Term Sheet are subject to conditions to be set forth in definitive documents. Nothing herein shall constitute or be deemed to constitute an offer for the purchase or sale of securities, or a solicitation of votes for the Plan which shall only occur pursuant to a bankruptcy-court approved disclosure statement describing the Plan.

| Sponsors | Solus Alternative Asset Management LP, on behalf of one or more funds and managed accounts to be designated by it; Harbinger Capital Partners LLC, on behalf of one or more funds or other affiliates to be designated by it; and a strategic partner to be named (collectively, the "**Sponsors**"). The Sponsors will form and capitalize a new entity ("**Newco**") that will own 100% of the capital stock of Reorganized DBSD and Reorganized TSN (the equity of Newco, the "**Equity**"). The Sponsors are prepared to proceed with an acquisition of DBSD on the terms outlined herein, without a concurrent business combination with TSN. |
|---|---|

| | |
|---|---|
| **DIP Facility For DBSD** | DBSD and the Sponsors shall enter into a replacement DIP facility (the "**New DBSD DIP Facility**") of up to $90 million, the proceeds of which shall be used to (i) repay in full in cash the obligations under the existing DIP facility provided by certain holders of Senior Note Claims under that certain Secured Super-Priority Debtor-in-Possession Credit Agreement, dated as of January 8, 2010, as amended (the "**Old DIP Facility**"), (ii) fund bankruptcy related costs, and (iii) provide working capital to DBSD. Pursuant to Bankruptcy Code section 364(c), the obligations under the New DIP Facility shall be entitled to superpriority claim status and shall be secured by (A) senior liens on all unencumbered assets of DBSD and (B) junior liens on all assets of DBSD, subject to the prepetition and adequate protection liens of holders of secured claims under the Credit Agreement and the Indenture. The terms and conditions of the New DBSD DIP Facility will be no less favorable to DBSD than those contained in the "DIP Loan Documents," as that term is defined in the proposed "Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing on a Third Lien, Secured, and Superpriority Basis, and (B) Granting Related Relief The New DBSD DIP Facility shall be paid in full in cash with proceeds provided by Newco. All holders of the 7.5% Convertible Senior Secured Notes due 2009 issued by DBSD (the "**DBSD Notes**") will be afforded the opportunity to participate in the New DBSD DIP Facility. Up to the full amount of the New DBSD DIP Facility will be available on an interim basis subject to (i) agreement by DBSD to the terms of the Transaction set forth herein, and (ii) entry of an order of the Bankruptcy Court approving such borrowing. |
| **DIP Facility for TSN** | TSN and the Sponsors shall enter into a replacement DIP facility (the "**New TSN DIP Facility**") of up to $123.9 million, the proceeds of which shall be used to (i) repay in full in cash the obligations under the existing DIP facility provided by Echostar, (ii) fund bankruptcy related costs, and (iii) provide working capital to TSN. The terms and conditions of the New TSN DIP Facility shall be no less favorable to TSN than the Indicative Term Sheet for Replacement Debtor in Possession Financing previously provided to TSN by the ad hoc group of holders of 15% Senior Secured PIK Notes dated February 14, 2007 issued by TSN (the "**15% Notes**"). All holders of the 15% Notes will be afforded the opportunity to participate in the New TSN DIP Facility. The New TSN DIP Facility shall be paid in full in cash with proceeds provided by Newco. |

| Treatment of Claims and Equity Interests | |
|---|---|
| **Administrative, Priority Tax and Other Priority Claims at DBSD/TSN** | On or as soon as practicable after the Effective Date, each holder of an allowed administrative, priority tax or other priority claim shall receive cash equal to the full amount of its claim or otherwise be rendered unimpaired. |
| **DBSD DISH Facility** | Unimpaired; paid in cash on the Effective Date. |
| **DBSD Notes Held by DISH** | The 7.5% Convertible Senior Secured Notes due 2009 (the "**DBSD Notes**") issued by DBSD under that certain indenture dated August 15, 2005 (as supplemented and amended, the "**Indenture**") and held by DISH shall be unimpaired and paid in full in cash in accordance with the terms of the Indenture. |
| **TSN 15% Notes Held by Echostar** | The 15% Notes held by Echostar shall be unimpaired and paid in full in cash. |
| **Distribution to Senior Noteholders at DBSD/TSN** | Holders of the DBSD Notes other than DISH and holders of the 15% Notes other than Echostar will receive either (i) payment in full in cash, including accrued and unpaid interest, or (ii) Equity in an amount sufficient to pay such obligations in full, based on a pro forma Total Enterprise Value of approximately $2.6 billion. |
| **Other Secured Claims** | On the Effective Date, all secured claims not otherwise provided for herein shall be reinstated and paid in full in cash in the ordinary course in accordance with their terms as such claims become due. |
| **Treatment of Other Creditors at DBSD/TSN** | General Unsecured Claims (including the Sprint claims, when resolved), other than the TSN 6.5% Notes, shall be paid in cash, including interest from the Petition Date to the Effective Date or the payment date (whichever is later) at the federal judgment rate. |
| **Treatment of TSN 6.5% Notes** | Holders of the 6.5% Notes issued by TSN will receive Equity up to an amount sufficient to pay such obligations in full, <u>provided, however</u>, that the 6.5% Notes held by Echostar shall be unimpaired and paid in full in cash. |
| **Potential Distribution to Existing Stockholders** | Any value remaining after payment of all Claims will be allocated between ICO Global Communications (Holdings) Limited and the shareholders of TSN based on the total enterprise value of the respective entities. |

| | |
|---|---|
| **Allocation of Equity Among DBSD/TSN Estates** | A mechanism for the equitable allocation of Equity to DBSD and TSN creditors in accordance with the foregoing will be established. |
| **Cash Payment Option** | Newco will offer to purchase for cash, on a date that is 20 Business Days after selection of the transactions contemplated by the Term Sheet as the winning bid, each and every claim that would otherwise be paid in cash on the Effective Date of the Plan. |
| **TSC** | If the Sponsors determine to have Newco acquire Terrestar Corporation, it will be acquired at an agreed enterprise value. |
| **Other Provisions** | The Amended Plan shall contain such other provisions as are contemplated by the Commitment Letter and the related Term Sheets and any other such provisions that are customary for plans of reorganization of this type. |

# Annex 1

## Newco, Inc.

## Minority Protections

| | |
|---|---|
| **Tag-Along** | If any stockholder or group of stockholders acting together propose to sell to a Person other than an Affiliate more than 35% of the shares of common and the drag-along right, if applicable, has not been exercised, then the other stockholders have the right to have their shares purchased pro rata. |
| **Preemptive Rights** | If Newco proposes to sell or otherwise issue securities of Newco, any securities convertible or exchangeable for equity securities or any options or warrants to purchase equity securities, each stockholder will have the right to acquire its pro-rata portion of such securities and any other offered securities not subscribed for. |
| **Buy-Out** | If a party or group acting together becomes the owner of more than 50% of the shares of common stock (the "**Majority Owner**"), the Majority Owner will offer to purchase all shares not owned by the Majority Owner, at a price based on the highest price paid for shares purchased by the Majority Owner in the preceding 12 months. |
| **Restrictions on Certain "Squeeze Out" Transactions** | Newco and the stockholders are prohibited from approving a reverse stock split, merger, or recapitalization unless such transaction results in the receipt of consideration of the same type and amount, on a per share basis, by all outstanding shares. |

| | |
|---|---|
| **Board Composition** | 7 member board of directors initially comprised of (i) the CEO, (ii) 2 directors designated by the former owners of the DBSD Notes who have elected to convert such Notes to Equity (the "DBSD Directors"), and (iii) 4 directors designated by the Sponsors. Upon the acquisition of New TSN by Newco, the former holders of the 15% Notes who have elected to convert such Notes to Equity will have the right to designate 2 additional directors (the "TSN Directors"), and the board of directors will consist of 9 members. The right of certain stockholders to continue to designate directors terminates upon falling below a certain threshold of stock ownership. |
| **Consent Rights** | Newco will not without first obtaining the consent of a majority of the DBSD Directors and the TSC Directors, collectively, approve any of the following:<br><br>(i) increase in the number of shares of any capital stock ranking *pari passu* or senior to the Equity;<br><br>(ii) amendment to the Certificate of Incorporation or ByLaws;<br><br>(iii) sale, lease, or other disposition of all or substantially of the assets of Newco or any of its subsidiaries;<br><br>(iv) recapitalization, reorganization, consolidations, or merger of Newco;<br><br>(v) issuance or entry into an agreement for the issuance of capital or other securities convertible into capital stock, other than pursuant to an equity incentive plan;<br><br>(vi) redemption, purchase, or other |

Annex 1

acquisition by Newco of its capital stock; and

(vii) issuance of debt greater than an amount to be determined.