James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C.
Andrew B. Clubok
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

Ryan Blaine Bennett
Lauren M. Hawkins
KIRKLAND & ELLIS LLP
300 North LaSalle Drive
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DBSD NORTH AMERICA, INC., *et al.*, | ) Case No. 09-13061 (REG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## DEBTORS' STATEMENT REGARDING STATUS AND RESULTS
## OF MARKETING PROCESS

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")
hereby submit this statement ("**Statement**") to update the Court and parties in interest on the
results of the marketing process for the Debtors' chapter 11 plan sponsorship during the 13-day
adjournment ordered by the Court at the March 2, 2011 hearing (the "**March 2 Hearing**"),
including the Debtors' proposed selection of DISH Network Corporation ("**DISH**"), as the
successful bidder.

Pursuant to a further amended and restated investment agreement with DISH, all of the Debtors' creditors (other than DISH) will receive unimpaired treatment under the Debtors' proposed chapter 11 plan, and the Debtors' equity stakeholder, ICO Global, will receive total consideration from DISH equal to approximately $325 million in cash. Further, and to ensure certainty of recovery for the Debtors' stakeholders, the Debtors' creditors retain the opportunity to tender for 100% cash recovery of their allowed claims. All in, the DISH plan investment represents a $1.49 billion value contribution for the collective benefit of the Debtors' stakeholders.

<u>**Statement**</u>

**A.     Update On Events Following the March 2 Hearing.**

1.      During the 13-day adjournment, the Court instructed the Debtors to continue their marketing process to ascertain whether offers superior to the proposal then provided by DISH will be forthcoming and, as importantly, as unconditional, in terms of creditor recovery. To that end, and as described in the *Debtors' Supplemental Reply* [Docket No. 1019], the Debtors circulated a bid solicitation letter, nondisclosure agreement, and a "teaser" to 21 strategic and financial parties known to have an interest in acquiring the Debtors in an effort to foster a fulsome bidding process to maximize the value of the Debtors' estates and recoveries to all constituents. This communication provided parties with a brief update on the chapter 11 cases, apprised them of the Amended and Restated Investment Agreement, and encouraged such parties to submit competing proposals. The process letter set forth an overview of the sales process and a proposed timeline, and further requested that initial proposals be submitted no later than March 9, 2011, and that final proposals be received by March 13, 2011.

2.      Subsequent to sending the process letter, the Debtors provided interested parties with copies of the following documents:

(a)     The term sheet for the alternate plan implementing the transactions contemplated in the Investment Agreement (the "**Alternate Plan**");

(b)     The Investment Agreement; and

(c)     The $87.5 million non-priming, junior debtor-in-possession financing agreement between the Debtors and DISH (the "**Replacement DIP Facility**"), and encouraged potential bidders to utilize these documents as a baseline for future proposals.

3.     In addition, interested parties were provided:

(a)     Access to the Debtors' virtual data room containing various diligence materials;

(b)     Additional information and analysis upon the request of interested parties; and

(c)     Upon request, conference calls with the Debtors and their advisors to discuss diligence materials and to address any questions and issues that may be relevant to the submission of their respective proposals.

**B.     Description of Bids Received by Debtors.**

4.     As of the time of the filing of this Statement, the Debtors received only one proposal from an additional bidder (the "**Alternative Bidder**")[1] in addition to the Investment Agreement with DISH.   While the Debtors have received further indications from a third interested party, such party recently advised the Debtors that any bid will not likely be submitted until after March 15.

5.     On March 10, 2011, the Alternative Bidder submitted a competing proposal for a $1.14 billion investment in the Debtors and an $87.5 million DIP facility (the "**March 10 Proposal**").   Although the March 10 Proposal provided for a higher recovery to unsecured creditors than the Investment Agreement (at that time) in addition to providing for a substantial recovery to the existing equity holders, this proposal contained more conditionality than the Investment Agreement.   Specifically, the March 10 Proposal was contingent on the completion

---

[1]     Bidder identities will be provided to the Court upon request.

of additional due diligence and securing sufficient financing and, at the time of its submission, the Alternative Bidder stated that neither of these two conditions was guaranteed to be completed before March 18, 2011, one day after the expiration of DISH's commitment to consummate the Investment Agreement.

6. The Debtors and their advisors worked extensively with the Alternative Bidder to improve the terms and reduce the conditionality of its offer, including providing the information requested by the Alternative Bidder and conducting several diligence calls. On March 13, 2011, the Alternative Bidder provided definitive documentation for a transaction that did not include the level of conditionality contained in its March 10 Proposal. By yesterday evening, the Alternative Bidder submitted another and further improved proposal which provided for the following treatment of claims and interests:

- Prepetition working capital facility: Unimpaired; payment in full in cash with interest in accordance with the working capital facility agreement, with the opportunity to tender such claim at par plus accrued interest.

- Prepetition senior secured notes: Unimpaired; payment in full in cash in accordance with the terms of the indenture, with the opportunity to tender at par plus accrued interest.

- General unsecured claims (excluding Sprint): Unimpaired; payment in full in cash at each claim's allowed amount (including any applicable interest), with the opportunity to tender at 100% of the creditor's allowed claim.

- Sprint's claim: Unimpaired; payment in full in cash (at allowed amount, including any applicable interest), with an offer of settlement and an opportunity to tender at $40 million.

- ICO Global's interest: Payment of $310 million in cash, minus payments to be made to ICO Global under a proposed implementation agreement.

7. The Alternative Bidder's proposal also provides for an $87.5 million debtor-in-possession facility, the same amount as the Replacement DIP Facility offered by DISH.

**C.**     **Summary of Improvements to DISH Investment Agreement.**

8.     Since the March 2 Hearing, the Debtors have continued good faith, arm's length negotiations with DISH regarding the terms of the Investment Agreement to secure the highest and best possible bid in an effort to further enhance the recoveries of the Debtors' stakeholders. Specifically, the Debtors have negotiated the following improvements to the Investment Agreement:[2]

- <u>Improved recoveries for general unsecured creditors</u>.   Unimpaired; payment in full in cash at each claim's allowed amount, (including any applicable interest) with the opportunity to tender at 100% of the creditor's allowed claim.

- <u>Improved recovery for Sprint</u>.   Unimpaired; payment in full in cash (at allowed amount, including any applicable interest), with an offer of settlement and an opportunity to tender at $40 million.

- <u>ICO Global's Interest</u>.   Approximately $325 million in cash, which consists of a payment of (a) $35 million to be paid on or about the date that the DISH Investment Agreement is approved and (b) approximately $290 million to be paid when DISH has acquired more than 50% of the senior notes (subject to the right of ICO Global to demand payment prior to such time), as described under a separate implementation agreement (the "**Implementation Agreement**") as more fully described below.

- <u>Increased administrative claims cap</u>.   The Debtors and DISH have agreed to increase the limit on administrative claims to $14 million, up from $10 million.

- <u>"Last look" period reduced</u>.   DISH now has 3 business days to match a superior proposal (instead of 5 business days).

- <u>Removal of Appeal Condition</u>.   The absence of an appeal of the order approving the investment agreement is no longer a condition precedent to closing the tender offer.

- <u>Extension of milestones and anticipated schedule for plan process</u>.   The Debtors and DISH have agreed to extend the following milestones provided for under the terms of the Investment Agreement:

---

[2]     A chart summarizing the current treatment under both the Alternative Bidder and DISH proposals (along with a comparison to the Ad Hoc Committee's proposal) is attached hereto as **<u>Exhibit A</u>**.

(a) The deadline to file a plan and disclosure statement from March 28, 2011 to April 11, 2011;

(b) The deadline for entry of an order approving a disclosure statement from May 15, 2011 to May 23, 2011; and

(c) The deadline for entry of an order confirming a plan from June 30, 2011 to July 7, 2011.

9. In addition, ICO Global and DISH have agreed to the terms of a plan support agreement (the "**PSA**") as well as the Implementation Agreement.[3]  The PSA provides that ICO Global will support the Investment Agreement and the DISH plan in exchange for, among other things, the treatment described above.  The Implementation Agreement provides for, among other things, in addition to the consideration described above:

(a) DISH's acquisition of certain priority rights of ICO Global over DBSD's satellite and certain rights of ICO Global in the currently pending litigation against Sprint Nextel Corporation;

(b) DISH's acquisition of all of the International Assets (as defined in the Implementation Agreement);

(c) DISH's acquisition of ICO Global's equity interests in DBSD;

(d) Entry into a license and spectrum coordination agreement and a transition services agreement between reorganized DBSD and ICO Global which shall be effective upon consummation of the Plan; and

(e) Certain indemnifications by and among ICO Global and DISH.

The Debtors understand that ICO Global will file a statement in support of the plan this morning along with a copy of the Implementation Agreement and the PSA.

10. After extensive negotiations with DISH and the Alternative Bidder over the past several days, and multiple meetings among the Debtors' Board and professionals, this morning

---

[3] The summary contained herein is for the benefit of the Court and the parties in interest and is qualified in its entirety by the terms of the Implementation Agreement and the PSA.  To the extent of any discrepancy between this description and the terms of the Implementation Agreement or PSA, the terms of the Implementation Agreement or PSA shall govern.

the Debtors' Board determined, after considering all relevant factors, that the DISH Investment Agreement, as amended, provides the best possible terms for a transaction, maximizes the recoveries of all of the Debtors' stakeholders, and, given the PSA with ICO Global, provides the most certain path toward success. The Debtors intend to file and present the revised DISH Investment Agreement and alternative DIP financing to the Court for approval at the hearing today.[4]

11.     The Debtors' plan sponsor marketing process has achieved extraordinary results. However, given the upcoming March 17 expiration date on the Investment Agreement, and the fact that all of the Debtors' stakeholders are now either receiving unimpaired treatment under the proposed plan or otherwise supporting the Investment Agreement with DISH, the Debtors believe no further delay is necessary. The Debtors, therefore, intend to seek approval of DISH, as plan sponsor, pursuant to the Investment Agreement at today's hearing.

*[Remainder of This Page Is Intentionally Left Blank]*

---

[4] The revised DISH documents will be filed under separate cover.

New York, New York                         /s/ *Ryan Blaine Bennett*
Dated:  March 15, 2011                      James H.M. Sprayregen, P.C.
                                            Marc Kieselstein, P.C.
                                            Andrew B. Clubok
                                            KIRKLAND & ELLIS LLP
                                            601 Lexington Avenue
                                            New York, New York  10022-4611
                                            Telephone:     (212) 446-4800
                                            Facsimile:     (212) 446-4900

                                                - and -

                                            Ryan Blaine Bennett
                                            Lauren M. Hawkins
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle Drive
                                            Chicago, Illinois  60654
                                            Telephone:     (312) 862-2000
                                            Facsimile:     (312) 862-2200

                                            Counsel to the Debtors
                                            and Debtors in Possession